## UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT
## CIVIL APPEAL PRE-ARGUMENT STATEMENT (FORM C)

**1. SEE NOTICE ON REVERSE**  **2. PLEASE TYPE OR PRINT**  **3. STAPLE ALL ADDITIONAL PAGES**

| Case Caption: | District Court or Agency: | Judge: |
|---|---|---|
| China AI Capital Ltd, Plaintiff, -against- DLA Piper LLP (US) and Caryn G. Schechtman, Defendants. | S.D.N.Y. | Hon. Victor Marrero |

| | Date the Order or Judgment Appealed from was Entered on the Docket: | District Court Docket No.: |
|---|---|---|
| | 11/18/25, 11/17/25, 5/22/2025, 7/23/23, 3/6/2024 | ECF No. 107,106, 99, 76,67,65,58 |
| | Date the Notice of Appeal was Filed: | Is this a Cross Appeal? |
| | 11/20/2025, 11/25/2025 | ☐ Yes  ☑ No |

**Attorney(s) for Appellant(s):**
☑ Plaintiff
☐ Defendant

Counsel's Name: Address: Telephone No.: Fax No.: E-mail:
Michael James Maloney, Felicello Law P.C., 366 Madison Avenue FL3, (212) 584-7806, (424) 538-4539, mmaloney@felicellolaw.com

**Attorney(s) for Appellee(s):**
☐ Plaintiff
☑ Defendant

Counsel's Name: Address: Telephone No.: Fax No.: E-mail:
Nancy Hart, Gibson Dunn & Crutcher LLP, 200 Park Avenue, New York, NY, (212) 351-3897, nhart@gibsondunn.com

| Has Transcript Been Prepared? | Approx. Number of Transcript Pages: | Number of Exhibits Appended to Transcript: | Has this matter been before this Circuit previously? ☑ Yes  ☐ No |
|---|---|---|---|
| n/a | | | If Yes, provide the following: Case Name: Link Motion Inc. v. DLA Piper LLP (US), et al. |

2d Cir. Docket No.: 23-944
Reporter Citation: (i.e., F.3d or Fed. App.) 103 F.4th 905

**ADDENDUM "A":** COUNSEL MUST ATTACH TO THIS FORM: (1) A BRIEF, BUT NOT PERFUNCTORY, DESCRIPTION OF THE NATURE OF THE ACTION; (2) THE RESULT BELOW; (3) A COPY OF THE NOTICE OF APPEAL AND A CURRENT COPY OF THE LOWER COURT DOCKET SHEET; AND (4) A COPY OF ALL RELEVANT OPINIONS/ORDERS FORMING THE BASIS FOR THIS APPEAL, INCLUDING TRANSCRIPTS OF ORDERS ISSUED FROM THE BENCH OR IN CHAMBERS.

**ADDENDUM "B":** COUNSEL MUST ATTACH TO THIS FORM A LIST OF THE ISSUES PROPOSED TO BE RAISED ON APPEAL, AS WELL AS THE APPLICABLE APPELLATE STANDARD OF REVIEW FOR EACH PROPOSED ISSUE.

### PART A: JURISDICTION

**1. Federal Jurisdiction**
☐ U.S. a party
☑ Diversity
☐ Federal question (U.S. not a party)
☐ Other (specify): _____

**2. Appellate Jurisdiction**
☑ Final Decision
☐ Interlocutory Decision Appealable As of Right
☐ Order Certified by District Judge (i.e., Fed. R. Civ. P. 54(b))
☐ Other (specify): _____

**IMPORTANT. COMPLETE AND SIGN REVERSE SIDE OF THIS FORM.**

FORM C (Rev. October 2025)

## PART B: DISTRICT COURT DISPOSITION (Check as many as apply)

**1. Stage of Proceedings**

- [✓] Pre-trial
- [ ] During trial
- [ ] After trial

**2. Type of Judgment/Order Appealed**

- [ ] Default judgment
- [ ] Dismissal/FRCP 12(b)(1) lack of subject matter juris.
- [ ] Dismissal/FRCP 12(b)(6) failure to state a claim
- [ ] Dismissal/28 U.S.C. § 1915(e)(2) frivolous complaint
- [ ] Dismissal/28 U.S.C. § 1915(e)(2) other dismissal
- [ ] Dismissal/other jurisdiction
- [ ] Dismissal/merit
- [ ] Judgment / Decision of the Court
- [ ] Summary judgment
- [ ] Declaratory judgment
- [ ] Jury verdict
- [ ] Judgment NOV
- [ ] Directed verdict
- [✓] Other (specify): Judgment granting Rule 11 sanctions

**3. Relief**

- [✓] Damages:
  - [ ] Sought: $ _____
  - [✓] Granted: $ 636,856.89
  - [ ] Denied: $ _____
- [ ] Injunctions:
  - [ ] Preliminary
  - [ ] Permanent
  - [ ] Denied

Attorney's fees pursuant to Rule 11

## PART C: NATURE OF SUIT (Check as many as apply)

**1. Federal Statutes**

- [ ] Antitrust
- [ ] Bankruptcy
- [ ] Banks/Banking
- [ ] Civil Rights
- [ ] Commerce
- [ ] Energy
- [ ] Commodities
- [ ] Other (specify): _____
- [ ] Communications
- [ ] Consumer Protection
- [ ] Copyright [ ] Patent
- [ ] Trademark
- [ ] Election
- [ ] Soc. Security
- [ ] Environmental
- [ ] Freedom of Information Act
- [ ] Immigration
- [ ] Labor
- [ ] OSHA
- [ ] Securities
- [ ] Tax

**2. Torts**

- [ ] Admiralty/ Maritime
- [ ] Assault / Defamation
- [ ] FELA
- [ ] Products Liability
- [✓] Other (Specify):

**3. Contracts**

- [ ] Admiralty/ Maritime
- [ ] Arbitration
- [ ] Commercial
- [ ] Employment
- [ ] Insurance
- [ ] Negotiable Instruments
- [ ] Other Specify

**4. Prisoner Petitions**

- [ ] Civil Rights
- [ ] Habeas Corpus
- [ ] Mandamus
- [ ] Parole
- [ ] Vacate Sentence
- [ ] Other

**5. Other**

- [ ] Hague Int'l Child Custody Conv.
- [ ] Forfeiture/Penalty
- [ ] Real Property
- [ ] Treaty (specify): _____
- [ ] Other (specify): _____

**6. General**

- [ ] Arbitration
- [ ] Attorney Disqualification
- [ ] Class Action
- [ ] Counsel Fees
- [✓] Shareholder Derivative
- [ ] Transfer

**7. Will appeal raise constitutional issue(s)?**

- [ ] Yes
- [✓] No

Will appeal raise a matter of first impression?

- [ ] Yes
- [✓] No

---

1. Is any matter relative to this appeal still pending below? [✓] Yes, specify: Baliga v. Link Motion Inc., 18-cv-11642-VM   [ ] No

2. To your knowledge, is there any case presently pending or about to be brought before this Court or another court or administrative agency which:

   (A) Arises from substantially the same case or controversy as this appeal? [✓] Yes [ ] No

   (B) Involves an issue that is substantially similar or related to an issue in this appeal? [✓] Yes [ ] No

If yes, state whether [ ] "A," or [ ] "B," or [ ] both are applicable, and provide in the spaces below the following information on the *other* action(s):

| Case Name: | Docket No. | Citation: | Court or Agency: |
|---|---|---|---|
| Link Motion Inc. v. DLA Piper LLP (US) | 2025-01716 | | NYS App. Div. 1st Dep't |

Name of Appellant: China AI Capital Ltd.

Date: 12/4/2025    Signature of Counsel of Record: /s/ Michael James Maloney

## NOTICE TO COUNSEL

**Once you have filed your Notice of Appeal with the District Court or the Tax Court, you have only 14 days in which to complete the following important steps:**

1. Complete this Civil Appeal Pre-Argument Statement (Form C); serve it upon all parties, and file it with the Clerk of the Second Circuit in accordance with LR 25.1.

2. File the Court of Appeals Transcript Information/Civil Appeal Form (Form D) with the Clerk of the Second Circuit in accordance with LR 25.1.

3. Pay the $605 docketing fee to the United States District Court or the $600 docketing fee to the United States Tax Court unless you are authorized to prosecute the appeal without payment.

**PLEASE NOTE: IF YOU DO NOT COMPLY WITH THESE REQUIREMENTS WITHIN 14 DAYS, YOUR APPEAL WILL BE DISMISSED.** *SEE* LOCAL RULE 12.1.

FORM C (Rev. October 2025)

ADDENDUM "A"
to Form C

## 1. Nature of the Action

*A. The Legal Malpractice Claim*

This is an action for legal malpractice commenced by Plaintiff-Appellant China AI Capital Ltd ("China AI") against Defendants-Appellees DLA Piper LLP (US) ("DLA") and Caryn Schechtman (together, the "Defendants"). The claim arises from Defendants' representation of Link Motion, Inc., a Cayman Islands limited company ("LKM" or the "Company"), in a derivative action brought by underlying plaintiff Wayne Baliga ("Baliga") on December 13, 2018 in the U.S. District Court for the Southern District of New York, Case No. 18-cv-11642-VM-VF (the "Underlying Action").

In this action, China AI—a registered shareholder of LKM—alleges that Defendants committed legal malpractice by failing to assert timely defensive arguments in opposition to a motion by Baliga for a TRO, preliminary injunction, and appointment of a corporate receiver.

China AI alleges that at the time Baliga brought his motion in the underlying action, LKM had the following meritorious defenses against Baliga's motion:

1

- Baliga could not show a likelihood of success on his common law derivative claims because he lacked standing under Cayman Island law to assert derivative common law claims;

- Baliga could not show a likelihood of success on his federal securities claims because he failed to plead with particularity any purchase and sale of securities, a necessary element of a valid cause of action for securities fraud; and

- Baliga was not entitled to any equitable relief, because any claim he might have had was compensable by money damages only.

China AI in this action alleges that Defendants committed legal malpractice on the ground that:

Attorney-Client Relationship: Defendants entered into an attorney-client relationship with LKM by appearing in court as counsel for LKM, filing stipulations and other papers for LKM, agreeing to extend the TRO entered on December 14, 2018, negotiating and obtaining an extension of time for LKM to respond to Baliga's complaint, waiving LKM's right to oppose Baliga's motion for a preliminary injunction and appointment of a receiver, and taking other legal action in court on behalf of LKM.

2

Breach of Duty of Care: By way of Defendants' (i) possession of relevant corporate records and knowledge regarding LKM and (ii) legal knowledge, training, and experience, Defendants knew or should have known of LKM's meritorious defenses to Baliga's motion but failed to assert the defenses. Defendants failed to advise LKM of the availability of the defensive arguments in opposition to Baliga's motion and failed to timely oppose the request for a TRO, preliminary injunction and appointment of a receiver. Defendants obtained an extension of time to respond to Baliga's complaint but failed to respond to the complaint.

Proximate Causation: But for Defendants' failure to assert LKM's defensive arguments in opposition to Baliga's motion, the Court would not have entered a TRO or preliminary injunction and would not have appointed a receiver for LKM.

Ascertainable Damages: LKM suffered damages comprising the costs of the receivership, which were charged to LKM, and loss of cash and other assets seized by the receiver. LKM also suffered losses because entry of the TRO and preliminary injunction restrained LKM from transferring corporate stock it was holding as security for payment obligations of the purchaser in the sale of a corporate affiliate of LKM.

3

*B. Vacatur of the Preliminary Injunction, Discharge of the Receiver, and Plaintiff's Request for Voluntary Dismissal*

China AI, a registered shareholder of LKM, commenced this derivative action on December 20, 2021, while LKM was still controlled by the court-appointed receiver. The case was assigned to the Hon. Victor Marrero, the same judge presiding over the Baliga action, on the ground of relatedness. But in this action Judge Marrero never considered the hypothetical case-within-a-case alleged in China AI' complaint for legal malpractice.

On September 6, 2022, China AI filed in this action a notice of voluntary dismissal pursuant to Rule 41(a)(1)(A)(i) of the Fed. R. Civ. P. The reason for voluntary dismissal was as follows: On August 25, 2022, the Court in the Underlying Action entered a Decision and Order vacating the preliminary injunction and ruling that the receiver for LKM should be discharged. The basis for vacating the preliminary injunction and discharge of the receiver was that Baliga was unable to dispute that he lacked standing to assert any derivative common law claims, Baliga had voluntarily withdrew his derivative common law claims, and that the only viable securities claims Baliga had were compensable by money

4

damages only and insufficient to support a preliminary injunction or a receiver.

In light of the vacatur of the preliminary injunction and discharge of the receiver, the board of directors of LKM voted to assume direct control over the legal malpractice claim against Defendants and commenced a direct action in the Supreme Court of the State of New York, captioned as *Link Motion Inc. v. DLA Piper LLP (US) et al.*, Index No. 2022-653322 (Sup. Ct. NY Cty). Given that LKM had assumed direct control over the malpractice claim against Defendants, China AI here requested voluntary dismissal without prejudice.

*C. Defendants' Motion for Rule 11 Sanctions.*

On September 6, 2022, the Court ordered Defendants to respond to China AI's notice of voluntary dismissal. On September 26, 2022, Defendants filed a motion pursuant to Rule 11 of the Fed. R. Civ. P. for sanctions against Plaintiff and its counsel. China AI opposed on October 24, 2022. On July 24, 2023, the Hon. Magistrate Judge Valerie Figueredo issued a report and recommendation granting Defendants' Rule 11 motion. ECF No. 53. In response to a letter from Defendants dated July

5

26, 2025, Judge Figueredo issued an amended report and recommendation. ECF No. 58.

China AI and its counsel timely objected to the report & recommendation. On March 6, 2024, the Court adopted and accepted the report & recommendation, granted Defendants' Rule 11 motion, dismissed the case with prejudice, and directed the parties to brief the issue of attorney's fees and costs. ECF No. 65.

On March 20, 2024, the Court stayed "any motion practice on this matter until the parties have endeavored to resolve the dispute through settlement under Magistrate Judge Figueredo." ECF No. 66. Settlement before Judge Figueredo was unsuccessful and on July 18, 2024, Judge Figueredo directed the parties to brief the issues of attorney's fees and costs. ECF No. 74.

On July 18, 2024, China AI and its counsel requested that the Court lift the stay of motion practice so that they could file a motion for reconsideration of the March 6, 2024 Decision and Order in light of the Second Circuit's ruling in the related action *Link Motion Inc. v. DLA Piper LLP (US), et al.*, 104 F.4th 905 (2d Cir. 2024). The Court denied the motion to lift the stay.

The parties briefed the issue of attorney's fees and costs. On May 22, 2025, Magistrate Judge Figueredo issued a report and recommendation recommending that Defendants be awarded attorney's fees in the amount of $634,525.39 and costs in the amount of $2,331.50. ECF No. 99. China AI and counsel timely objected. On November 17, 2025, the Court issued a Decision and Order adopting and accepting the report and recommendation. ECF No. 106. A Clerk's Judgment was entered on November 18, 2025. ECF No. 107. China AI filed a timely notice of appeal on November 20, 205. Non-parties Felicello Law P.C., Rosanne E. Felicello, and Michael James Maloney filed a timely notice of appeal on November 25, 2025. ECF No. 109.

2. Result Below

The Court below (i) granted Defendants' motion pursuant to Rule 11, dismissed the action with prejudice pursuant to Rule 11, (ii) awarded sanctions against China AI and its counsel, Felicello Law P.C., Rosanne E. Felicello, and Michael James Maloney, pursuant to Rule 11, (iii) overruled the objections of Plaintiff and its counsel, (iv) awarded Defendants attorney's fees in the amount of $ 634,525.39 and costs in the amount of $2,331.50, and (v) overruled the objections of Plaintiff and its counsel.

3. Copy of Notice of Appeal & Docket Sheet From the District Court and All Relevant Decisions Below

See attached.

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CHINA AI CAPITAL LIMITED, a British Virgin Islands limited company, derivatively on behalf of LINK MOTION INC., a Cayman Islands limited company f/k/a NQ MOBILE INC., | No.: 1:21-cv-10911-VM-VF |
| Plaintiff, | |
| -against- | **NOTICE OF APPEAL** |
| DLA PIPER LLP (US), a Maryland limited liability partnership, and CARYN G. SCHECHTMAN, a natural person, | |
| Defendants, | |
| -and- | |
| LINK MOTION INC., a Cayman Islands limited company f/k/a NQ MOBILE INC, | |
| Nominal Defendant. | |

PLEASE TAKE NOTICE that Plaintiff China AI Capital Ltd. ("Plaintiff") hereby appeals

to the United States Court of Appeals for the Second Circuit from: the Report & Recommendation

of the Hon. Valerie Figueredo, entered on July 24, 2023 (ECF No. 53) and amended on July 28,

2023 (ECF No. 58) (together, the "July 24 & 28, 2023 Report & Recommendation"),

recommending the motion by Defendants DLA Piper LLP (US) and Caryn G. Schechtman

("Defendants") for sanctions pursuant to Rule 11 be granted; the Decision and Order of the

Honorable Victor Marrero, entered on March 6, 2024 (ECF No. 65), adopting and accepting the

July 24 & 28, 2023 Report & Recommendation and overruling Plaintiff's objections; the Order of

the Hon. Victor Marrero, entered on March 20, 2024 (ECF No. 67), staying "any motion practice

on this matter"; the Order of the Hon. Victor Marrero, entered on July 19, 2024 (ECF No. 76),

declining to lift the stay; the Report & Recommendation of the Hon. Valerie Figueredo, entered on May 22, 2025 (ECF No. 99) (the "May 22, 2025 Report and Recommendation"), recommending that the Court award attorney's fees in the amount of $634,525.39 and costs of $2,331.50 against Plaintiff and its counsel, Felicello Law, P.C., Rosanne E. Felicello and Michael James Maloney (altogether, "Counsel"); the Decision & Order of the Hon. Victor Marrero, entered on November 17, 2025 (ECF No. 106), adopting and accepting the May 22, 2025 Report and Recommendation and overruling the objections of Plaintiff and Counsel; the Judgment, entered on November 18, 2025 (ECF No. 107), awarding attorney's fees of $634,525.39 and costs of $2,331.39 for a total amount of $636,856.89; and all interlocutory decisions and orders merged into the Judgment.

Dated: New York, New York
     November 20, 2025               FELICELLO LAW P.C.

                                      By: /s/ *Michael James Maloney*
                                          Michael James Maloney
                                          Rosanne E. Felicello
366 Madison Avenue FL3
New York, New York 10017
Tel. (212) 584-7806
mmaloney@felicellolaw.com
rosanne@felicellolaw.com

*Attorneys for Plaintiff-Appellant China AI Capital Ltd.*

2

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CHINA AI CAPITAL LIMITED, a British Virgin Islands limited company, derivatively on behalf of LINK MOTION INC., a Cayman Islands limited company f/k/a NQ MOBILE INC., | No.: 1:21-cv-10911-VM-VF |
| Plaintiff, | |
| -against- | **NOTICE OF APPEAL** |
| DLA PIPER LLP (US), a Maryland limited liability partnership, and CARYN G. SCHECHTMAN, a natural person, | |
| Defendants, | |
| -and- | |
| LINK MOTION INC., a Cayman Islands limited company f/k/a NQ MOBILE INC, | |
| Nominal Defendant. | |

PLEASE TAKE NOTICE that Plaintiff China AI Capital Ltd. ("Plaintiff") hereby appeals to the United States Court of Appeals for the Second Circuit from: the Report & Recommendation of the Hon. Valerie Figueredo, entered on July 24, 2023 (ECF No. 53) and amended on July 28, 2023 (ECF No. 58) (together, the "July 24 & 28, 2023 Report & Recommendation"), recommending the motion by Defendants DLA Piper LLP (US) and Caryn G. Schechtman ("Defendants") for sanctions pursuant to Rule 11 be granted; the Decision and Order of the Honorable Victor Marrero, entered on March 6, 2024 (ECF No. 65), adopting and accepting the July 24 & 28, 2023 Report & Recommendation and overruling Plaintiff's objections; the Order of the Hon. Victor Marrero, entered on March 20, 2024 (ECF No. 67), staying "any motion practice on this matter"; the Order of the Hon. Victor Marrero, entered on July 19, 2024 (ECF No. 76),

declining to lift the stay; the Report & Recommendation of the Hon. Valerie Figueredo, entered on May 22, 2025 (ECF No. 99) (the "May 22, 2025 Report and Recommendation"), recommending that the Court award attorney's fees in the amount of $634,525.39 and costs of $2,331.50 against Plaintiff and its counsel, Felicello Law, P.C., Rosanne E. Felicello and Michael James Maloney (altogether, "Counsel"); the Decision & Order of the Hon. Victor Marrero, entered on November 17, 2025 (ECF No. 106), adopting and accepting the May 22, 2025 Report and Recommendation and overruling the objections of Plaintiff and Counsel; the Judgment, entered on November 18, 2025 (ECF No. 107), awarding attorney's fees of $634,525.39 and costs of $2,331.39 for a total amount of $636,856.89; and all interlocutory decisions and orders merged into the Judgment.

Dated: New York, New York
November 20, 2025

FELICELLO LAW P.C.

By: /s/ *Michael James Maloney*
Michael James Maloney
Rosanne E. Felicello
366 Madison Avenue FL3
New York, New York 10017
Tel. (212) 584-7806
mmaloney@felicellolaw.com
rosanne@felicellolaw.com

*Attorneys for Plaintiff-Appellant China AI Capital Ltd.*

2

CLOSED,APPEAL,CASREF,ECF,RELATED

# U.S. District Court
## Southern District of New York (Foley Square)
## CIVIL DOCKET FOR CASE #: 1:21-cv-10911-VM-VF

China AI Capital Limited v. DLA Piper LLP (US) et al
Assigned to: Judge Victor Marrero
Referred to: Magistrate Judge Valerie Figueredo
Demand: $9,999,000
Related Case: 1:18-cv-11642-VM-VF
Cause: 28:1332 Diversity Action

Date Filed: 12/20/2021
Date Terminated: 03/06/2024
Jury Demand: Plaintiff
Nature of Suit: 380 Personal Property: Other
Jurisdiction: Diversity

## Plaintiff

**China AI Capital Limited**
*a British Virgin Islands limited company,*
*derivatively on behalf of Link Motion Inc,*
*a Cayman Islands limited company f/k/a*
*NQ Mobile Inc.*

represented by **Kristie Marie Blase**
Felicello Law P.C.
366 Madison Ave
3rd Floor
10017
New York, NY 10019
212-584-7806
Email: kristie.blase@frazerpc.com
*ATTORNEY TO BE NOTICED*

**Rosanne Elena Felicello**
Felicello Law P.C.
366 Madison Ave
FL 3
New York, NY 10017
212-584-7806
Email: rosanne@felicellolaw.com
*ATTORNEY TO BE NOTICED*

**Michael James Maloney**
Felicello Law P.C.
366 Madison Avenue
3rd Floor
New York, NY 10017
646-564-3510
Email: mmaloney@felicellolaw.com
*ATTORNEY TO BE NOTICED*

V.

## Defendant

**DLA Piper LLP (US)**
*a Maryland limited liability partnership*

represented by **Nancy Hart**
Gibson, Dunn & Crutcher, LLP
144 W. Houston Street., Apt 3.
New York, NY 10012
(212)-351-3897
Fax: (212)-351-6273
Email: nhart@gibsondunn.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kevin Stuart Rosen**
Gibson, Dunn & Crutcher LLP (Los Angeles)
333 South Grand Avenue
Los Angeles, CA 90071
213-229-7000
Fax: 213-229-7520
Email: krosen@gibsondunn.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Caryn G. Schechtman**
*a natural person*

represented by **Nancy Hart**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kevin Stuart Rosen**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Nominal Defendant**

**Link Motion Inc.**
*a Cayman Islands limited company f/k/a NQ MOBILE INC*

represented by **Rosanne Elena Felicello**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Interested Party**

**Felicello Law P.C.**

**Interested Party**

**Michael James Maloney**

**Interested Party**

**Rosanne E Felicello**

| Date Filed | # | Docket Text |
|---|---|---|

| 12/20/2021 | 1 | COMPLAINT against DLA Piper LLP (US), Caryn Schechtman. (Filing Fee $ 402.00, Receipt Number ANYSDC-25493899)Document filed by CHINA AI CAPITAL LIMITED..(Maloney, Michael) (Entered: 12/20/2021) |
|---|---|---|
| 12/20/2021 | 2 | **FILING ERROR - DEFICIENT PLEADING - PDF ERROR -** CIVIL COVER SHEET filed..(Maloney, Michael) Modified on 12/21/2021 (pc). (Entered: 12/20/2021) |
| 12/20/2021 | 3 | REQUEST FOR ISSUANCE OF SUMMONS as to DLA PIPER LLP (US), re: 1 Complaint. Document filed by CHINA AI CAPITAL LIMITED..(Maloney, Michael) (Entered: 12/20/2021) |
| 12/20/2021 | 4 | REQUEST FOR ISSUANCE OF SUMMONS as to Caryn G. Schechtman, re: 1 Complaint. Document filed by CHINA AI CAPITAL LIMITED..(Maloney, Michael) (Entered: 12/20/2021) |
| 12/21/2021 | 5 | STATEMENT OF RELATEDNESS re: that this action be filed as related to 18-cv-11642. Document filed by CHINA AI CAPITAL LIMITED..(Maloney, Michael) (Entered: 12/21/2021) |
| 12/21/2021 | 6 | **FILING ERROR - DEFICIENT PLEADING - PDF ERROR -** CIVIL COVER SHEET filed..(Maloney, Michael) Modified on 12/21/2021 (pc). (Entered: 12/21/2021) |
| 12/21/2021 | 7 | NOTICE OF APPEARANCE by Rosanne Elena Felicello on behalf of CHINA AI CAPITAL LIMITED, Link Motion Inc...(Felicello, Rosanne) (Entered: 12/21/2021) |
| 12/21/2021 | 8 | RULE 7.1 CORPORATE DISCLOSURE STATEMENT. Identifying Corporate Parent True Hero Ventures Limited for CHINA AI CAPITAL LIMITED. Document filed by CHINA AI CAPITAL LIMITED..(Maloney, Michael) (Entered: 12/21/2021) |
| 12/21/2021 | | **\*\*\*NOTICE TO ATTORNEY REGARDING PARTY MODIFICATION. Notice to attorney Michael James Maloney. The party information for the following party/parties has been modified: CHINA AI CAPITAL LIMITED. The information for the party/parties has been modified for the following reason/reasons: party name was entered in all caps;. (pc)** (Entered: 12/21/2021) |
| 12/21/2021 | | **\*\*\*NOTICE TO ATTORNEY REGARDING CIVIL. CASE OPENING STATISTICAL ERROR CORRECTION: Notice to attorney Michael James Maloney. The following case opening statistical information was erroneously selected/entered: Cause of Action code 09:203; Dollar Demand $180,400,000; County code New York; Fee Status code due (due);. The following correction(s) have been made to your case entry: the Cause of Action code has been modified to 28:1332; the Dollar Demand has been modified to $9,999,000; the County code has been modified to XX Out of U.S.; the Fee Status code has been modified to pd (paid);. (pc)** (Entered: 12/21/2021) |
| 12/21/2021 | | **\*\*\*NOTICE TO ATTORNEY REGARDING DEFICIENT CIVIL COVER SHEET. Notice to attorney Michael James Maloney to RE-FILE Document No. 2 Civil Cover Sheet. The filing is deficient for the following reason(s): Origin was not selected. (pc)** (Entered: 12/21/2021) |
| 12/21/2021 | | CASE OPENING INITIAL ASSIGNMENT NOTICE: The above-entitled action is |

| | | |
|---|---|---|
| | | assigned to Judge Unassigned. .(pc) (Entered: 12/21/2021) |
| 12/21/2021 | | Case Designated ECF. (pc) (Entered: 12/21/2021) |
| 12/21/2021 | | CASE REFERRED TO Judge Victor Marrero as possibly related to 18cv11642. (pc) (Entered: 12/21/2021) |
| 12/21/2021 | | ***NOTICE TO ATTORNEY REGARDING PARTY MODIFICATION. Notice to attorney Michael James Maloney. The party information for the following party/parties has been modified: Caryn Schechtman. The information for the party/parties has been modified for the following reason/reasons: party name contained a typographical error;. (pc) (Entered: 12/21/2021) |
| 12/21/2021 | 9 | ELECTRONIC SUMMONS ISSUED as to Caryn G. Schechtman..(pc) (Entered: 12/21/2021) |
| 12/21/2021 | 10 | ELECTRONIC SUMMONS ISSUED as to DLA Piper LLP (US)..(pc) (Entered: 12/21/2021) |
| 12/22/2021 | | CASE ACCEPTED AS RELATED. Create association to 1:18-cv-11642-VM-DCF. Notice of Assignment to follow. (aea) (Entered: 12/22/2021) |
| 12/22/2021 | | NOTICE OF CASE REASSIGNMENT to Judge Victor Marrero. Judge Unassigned is no longer assigned to the case. (aea) (Entered: 12/22/2021) |
| 12/22/2021 | | Magistrate Judge Debra C. Freeman is so designated. Pursuant to 28 U.S.C. Section 636(c) and Fed. R. Civ. P. 73(b)(1) parties are notified that they may consent to proceed before a United States Magistrate Judge. Parties who wish to consent may access the necessary form at the following link: https://nysd.uscourts.gov/sites/default/files/2018-06/AO-3.pdf. (aea) (Entered: 12/22/2021) |
| 01/21/2022 | 11 | WAIVER OF SERVICE RETURNED EXECUTED. Caryn G. Schechtman waiver sent on 1/4/2022, answer due 3/7/2022. Document filed by China AI Capital Limited.. (Felicello, Rosanne) (Entered: 01/21/2022) |
| 01/21/2022 | 12 | WAIVER OF SERVICE RETURNED EXECUTED. DLA Piper LLP (US) waiver sent on 1/4/2022, answer due 3/7/2022. Document filed by China AI Capital Limited.. (Felicello, Rosanne) (Entered: 01/21/2022) |
| 02/18/2022 | 13 | MOTION for Kevin S. Rosen to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number ANYSDC-25756313. Motion and supporting papers to be reviewed by Clerk's Office staff. Document filed by DLA Piper LLP (US), Caryn G. Schechtman. (Attachments: # 1 Affidavit of Kevin S. Rosen, # 2 Exhibit A - Certificate of Good Standing, # 3 Text of Proposed Order).(Rosen, Kevin) (Entered: 02/18/2022) |
| 02/22/2022 | | >>>NOTICE REGARDING PRO HAC VICE MOTION. Regarding Document No. 13 MOTION for Kevin S. Rosen to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number ANYSDC-25756313. Motion and supporting papers to be reviewed by Clerk's Office staff.. The document has been reviewed and there are no deficiencies. (wb) (Entered: 02/22/2022) |

| 02/22/2022 | 14 | ORDER granting 13 Motion for Kevin S. Rosen to Appear Pro Hac Vice. IT IS HEREBY ORDERED that Applicant is admitted to practice pro hac vice in the above-captioned action in the United States District Court for the Southern District of New York. All attorneys appearing before this Court are subject to the Local Rules of this Court, including the Rules governing discipline of attorneys. So Ordered.. (Signed by Judge Victor Marrero on 2/22/2022) (js) (Entered: 02/22/2022) |
|---|---|---|
| 03/07/2022 | 15 | NOTICE OF APPEARANCE by Nancy Elizabeth Hart on behalf of DLA Piper LLP (US), Caryn G. Schechtman..(Hart, Nancy) (Entered: 03/07/2022) |
| 03/07/2022 | 16 | LETTER addressed to Judge Victor Marrero from Nancy Hart dated March 7, 2022 re: letter between counsel regarding the intention to file a motion to dismiss. Document filed by DLA Piper LLP (US), Caryn G. Schechtman. (Attachments: # 1 Exhibit A - Email, # 2 Exhibit B - Financial Article).(Hart, Nancy) (Entered: 03/07/2022) |
| 03/14/2022 | 17 | LETTER addressed to Judge Victor Marrero from Michael James Maloney dated March 14, 2022 re: Response to Pre-Motion Letter From Defendants (Dkt. No. 16). Document filed by China AI Capital Limited. (Attachments: # 1 Exhibit A - Top Jet Decision).(Maloney, Michael) (Entered: 03/14/2022) |
| 03/21/2022 | 18 | LETTER MOTION for Conference / *Pre-Motion Conference for Motion to Dismiss* addressed to Judge Victor Marrero from Nancy Hart dated March 21, 2022. Document filed by DLA Piper LLP (US), Caryn G. Schechtman. (Attachments: # 1 Exhibit 1 - Letter, # 2 Exhibit 2 - Letter, # 3 Exhibit 3 - Email, # 4 Exhibit 4 - 6-K Report, # 5 Exhibit 5 - 6-K Report).(Hart, Nancy) (Entered: 03/21/2022) |
| 04/29/2022 | | NOTICE OF REDESIGNATION TO ANOTHER MAGISTRATE JUDGE. The above entitled action has been redesignated to Magistrate Judge Valerie Figueredo. Please note that this is a reassignment of the designation only. (nb) (Entered: 04/29/2022) |
| 07/01/2022 | 19 | ORDER REFERRING CASE TO MAGISTRATE JUDGE: Order that case be referred to the Clerk of Court for assignment to a Magistrate Judge for Dispositive Motion (i.e., motion requiring a Report and Recommendation). Referred to Magistrate Judge Valerie Figueredo. Particular Motion: Request for pre-motion conference in Dkt. No. 18. All such motions: All those contemplated in Dkt. Nos. 16, 17, and 18. SO ORDERED. Motions referred to Valerie Figueredo. Motions referred to Valerie Figueredo. (Signed by Judge Victor Marrero on 7/1/2022) (jca) (Entered: 07/01/2022) |
| 07/06/2022 | 20 | ORDER SCHEDULING PRE-MOTION CONFERENCE granting 18 Letter Motion for Conference re: 18 LETTER MOTION for Conference / *Pre-Motion Conference for Motion to Dismiss* addressed to Judge Victor Marrero from Nancy Hart dated March 21, 2022. A Pre-Motion Conference in this matter is hereby scheduled for Wednesday, August 24, 2022, at 3:00 p.m. Counsel for the parties are directed to call Judge Figueredo's AT&T conference line at the scheduled time. Please dial (888) 808-6929; access code 9781335 . Telephone Conference set for 8/24/2022 at 03:00 PM before Magistrate Judge Valerie Figueredo. (Signed by Magistrate Judge Valerie Figueredo on 7/6/2022) (rro) (Entered: 07/06/2022) |
| 08/05/2022 | 21 | NOTICE OF APPEARANCE by Kristie Marie Blase on behalf of China AI Capital Limited..(Blase, Kristie) (Entered: 08/05/2022) |

| 08/24/2022 | | Minute Entry for proceedings held before Magistrate Judge Valerie Figueredo: Status Conference held on 8/24/2022. (sjo) (Entered: 08/24/2022) |
|---|---|---|
| 09/06/2022 | 22 | NOTICE OF VOLUNTARY DISMISSAL pursuant to Rule 41(a)(1)(A)(i) of the Federal Rules of Civil Procedure, the plaintiff(s) and or their counsel(s), hereby give notice that the above-captioned action is voluntarily dismissed, without prejudice and without costs against the defendant(s) DLA Piper LLP (US), Caryn G. Schechtman. Document filed by China AI Capital Limited. **Proposed document to be reviewed and processed by Clerk's Office staff (No action required by chambers).**..(Felicello, Rosanne) (Entered: 09/06/2022) |
| 09/06/2022 | 23 | LETTER addressed to Judge Victor Marrero from Rosanne Felicello dated 09/06/2022 re: Voluntary Dismissal Without Prejudice. Document filed by China AI Capital Limited..(Felicello, Rosanne) (Entered: 09/06/2022) |
| 09/06/2022 | 24 | ORDER: On September 6, 2022, plaintiff filed a request for voluntary dismissal without prejudice under Federal Rules of Civil Procedure 41(a)(1)(A)(i) and 23.1(c). (Dkt. No. 23.) Defendants are directed to respond within three (3) days of this Court's order to the plaintiff's request for voluntary dismissal. (Signed by Judge Victor Marrero on 9/6/2022) (rro) (Entered: 09/06/2022) |
| 09/09/2022 | 25 | LETTER addressed to Judge Victor Marrero from Nancy Hart dated September 9, 2022 re: response pursuant to Court's order to the plaintiff's request for voluntary dismissal. Document filed by DLA Piper LLP (US), Caryn G. Schechtman. (Attachments: # 1 Text of Proposed Order - Proposed Order pursuant to Federal Rule of Civil Procedure 23.1(c)).(Hart, Nancy) (Entered: 09/09/2022) |
| 09/12/2022 | 26 | LETTER addressed to Judge Victor Marrero from Rosanne E. Felicello dated 09/12/2022 re: Voluntary Dismissal Without Prejudice. Document filed by China AI Capital Limited. (Attachments: # 1 Text of Proposed Order Proposed Order Voluntarily Dismissing Without Prejudice).(Felicello, Rosanne) (Entered: 09/12/2022) |
| 09/13/2022 | 27 | LETTER addressed to Judge Victor Marrero from Nancy Hart dated September 13, 2022 re: response to Plaintiff's September 12, 2022 letter regarding voluntary dismissal. Document filed by DLA Piper LLP (US), Caryn G. Schechtman..(Hart, Nancy) (Entered: 09/13/2022) |
| 09/13/2022 | 28 | ORDER: IT IS HEREBY ORDERED that, within seven (7) days of the date of this Order, Plaintiff shall file with the Court a proposed form of notice of its intent to voluntarily dismiss the action to be provided to all other shareholders of Link Motion, Inc. ("Notice"), as well as a proposal for how such notice shall be distributed that meets the requirements of Federal Rule of Civil Procedure 23.1 and due process; and it is further hereby ORDERED that, within seven (7) days thereafter, Defendants shall submit by letter any response to such proposals; and it is further hereby ORDERED that, within seven (7) days of the Court's approval of the form, content and manner of distribution of the Notice, Plaintiff shall distribute the Notice to all other shareholders of Link Motion, Inc., assuming all responsibility for paying the costs and expenses related to such distribution; and it is further hereby ORDERED that, following distribution of the Notice, Plaintiff shall file with the Court proof under penalty of perjury that the Notice was provided to all shareholders in the form and manner |

| | | approved by the Court; and it is further hereby ORDERED that, after the completion of the procedures provided above, the Plaintiff shall seek the Court's consent to its proposed voluntary dismissal of this action. (Signed by Judge Victor Marrero on 9/13/2022) (tg) (Entered: 09/13/2022) |
|---|---|---|
| 09/14/2022 | 29 | ORDER The parties are directed to, within seven (7) days of the date this order, file separate letters, not to exceed three pages, addressing the following: (1) whether the decision of the Link Motion, Inc. ("LKM") Board to meet and vote on certain issues in early September 2022 violated any of the Court's orders in this matter or in Baliga v. Link Motion, Inc., No. 18-cv-11642-VM (S.D.N.Y.), and how; (2) the extent of the Court's jurisdiction to address (a) any purported violations of the Courts orders by the LKM Board and (b) the LKM Board's ability to meet; and (3) whether the state court malpractice action should be removed to federal court and related to Baliga v. Link Motion, Inc., No. 18-cv-11642-VM (S.D.N.Y.). SO ORDERED. (Signed by Judge Victor Marrero on 9/14/2022) (jca) (Entered: 09/14/2022) |
| 09/19/2022 | 30 | LETTER addressed to Judge Victor Marrero from Michael James Maloney dated September 19, 2022 re: Proposed Notice to Shareholders. Document filed by China AI Capital Limited. (Attachments: # 1 Exhibit Proposed Notice to Registered Shareholders of Link Motion, Inc.).(Maloney, Michael) (Entered: 09/19/2022) |
| 09/21/2022 | 31 | **FILING ERROR - DEFICIENT DOCKET ENTRY - (SEE DOCUMENT #32)** LETTER addressed to Judge Victor Marrero from Nancy Hart dated September 21, 2022 re: response to Courts Order dated September 14, 2022 (ECF 29). Document filed by DLA Piper LLP (US), Caryn G. Schechtman..(Hart, Grace) Modified on 9/22/2022 (lb). (Entered: 09/21/2022) |
| 09/21/2022 | 32 | LETTER addressed to Judge Victor Marrero from Nancy Hart dated September 21, 2022 re: response to Court's Order dated September 14, 2022 (ECF 29). Document filed by DLA Piper LLP (US), Caryn G. Schechtman..(Hart, Nancy) (Entered: 09/21/2022) |
| 09/21/2022 | 33 | LETTER addressed to Judge Victor Marrero from Michael James Maloney dated September 21, 2022 re: Response to Court's Order dated September 14, 2022 (Dkt. 29). Document filed by China AI Capital Limited..(Maloney, Michael) (Entered: 09/21/2022) |
| 09/26/2022 | 34 | LETTER addressed to Judge Victor Marrero from Nancy Hart dated September 26, 2022 re: response to Plaintiff China AI's September 19, 2022 letter, ECF No. 30. Document filed by DLA Piper LLP (US), Caryn G. Schechtman..(Hart, Nancy) (Entered: 09/26/2022) |
| 09/26/2022 | 35 | MOTION for Sanctions *Pursuant to Rule 11*. Document filed by DLA Piper LLP (US), Caryn G. Schechtman..(Hart, Nancy) (Entered: 09/26/2022) |
| 09/26/2022 | 36 | MEMORANDUM OF LAW in Support re: 35 MOTION for Sanctions *Pursuant to Rule 11*. . Document filed by DLA Piper LLP (US), Caryn G. Schechtman..(Rosen, Kevin) (Entered: 09/26/2022) |
| 09/26/2022 | 37 | DECLARATION of NANCY HART in Support re: 35 MOTION for Sanctions *Pursuant to Rule 11*.. Document filed by DLA Piper LLP (US), Caryn G. Schechtman. |

| | | |
|---|---|---|
| | | (Attachments: # 1 Exhibit A - Email, # 2 Exhibit B - Chart, # 3 Exhibit C - Email, # 4 Exhibit D - Email, # 5 Exhibit E - Email, # 6 Exhibit F - SEC 6-K, # 7 Exhibit G - SEC 20-F, # 8 Exhibit H - SEC 6-K, # 9 Exhibit I - SEC 6-K, # 10 Exhibit J - SEC 6-K, # 11 Exhibit K - Equity Pledge Agreement, # 12 Exhibit L - SEC 6-K, # 13 Exhibit M - Letter, # 14 Exhibit N - Letter, # 15 Exhibit O - Affidavit of Service).(Hart, Nancy) (Entered: 09/26/2022) |
| 10/03/2022 | 38 | AMENDED ORDER REFERRING CASE TO MAGISTRATE JUDGE. Order that case be referred to the Clerk of Court for assignment to a Magistrate Judge for Specific Non-Dispositive Motion/Dispute: Motion for sanctions (Dkt. No. 35) Notice to Shareholders of Voluntary Dismissal (Dkt. Nos. 30 & 34) (requesting Report and Recommendation). Referred to Magistrate Judge Valerie Figueredo. SO ORDERED. Motions referred to Valerie Figueredo. (Signed by Judge Victor Marrero on 10/03/2022) (jca) (Entered: 10/03/2022) |
| 10/05/2022 | 39 | PROPOSED STIPULATION AND ORDER. Document filed by China AI Capital Limited..(Maloney, Michael) (Entered: 10/05/2022) |
| 10/06/2022 | 40 | STIPULATION AND ORDER REGARDING BRIEFING SCHEDULE: IT IS HEREBY STIPULATED AND AGREED, as follows: Plaintiff China AI Capital Limited shall file its response to the motion on or before October 24, 2022; Defendants shall file reply papers, if any, on or before November 14, 2022. SO ORDERED. (Responses due by 10/24/2022, Replies due by 11/14/2022.) (Signed by Magistrate Judge Valerie Figueredo on 10/6/2022) (rro) (Entered: 10/06/2022) |
| 10/24/2022 | 41 | MEMORANDUM OF LAW in Opposition re: 35 MOTION for Sanctions *Pursuant to Rule 11*. . Document filed by China AI Capital Limited..(Maloney, Michael) (Entered: 10/24/2022) |
| 10/24/2022 | 42 | DECLARATION of Michael James Maloney in Opposition re: 35 MOTION for Sanctions *Pursuant to Rule 11*.. Document filed by China AI Capital Limited. (Attachments: # 1 Exhibit Baliga Complaint, # 2 Exhibit Baliga TRO, # 3 Exhibit Baliga Joint Letter, # 4 Exhibit Baliga Stipulation of Non-Opposition, # 5 Exhibit Baliga order granting PI and Receiver, # 6 Exhibit Baliga Docket Sheet, # 7 Exhibit Defendants letter and declaration requesting leave to withdraw, # 8 Exhibit Excerpt of Link Motion 2016 Form 20-F annual report, # 9 Exhibit FL Mobile Share Purchase Agreemen, # 10 Exhibit FL Mobile Supplemental Agreement, # 11 Exhibit Compilation of Link Motion press releases re state of transaction, # 12 Exhibit FL Mobile share ownership information, # 13 Exhibit Tongfang Note, # 14 Exhibit Link Motion April 10, 2018 press release re 2017 results, # 15 Exhibit February 21, 2019 affirmation of Seiden in Hong Kong, # 16 Exhibit April 18, 2019 letter from Receiver in Baliga action, # 17 Exhibit Tongfang Award, # 18 Exhibit Zhongzhi v. Shi Award, # 19 Exhibit Zhongzhi v. Link Motion Award, # 20 Exhibit Compilation of press releases by LKMForward and Receiver re engagement, TRO, and appointment, # 21 Exhibit Excerpt of Cayman Islands Companies Law, # 22 Exhibit Xinjiang NQ share ownership information, # 23 Exhibit October 23, 2020 endorsement in Baliga action re representation of Link Motion, # 24 Exhibit Notice of Motion to vacate preliminary injunction and discharge receiver in Baliga Action, # 25 Exhibit August 25, 2022 |

| | | |
|---|---|---|
| | | Decision and Order in Baliga Action, # 26 Exhibit Register of Shareholders of Link Motion, # 27 Exhibit Top Jet decision from Cayman Islands, # 28 Exhibit Link Motion S.E.C. disclosure re results of independent investigation, # 29 Exhibit Meeting Minutes of August 28, 2018 Meeting of Board of Link Motion, # 30 Exhibit Meeting Minutes of September 7, 2018 Meeting of Board of Link Motion, # 31 Exhibit May 29, 2020 Declaration of Hua Jinguyuan, # 32 Exhibit Ex. A to Hua Decl., # 33 Exhibit Ex. B to Hua Decl., # 34 Exhibit Ex. C to Hua Decl., # 35 Exhibit Ex. D to Hua Decl., # 36 Exhibit Ex. E to Hua Decl., # 37 Exhibit Ex. F to Hua Decl., # 38 Exhibit Meeting Minutes of July 18, 2018 Meeting of Board of Link Motion, # 39 Exhibit June 11, 2019 Decision and Order in Baliga Action, # 40 Exhibit Transcript of March 29, 2019 proceeding in Baliga action, # 41 Exhibit Interim Injunction Order in Hong Kong, # 42 Exhibit Declaration of Katie Pearson, # 43 Exhibit Affirmation of Seiden in Cayman Islands).(Maloney, Michael) (Entered: 10/24/2022) |
| 10/24/2022 | 43 | DECLARATION of Vincent Wenyong Shi in Opposition re: 35 MOTION for Sanctions *Pursuant to Rule 11*.. Document filed by China AI Capital Limited.. (Maloney, Michael) (Entered: 10/24/2022) |
| 10/24/2022 | 44 | DECLARATION of Rosanne E. Felicello in Opposition re: 35 MOTION for Sanctions *Pursuant to Rule 11*.. Document filed by China AI Capital Limited..(Maloney, Michael) (Entered: 10/24/2022) |
| 11/14/2022 | 45 | REPLY MEMORANDUM OF LAW in Support re: 35 MOTION for Sanctions *Pursuant to Rule 11*. . Document filed by DLA Piper LLP (US), Caryn G. Schechtman..(Rosen, Kevin) (Entered: 11/14/2022) |
| 05/10/2023 | 46 | ORDER SCHEDULING CONFERENCE: A conference to address the parties' dispute over Plaintiff's proposed notice to Link Motion, Inc. shareholders regarding Plaintiff's request for voluntary dismissal of this action (see ECF Nos. 30, 34) is hereby scheduled for Thursday, June 1, 2023 at 12:00 p.m. Counsel for the parties are directed to call Judge Figueredo's AT&T conference line at the scheduled time. Please dial (888) 808-6929; access code 9781335. SO ORDERED. ( Telephone Conference set for 6/1/2023 at 12:00 PM before Magistrate Judge Valerie Figueredo.) (Signed by Magistrate Judge Valerie Figueredo on 5/10/2023) (vfr) (Entered: 05/10/2023) |
| 05/30/2023 | 47 | LETTER MOTION to Continue *Conference scheduled for June 1, 2023 (Dkt 46)* addressed to Magistrate Judge Valerie Figueredo from Michael James Maloney dated May 30, 2023. Document filed by China AI Capital Limited..(Maloney, Michael) (Entered: 05/30/2023) |
| 05/31/2023 | 48 | ORDER denying 47 Letter Motion to Continue. The request to adjourn the conference is denied. In light of Plaintiff's indication that it may be interested in amending the complaint, the Court would like to speak to the parties about that request given the pending sanctions motion at ECF No. 35. (Signed by Magistrate Judge Valerie Figueredo on 5/31/2023) (rro) (Entered: 05/31/2023) |
| 06/01/2023 | | Minute Entry for proceedings held before Magistrate Judge Valerie Figueredo: Telephone Conference held on 6/1/2023. (sjo) (Entered: 06/01/2023) |
| 06/16/2023 | 49 | LETTER addressed to Magistrate Judge Valerie Figueredo from Michael James |

|  |  |  |
|---|---|---|
|  |  | Maloney dated June 16, 2023 re: Briefing requested during June 1, 2023 conference. Document filed by China AI Capital Limited..(Maloney, Michael) (Entered: 06/16/2023) |
| 06/23/2023 | 50 | LETTER addressed to Magistrate Judge Valerie Figueredo from Nancy Hart dated June 23, 2023 re: response to Plaintiff China AI's June 16, 2023 Letter (ECF No. 49). Document filed by DLA Piper LLP (US), Caryn G. Schechtman..(Hart, Nancy) (Entered: 06/23/2023) |
| 07/13/2023 | 51 | TRANSCRIPT of Proceedings re: CONFERENCE held on 6/1/2023 before Magistrate Judge Valerie Figueredo. Court Reporter/Transcriber: Marissa Mignano, 212 805-0300. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 8/3/2023. Redacted Transcript Deadline set for 8/14/2023. Release of Transcript Restriction set for 10/11/2023..(js) Modified on 7/13/2023 (js). (Main Document 51 replaced on 7/17/2023) (js). (Entered: 07/13/2023) |
| 07/13/2023 | 52 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT Notice is hereby given that an official transcript of a CONFERENCE proceeding held on 6/1/2023 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days....(js) (Entered: 07/17/2023) |
| 07/24/2023 | 53 | REPORT & RECOMMENDATION re: 35 MOTION for Sanctions *Pursuant to Rule 11*. filed by Caryn G. Schechtman, DLA Piper LLP (US). For the reasons discussed, I respectfully recommend that Defendants motion for Rule 11 sanctions be GRANTED and that Plaintiff and its counsel be awarded the reasonable costs and fees incurred by Defendants in defending this action. SO ORDERED. Objections to R&R due by 8/7/2023 (Signed by Magistrate Judge Valerie Figueredo on 7/24/2023) (rro) (Entered: 07/24/2023) |
| 07/26/2023 | 54 | LETTER addressed to Magistrate Judge Valerie Figueredo from Nancy Hart dated July 26, 2023 re: request for clarification of Report and Recommendation dated July 24, 2023 (ECF 53). Document filed by DLA Piper LLP (US), Caryn G. Schechtman..(Hart, Nancy) (Entered: 07/26/2023) |
| 07/26/2023 | 55 | CONSENT LETTER addressed to Judge Victor Marrero from Michael James Maloney dated July 26, 2023 re: Request for extension of time. Document filed by China AI Capital Limited..(Maloney, Michael) (Entered: 07/26/2023) |
| 07/27/2023 | 56 | ORDER: China AI Capital Limited's request (Dkt. No. 55) for a two-week extension to file objections to the Report and Recommendation issued by Magistrate Judge Figueredo, dated July 24, 2023, is hereby GRANTED. Objections shall be due by August 21, 2023. Likewise, Defendants' time to respond to the objections is extended to September 18, 2023. SO ORDERED., ( Objections to R&R due by 8/21/2023, Responses due by 9/18/2023) (Signed by Judge Victor Marrero on 7/27/2023) (ama) |

| | | (Entered: 07/27/2023) |
|---|---|---|
| 07/27/2023 | 57 | MEMO ENDORSEMENT on re: 54 Letter, filed by Caryn G. Schechtman, DLA Piper LLP (US). ENDORSEMENT: Defendants are correct; the R&R (ECF No. 53) was intended to hold that "Plaintiff and its counsel be ordered to pay the reasonable costs and fees incurred by Defendants in defending this action." The Court will enter an amended R&R correcting this error. SO ORDERED. (Signed by Magistrate Judge Valerie Figueredo on 7/27/2023) (kv) (Entered: 07/27/2023) |
| 07/28/2023 | 58 | AMENDED REPORT & RECOMMENDATION re: 35 MOTION for Sanctions *Pursuant to Rule 11.* filed by Caryn G. Schechtman, DLA Piper LLP (US). For the reasons discussed, I respectfully recommend that Defendants' motion for Rule 11 sanctions be GRANTED and that Plaintiff and its counsel be ordered to pay the reasonable costs and fees incurred by Defendants in defending this action. Objections to R&R due by 8/11/2023 (Signed by Magistrate Judge Valerie Figueredo on 7/28/2023) (rro) Modified on 7/28/2023 (rro). (Entered: 07/28/2023) |
| 08/01/2023 | 59 | CONSENT LETTER addressed to Judge Victor Marrero from Michael James Maloney dated August 1, 2023 re: Request for scheduling order re Am R&R (Dkt 58). Document filed by China AI Capital Limited..(Maloney, Michael) (Entered: 08/01/2023) |
| 08/02/2023 | 60 | MEMO ENDORSEMENT on re: 59 Letter filed by China AI Capital Limited. ENDORSEMENT Request GRANTED. The previously adopted briefing schedule is re-adopted as it pertains to the Amended R&R. Plaintiff's objections due Aug. 21, 2023; Defendants' responses due Sept. 18, 2023. SO ORDERED. (Objections to R&R due by 8/21/2023) (Signed by Judge Victor Marrero on 8/2/2023) (jca) (Entered: 08/02/2023) |
| 08/10/2023 | 61 | TRANSCRIPT of Proceedings re: Conference held on 8/24/2022 before Magistrate Judge Valerie Figueredo. Court Reporter/Transcriber: Marissa Mignano, (631) 813-9335. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 8/31/2023. Redacted Transcript Deadline set for 9/11/2023. Release of Transcript Restriction set for 11/8/2023. (nmo) (Entered: 08/10/2023) |
| 08/10/2023 | 62 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT Notice is hereby given that an official transcript of a Conference proceeding held on 08/24/2022 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days....(nmo) (Entered: 08/10/2023) |
| 08/21/2023 | 63 | OBJECTION to 53 , 58 Report and Recommendations Document filed by China AI Capital Limited..(Maloney, Michael) (Entered: 08/21/2023) |
| 09/18/2023 | 64 | RESPONSE re: 63 Objection to Report and Recommendations / *Defendants' Response to Plaintiff's Objections to Magistrate Judge Figueredo's Amended Report and* |

| | | |
|---|---|---|
| | | *Recommendation that Defendants' Motion for Rule 11 Sanctions be Granted.* Document filed by DLA Piper LLP (US), Caryn G. Schechtman..(Rosen, Kevin) (Entered: 09/18/2023) |
| 03/06/2024 | 65 | DECISION AND ORDER for 58 Report and Recommendations,, For the foregoing reasons, it is hereby ORDERED that the objections (see Dkt. No. 63) raised by plaintiff China AI Capital Ltd. ("China AI") and its counsel to the Report and Recommendation (the "R&R," see Dkt. No. 58) issued by Magistrate Judge Valerie Figueredo in this action, upon the Courts de novo review and substantially for the reasons stated by Judge Figueredo, are hereby OVERRULED; and it is further ORDERED that the R&R (see Dkt. No. 58) is hereby ACCEPTED and ADOPTED in its entirety; and it is further ORDERED that the sanctions motion (see Dkt. No. 35) brought by defendants DLA Piper LLP (US) and Caryn G. Schechtman (collectively "Defendants") pursuant to Federal Rule of Civil Procedure 11 against China AI and its counsel is hereby GRANTED; and it is further ORDERED that China AI and its counsel will be jointly and severally sanctioned in the amount of the reasonable costs and attorneys' fees incurred by Defendants in defending this action; and it is further ORDERED that the parties shall confer and shall jointly submit to the Court a proposed briefing schedule with respect to the costs and attorneys' fees incurred by Defendants in defending this action, and the reasonableness thereof, within fourteen (14) days of the date of this Order; and it is further ORDERED that the complaint filed in this action by plaintiff China AI and its counsel (see Dkt. No. 1) is hereby DISMISSED with prejudice. SO ORDERED. (Signed by Judge Victor Marrero on 3/6/2024) (ks) (Entered: 03/06/2024) |
| 03/19/2024 | 66 | PROPOSED STIPULATION AND ORDER. Document filed by DLA Piper LLP (US), Caryn G. Schechtman..(Wade, Peter) (Entered: 03/19/2024) |
| 03/20/2024 | 67 | ORDER The Court is in receipt of the parties' proposed briefing schedule on the costs and fees incurred by Defendants DLA Piper LLP (US) and Caryn G. Schechtman, and the reasonableness thereof, contemplated by the Court's Decision and Order dated March 6, 2024. (See Dkt. Nos. 65-66.) The Court hereby STAYS any motion practice on this matter until the parties have endeavored to resolve the dispute through settlement under Magistrate Judge Figueredo, to whom the matter has been referred. SO ORDERED. (Signed by Judge Victor Marrero on 3/20/2024) (jca) (Entered: 03/20/2024) |
| 03/20/2024 | 68 | AMENDED ORDER REFERRING CASE TO MAGISTRATE JUDGE. Order that case be referred to the Clerk of Court for assignment to a Magistrate Judge for Settlement, Dispositive Motion (i.e., motion requiring a Report and Recommendation).Particular Motion: Briefing on fees and costs incurred by Defendants, and reasonableness thereof, contemplated by Order at Dkt. 65.Referred to Magistrate Judge Valerie Figueredo. SO ORDERED. (Signed by Judge Victor Marrero on 3/20/2024) (jca) (Entered: 03/20/2024) |
| 03/21/2024 | 69 | ORDER SCHEDULING PRE-SETTLEMENT CONFERENCE: A pre-settlement conference call in this matter is hereby scheduled for April 25, 2024, at 10:30 a.m. Counsel for the parties are directed to call Judge Figueredo's AT&T conference line at the scheduled time. Please dial (888) 808-6929; access code 9781335. SO ORDERED. |

| | | |
|---|---|---|
| | | Telephone Conference set for 4/25/2024 at 10:30 AM before Magistrate Judge Valerie Figueredo. (Signed by Magistrate Judge Valerie Figueredo on 3/21/2024) (rro) (Entered: 03/21/2024) |
| 04/25/2024 | | Minute Entry for proceedings held before Magistrate Judge Valerie Figueredo: Status Conference held on 4/25/2024. (sjo) (Entered: 04/25/2024) |
| 05/03/2024 | 70 | LETTER addressed to Magistrate Judge Valerie Figueredo from Nancy Hart dated May 3, 2024 re: dates for settlement conference. Document filed by DLA Piper LLP (US), Caryn G. Schechtman..(Hart, Nancy) (Entered: 05/03/2024) |
| 05/09/2024 | 71 | ORDER SCHEDULING SETTLEMENT CONFERENCE: A settlement conference in this matter is hereby scheduled for Wednesday, July 17, 2024, at 10:00 a.m. in Courtroom 17-A, United States Courthouse, 500 Pearl Street, New York, New York. Corporate parties must send the person with decision making authority to settle the matter to the conference. The corporate representative for Plaintiff is permitted to attend virtually. The parties are instructed to prepare pre-conference submissions in accordance with the Judge Figueredo's Standing Order Applicable to Settlement Conferences (located at https://www.nysd.uscourts.gov/hon-valerie-figueredo). Pre-conference submissions must be received by the Court no later than July 10, 2022. SO ORDERED. Settlement Conference set for 7/17/2024 at 10:00 AM in Courtroom 17A, 500 Pearl Street, New York, NY 10007 before Magistrate Judge Valerie Figueredo. (Signed by Magistrate Judge Valerie Figueredo on 5/9/2024) (tg) (Entered: 05/09/2024) |
| 07/16/2024 | 72 | LETTER addressed to Magistrate Judge Valerie Figueredo from Michael James Maloney dated July 16, 2024 re: Request for leave to bring electronic devices into Courtroom. Document filed by China AI Capital Limited. (Attachments: # 1 Proposed Order Proposed Electronic Device Order).(Maloney, Michael) (Entered: 07/16/2024) |
| 07/16/2024 | 73 | LETTER addressed to Magistrate Judge Valerie Figueredo from Nancy Hart dated July 16, 2024 re: proposed order for electronic devices authorization. Document filed by DLA Piper LLP (US), Caryn G. Schechtman. (Attachments: # 1 Proposed Order Requesting Electronic Devices Authorization).(Hart, Nancy) (Entered: 07/16/2024) |
| 07/17/2024 | | Minute Entry for proceedings held before Magistrate Judge Valerie Figueredo: Settlement Conference held on 7/17/2024. (sjo) (Entered: 07/17/2024) |
| 07/18/2024 | 74 | ORDER: Defendants are directed to submit briefing on the amount of the sanctions award on or before Tuesday, September 3, 2024. Plaintiff is directed to submit any opposition on or before Tuesday, October 8, 2024. Any reply from Defendants is due on or before Tuesday, October 22, 2024. (Signed by Magistrate Judge Valerie Figueredo on 7/18/2024) (rro) (Entered: 07/18/2024) |
| 07/18/2024 | 75 | LETTER addressed to Judge Victor Marrero from Michael James Maloney dated July 18, 2024 re: Request to lift stay of motion practice. Document filed by China AI Capital Limited..(Maloney, Michael) (Entered: 07/18/2024) |
| 07/19/2024 | 76 | ORDER Plaintiff requests that the Court "lift the stay of motion practice entered on March 20, 2024." (Dkt. No. 75.) There is no stay to lift. The Court's March 20 order |

stated that certain motion practice regarding sanctions was stayed "until the parties have endeavored to resolve the[ir] dispute through settlement under Magistrate Judge Figueredo, to whom the matter has been referred. (Dkt. No. 67.) As Plaintiff acknowledges, the parties appeared for a settlement conference before Judge Figueredo on July 17, 2024, and a settlement was not reached. The stay therefore expired at that time. Indeed, on July 18, 2024, Judge Figueredo set a briefing schedule on the amount of the sanctions award. (See Dkt. No. 74.) Further, contrary to Plaintiff's contention, the Court's March 20 order did not stay all motion practice in this case. The order merely stayed motion practice on the amount of costs and attorneys fees to be paid as sanctions. (See Dkt. No. 67 (stating that the Court had received the parties' proposed briefing schedule "on the costs and fees incurred by Defendants...and the reasonableness thereof" and that the Court was staying "any motion practice on this matter," i.e., on the amount of costs and attorneys' fees to be paid as sanctions, "until the parties have endeavored to resolve the[ir] dispute" (emphasis added)).) Any contemplated motion for reconsideration of the Court's March 6 Decision and Order would thus appear to be untimely.SO ORDERED. (Signed by Judge Victor Marrero on 7/19/2024) (jca) (Entered: 07/19/2024)

| 09/03/2024 | 77 | LETTER MOTION to Seal *portions of Exhibit D to the Declaration of Nancy Hart in Support of Defendants Application Fees and Costs* addressed to Magistrate Judge Valerie Figueredo from Nancy Hart dated September 3, 2024. Document filed by DLA Piper LLP (US), Caryn G. Schechtman..(Hart, Nancy) (Entered: 09/03/2024) |
|---|---|---|
| 09/03/2024 | 78 | MEMORANDUM OF LAW in Support re: 74 Order, / *Defendant's Brief in Support of Their Application for Fees and Costs Pursuant to Rule 11, Pursuant and in Response to the Court's July 18, 2024 Order*. Document filed by DLA Piper LLP (US), Caryn G. Schechtman..(Hart, Nancy) (Entered: 09/03/2024) |
| 09/03/2024 | 79 | DECLARATION of of Nancy Hart in Support of Defendants' Application for Fees and Costs Pursuant to Rule 11, Pursuant and in Response to the Court's July 18, 2024 Order in Support in Support re: 74 Order,. Document filed by DLA Piper LLP (US), Caryn G. Schechtman. (Attachments: # 1 Exhibit A - Gibson Dunn Law Firm Defense Chambers Profile, # 2 Exhibit B - Nancy Hart Chambers Profile, # 3 Exhibit C - Kevin Rosen Chambers Profile, # 4 Exhibit D - Attorney Billing Records (Public), # 5 Exhibit E - Costs).(Hart, Nancy) (Entered: 09/03/2024) |
| 09/03/2024 | 80 | ***SELECTED PARTIES***DECLARATION of Nancy Hart in Support of Defendants' Application for Fees and Costs Pursuant to Rule 11, Pursuant and in Response to the Court's July 18, 2024 Order in Support re: 74 Order,. Document filed by Caryn G. Schechtman, DLA Piper LLP (US), China AI Capital Limited. (Attachments: # 1 Exhibit A - Gibson Dunn Law Firm Defense Chambers Profile, # 2 Exhibit B - Nancy Hart Chambers Profile, # 3 Exhibit C - Kevin Rosen Chambers Profile, # 4 Exhibit D - Attorney Billing Records (Sealed), # 5 Exhibit E - Costs)Motion or Order to File Under Seal: 77 .(Hart, Nancy) (Entered: 09/03/2024) |
| 09/05/2024 | 81 | ORDER granting 77 Letter Motion to Seal The sealing request herein is granted. The Clerk of Court is respectfully directed to permanently retain the viewing restrictions on ECF No. 80. The Clerk of Court is also directed to terminate the motion at ECF No. 77. (Signed by Magistrate Judge Valerie Figueredo on 9/4/2024) (jca) (Entered: |

| | | 09/05/2024) |
|---|---|---|
| 10/08/2024 | 82 | LETTER MOTION to Seal *extracts of time entries contained in Maloney Declaration dated October 8, 2024* addressed to Magistrate Judge Valerie Figueredo from Michael James Maloney dated October 8, 2024. Document filed by China AI Capital Limited.. (Maloney, Michael) (Entered: 10/08/2024) |
| 10/08/2024 | 83 | DECLARATION of Michael James Maloney in Opposition re: 82 LETTER MOTION to Seal *extracts of time entries contained in Maloney Declaration dated October 8, 2024* addressed to Magistrate Judge Valerie Figueredo from Michael James Maloney dated October 8, 2024., 35 MOTION for Sanctions *Pursuant to Rule 11*.. Document filed by China AI Capital Limited. (Attachments: # 1 Exhibit Exhibit 44 - notice in Direct Action).(Maloney, Michael) (Entered: 10/08/2024) |
| 10/08/2024 | 84 | ***SELECTED PARTIES***DECLARATION of Michael James Maloney in Opposition re: 82 LETTER MOTION to Seal *extracts of time entries contained in Maloney Declaration dated October 8, 2024* addressed to Magistrate Judge Valerie Figueredo from Michael James Maloney dated October 8, 2024., 35 MOTION for Sanctions *Pursuant to Rule 11*.. Document filed by China AI Capital Limited, DLA Piper LLP (US), Caryn G. Schechtman. (Attachments: # 1 Exhibit Exhibit 44 - notice in Direct Action)Motion or Order to File Under Seal: 82 .(Maloney, Michael) (Entered: 10/08/2024) |
| 10/08/2024 | 85 | MEMORANDUM OF LAW in Opposition re: 35 MOTION for Sanctions *Pursuant to Rule 11*. . Document filed by China AI Capital Limited..(Maloney, Michael) (Entered: 10/08/2024) |
| 10/09/2024 | 86 | ORDER granting 82 Letter Motion to Seal. The motion to seal is GRANTED. The Clerk of Court is directed to permanently seal the declaration filed at ECF No. 84. The Clerk of Court is respectfully directed to terminate the motion at ECF No. 82. (Signed by Magistrate Judge Valerie Figueredo on 10/9/2024) (sgz) (Entered: 10/09/2024) |
| 10/22/2024 | 87 | LETTER MOTION to Seal *portions of Exhibit A to the Supplemental Declaration of Nancy Hart in further Support of Defendants' Application for Fees and Costs* addressed to Magistrate Judge Valerie Figueredo from Nancy E. Hart dated October 22, 2024. Document filed by DLA Piper LLP (US), Caryn G. Schechtman..(Hart, Nancy) (Entered: 10/22/2024) |
| 10/22/2024 | 88 | **FILING ERROR - DEFICIENT DOCKET ENTRY (SEE 89 Reply Memorandum in Support) -** REPLY MEMORANDUM OF LAW in Support re: 77 LETTER MOTION to Seal *portions of Exhibit D to the Declaration of Nancy Hart in Support of Defendants Application Fees and Costs* addressed to Magistrate Judge Valerie Figueredo from Nancy Hart dated September 3, 2024., 79 Declaration in Support,, 78 Memorandum of Law in Support, . Document filed by DLA Piper LLP (US), Caryn G. Schechtman..(Hart, Nancy) Modified on 10/23/2024 (db). As per ECF-ERROR Email Correspondence received on 10/23/2024 @ 2:30pm. (Entered: 10/22/2024) |
| 10/22/2024 | 89 | REPLY MEMORANDUM OF LAW in Support re: 74 Order, /*Defendants' Reply Brief in Further Support of Their Application for Fees and Costs Pursuant to Rule 11*. |

| | | |
|---|---|---|
| | | Document filed by DLA Piper LLP (US), Caryn G. Schechtman..(Hart, Nancy) (Entered: 10/22/2024) |
| 10/22/2024 | 90 | DECLARATION of Nancy Hart in Support re: 74 Order,. Document filed by DLA Piper LLP (US), Caryn G. Schechtman. (Attachments: # 1 Exhibit A - Attorney Billing Records (Public)).(Hart, Nancy) (Entered: 10/22/2024) |
| 10/22/2024 | 91 | ***SELECTED PARTIES***DECLARATION of Nancy Hart in Support re: 74 Order,. Document filed by DLA Piper LLP (US), Caryn G. Schechtman, China AI Capital Limited. (Attachments: # 1 Exhibit A - Attorney Billing Records (Sealed))Motion or Order to File Under Seal: 87 .(Hart, Nancy) (Entered: 10/22/2024) |
| 10/23/2024 | 92 | ORDER granting 87 Letter Motion to Seal.The motion to seal is GRANTED. The Clerk of Court is respectfully directed to permanently seal Exhibit A at ECF No. 91. The Clerk of Court is directed to terminate the motion at ECF No. 87. (Signed by Magistrate Judge Valerie Figueredo on 10/23/2024) (jca) (Entered: 10/23/2024) |
| 04/22/2025 | 93 | ORDER: Accordingly, DLA Piper is directed to file under seal an unredacted version of Exhibit D with viewing restrictions limited to DLA Piper and the Court. (Signed by Magistrate Judge Valerie Figueredo on 4/22/2025) (rro) (Entered: 04/22/2025) |
| 04/22/2025 | 94 | ***SELECTED PARTIES*** LETTER addressed to Magistrate Judge Valerie Figueredo from Nancy Hart dated April 22, 2025 re: Exhibit D. Document filed by DLA Piper LLP (US). (Attachments: # 1 Exhibit D)Motion or Order to File Under Seal: 93 .(Hart, Nancy) (Entered: 04/22/2025) |
| 04/25/2025 | 95 | LETTER addressed to Magistrate Judge Valerie Figueredo from Michael James Maloney dated April 25, 2025 re: request to unseal ECF Nos. 94 and 94-1. Document filed by China AI Capital Limited..(Maloney, Michael) (Entered: 04/25/2025) |
| 04/25/2025 | 96 | LETTER addressed to Magistrate Judge Valerie Figueredo from Nancy E. Hart dated April 25, 2025 re: response to Plaintiff's Letter dated April 25, 2025 re: sealed documents. Document filed by DLA Piper LLP (US), Caryn G. Schechtman..(Hart, Nancy) (Entered: 04/25/2025) |
| 04/28/2025 | 97 | LETTER addressed to Magistrate Judge Valerie Figueredo from Nancy E. Hart dated April 28, 2025 re: Supplemental Authority in State Court Action. Document filed by DLA Piper LLP (US), Caryn G. Schechtman. (Attachments: # 1 Exhibit A - State Court Decision dated 2/14/2015, # 2 Exhibit B - State Court Supplemental Order dated 3/11/2025, # 3 Exhibit C - 4/21/2025 Transcript, # 4 Exhibit D - State Court Order on Fees dated 4/22/2025).(Hart, Nancy) (Entered: 04/28/2025) |
| 04/29/2025 | 98 | LETTER addressed to Magistrate Judge Valerie Figueredo from Michael James Maloney dated April 29, 2025 re: Response to Defendants' April 28, 2025 letter at ECF No 97. Document filed by China AI Capital Limited..(Maloney, Michael) (Entered: 04/29/2025) |
| 05/22/2025 | 99 | REPORT AND RECOMMENDATION: For the foregoing reasons, I recommend that Plaintiff and its counsel, jointly and severally, be directed to pay Defendants $634,525.39 in attorneys fee and $2,331.50 in costs. Objections to R&R due by 6/5/2025 (Signed by Magistrate Judge Valerie Figueredo on 5/22/2025) (rro) (Entered: |

| | | |
|---|---|---|
| | | 05/22/2025) |
| 06/04/2025 | 100 | PROPOSED STIPULATION AND ORDER. Document filed by China AI Capital Limited..(Maloney, Michael) (Entered: 06/04/2025) |
| 06/05/2025 | 101 | STIPULATION AND ORDER REGARDING BRIEFING SCHEDULE IT IS HEREBY STIPULATED AND AGREED, as follows: 1. Plaintiff China AI Capital Limited shall file its objections to the R&R on or before June 12, 2025; 2. Defendants shall file response papers, if any, on or before July 3, 2025; SO ORDERED. (Objections to R&R due by 6/12/2025) (Signed by Judge Victor Marrero on 6/4/2025) (jca) (Entered: 06/05/2025) |
| 06/12/2025 | 102 | OBJECTION to 99 Report and Recommendations Document filed by China AI Capital Limited..(Maloney, Michael) (Entered: 06/12/2025) |
| 07/03/2025 | 103 | RESPONSE re: 102 Objection to Report and Recommendations *that Defendants' Application for Attorneys' Fees and Costs be granted*. Document filed by DLA Piper LLP (US), Caryn G. Schechtman..(Hart, Nancy) (Entered: 07/03/2025) |
| 07/03/2025 | 104 | DECLARATION of Nancy E. Hart in Support re: 103 Response. Document filed by DLA Piper LLP (US), Caryn G. Schechtman. (Attachments: # 1 Exhibit A - April 30, 2025 Judgment for Payment).(Hart, Nancy) (Entered: 07/03/2025) |
| 07/07/2025 | 105 | LETTER addressed to Judge Victor Marrero from Rosanne E. Felicello dated 07/07/2025 re: Defendants Response to Objections to R&R. Document filed by China AI Capital Limited..(Felicello, Rosanne) (Entered: 07/07/2025) |
| 11/17/2025 | 106 | DECISION AND ORDER for 99 Report and Recommendations. For the reasons stated above, it is hereby ORDERED that the Objections (Dkt. No. 102) raised by plaintiff China AI Capital Limited and plaintiff's counsel, Michael Maloney and Rosanne Felicello of Felicello Law P.C. (collectively "China AI") to the Report and Recommendation ("R&R," Dkt. No. 99) issued on May 22, 2025, by Magistrate Judge Valerie Figueredo ("Judge Figueredo") in this action, upon the Court's de novo review, are hereby OVERRULED with prejudice. The Court adopts the recommendations set forth in the R&R in their entirety substantially for the reasons statedby Judge Figueredo in the R&R; and it is further ORDERED that judgment be entered by the Clerk of Court and an award be made in the amount of $634,525.39 in attorneys' fees and $2,331.50 in costs. SO ORDERED. (Signed by Judge Victor Marrero on 11/17/2025) (jca) Transmission to Orders and Judgments Clerk for processing. (Entered: 11/17/2025) |
| 11/18/2025 | 107 | CLERK'S JUDGMENT on Attorney Fees and Costs. Fees in favor of DLA Piper LLP (US), Link Motion Inc., Caryn G. Schechtman against China AI Capital Limited in the amount of $ 636,856.89. It is hereby ORDERED, ADJUDGED AND DECREED: That for the reasons stated in the Court's Decision and Order dated November 17, 2025, the Court adopts the recommendations set forth in the R&R in their entirety substantially for the reasons stated by Judge Figueredo in the R&R; and it is further ORDERED that judgment is entered by the Clerk of Court and an award is made in the amount of $634,525.39 in attorneys' fees and $2,331.50 in costs. (Signed by Clerk |

| | | |
|---|---|---|
| | | of Court Tammi M Hellwig on 11/18/2025) (Attachments: # 1 Appeal Package) (tp) (Entered: 11/18/2025) |
| 11/20/2025 | 108 | NOTICE OF APPEAL from 65 Order Adopting Report and Recommendations,,,,,, 99 Report and Recommendations, 67 Order,, 76 Order,,,,,, 53 Report and Recommendations, 58 Report and Recommendations,, 106 Order Adopting Report and Recommendations,,,, 107 Judgment on Attorney Fees,,,. Document filed by China AI Capital Limited. Filing fee $ 605.00, receipt number ANYSDC-32027523. Form C and Form D are due within 14 days to the Court of Appeals, Second Circuit.. (Maloney, Michael) (Entered: 11/20/2025) |
| 11/24/2025 | 109 | THIRD PARTY NOTICE OF APPEAL from 65 Order Adopting Report and Recommendations,,,,,, 99 Report and Recommendations, 67 Order,, 76 Order,,,,,, 53 Report and Recommendations, 58 Report and Recommendations,, 106 Order Adopting Report and Recommendations,,,, 107 Judgment on Attorney Fees,,,. Document filed by Stacy Felicello Law P.C., Michael James Maloney, Rosanne E Felicello. Form C and Form D are due within 14 days to the Court of Appeals, Second Circuit..(Abrams, Daniel) (Entered: 11/24/2025) |
| 11/24/2025 | | Transmission of Notice of Appeal and Certified Copy of Docket Sheet to US Court of Appeals re: 108 Notice of Appeal,,..(nd) (Entered: 11/24/2025) |
| 11/24/2025 | | Appeal Record Sent to USCA (Electronic File). Certified Indexed record on Appeal Electronic Files for 108 Notice of Appeal,, filed by China AI Capital Limited were transmitted to the U.S. Court of Appeals..(nd) (Entered: 11/24/2025) |
| 11/24/2025 | | Appeal Fee Due: for 109 Notice of Appeal,,. $605.00 Appeal fee due by 12/8/2025.. (nd) (Entered: 11/25/2025) |
| 11/25/2025 | | Transmission of Notice of Appeal and Certified Copy of Docket Sheet to US Court of Appeals re: 109 Notice of Appeal,,..(nd) (Entered: 11/25/2025) |
| 11/25/2025 | | Appeal Record Sent to USCA (Electronic File). Certified Indexed record on Appeal Electronic Files for 109 Notice of Appeal,, filed by Rosanne E Felicello, Michael James Maloney, Felicello Law P.C. were transmitted to the U.S. Court of Appeals.. (nd) (Entered: 11/25/2025) |
| 11/25/2025 | | Appeal Fee Payment: for 109 Notice of Appeal,,. Filing fee $ 605.00, receipt number ANYSDC-32043406..(Maloney, Michael) (Entered: 11/25/2025) |
| 11/25/2025 | 110 | **FILING ERROR - DEFICIENT DOCKET ENTRY -** PROPOSED ABSTRACT OF JUDGMENT. Filing fee $ 12.00, receipt number ANYSDC-32047437. Abstract of Judgment to be Mailed by the Court. Document filed by DLA Piper LLP (US). Document Number of Related Judgment: 107 ..(Stein, William) **Proposed document to be reviewed and processed by Clerk's Office staff (No action required by chambers).** Modified on 11/26/2025 (km). (Entered: 11/25/2025) |
| 11/26/2025 | | **\*\*\*NOTICE TO ATTORNEY REGARDING DEFICIENT PROPOSED ABSTRACT OF JUDGMENT: Notice to Attorney William Stein to RE-FILE Document No. 110. The filing is deficient for the following reason(s): The filing is premature. Please refer to FRCP 62. When it is time to refile, bypass the payment** |

**screen since it was already paid. (km)** (Entered: 11/26/2025)

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 12/04/2025 15:24:33 | | | |
| **PACER Login:** | mj30183018 | **Client Code:** | ChinaAI |
| **Description:** | Docket Report | **Search Criteria:** | 1:21-cv-10911-VM-VF |
| **Billable Pages:** | 16 | **Cost:** | 1.60 |

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
CHINA AI CAPITAL LIMITED,

                            Plaintiff,                        21-CV-10911 (VM) (VF)

               -against-

DLA PIPER LLP (US), and CARYN SCHECHTMAN,          **REPORT &**
                              **<u>RECOMMENDATION</u>**
                       Defendants,

               -and-

LINK MOTION INC. f/k/a NQ MOBILE INC.,

                   Nominal Defendant.
------------------------------------------------------------------X

**VALERIE FIGUEREDO, United States Magistrate Judge**

**TO THE HONORABLE VICTOR MARRERO, United States District Judge:**

      Defendants Caryn G. Schechtman and DLA Piper LLP (US) ("DLA Piper") have moved

for sanctions against Plaintiff China AI Capital Limited ("China AI") and Plaintiff's counsel,

Michael Maloney and Rosanne Felicello of Felicello Law P.C., pursuant to Federal Rule of Civil

Procedure 11 for filing a frivolous complaint that also contained false allegations. <u>See</u> ECF Nos.

35-37, 45. Plaintiff opposes the motion. <u>See</u> ECF Nos. 41-44. For the following reasons, I

recommend that the motion be **GRANTED** and that Plaintiff and its counsel be awarded the

reasonable costs and fees incurred by Defendants in defending this action.

<b><u>BACKGROUND</u></b>

  A.  <u>Factual Background</u>

      Plaintiff filed this legal-malpractice, shareholder-derivative complaint, on behalf of Link

Motion Inc. ("Link Motion"), on December 20, 2021. <u>See</u> ECF No. 1 ("Compl.") ¶¶ 1-2. The

legal-malpractice allegations in the Complaint relate to conduct by Defendants that occurred in a

1

separate lawsuit filed by Wayne Baliga against Link Motion and several of its officers and directors, including Dr. Vincent Wenyong Shi ("Shi"). See ECF No. 1 ¶¶ 1-2, No. 18-CV-11642.

Baliga commenced his suit on December 13, 2018, alleging that Shi and others were looting the company of its most valuable assets and seeking the appointment of an independent receiver to prevent further dissipation of the company's assets. Id. ¶¶ 15-22, 31, 37. That same day, Baliga notified Schechtman and DLA Piper via e-mail of the filing of the complaint and of Baliga's intent to file an Order to Show Cause ("OSC") the next day, seeking a Temporary Restraining Order ("TRO").[1] See ECF No. 37-1; Compl. ¶ 50. On December 13, Schechtman forwarded the e-mail from Baliga's counsel to Shi and another Link Motion director, asking them to "[p]lease instruct DLA if you would like us to respond." ECF No. 37-1 at 2.[2] Schechtman also stated that they "should have a call immediately to discuss—as action will be taking place tomorrow," and she added that "DLA has still not received a retainer so we would need to receive that as well." Id. Later that same day, Schechtman followed up, asking Shi, "[d]id you see the lawsuit that was filed. They are going into court in 12 hours to get a restraining order against the company."[3] ECF No. 37-2 at 5. The next day, December 14, Schechtman asked Dr. Shi, "Do you want me to send an associate?" Id. at 4. Shi responded, "OK, thanks." Id. Schechtman subsequently told Shi in an e-mail that DLA Piper would "send an

---

[1] In 2018, Link Motion retained DLA Piper to represent it in connection with a corporate transaction (see Compl. ¶¶ 22-25) and evidently because of that representation, Baliga's counsel notified Schechtman of the filing of the complaint and of Baliga's intent to seek a TRO. See ECF No. 37-1 at 2.

[2] The page numbers referenced herein for citations to the electronic docket ("ECF") are to the court-generated page numbers at the top of the cited document.

[3] This communication, and many others discussed herein, occurred via a messaging application called "WeChat." See ECF No. 37 ¶ 4. Copies of those text messages are annexed to the Declaration of Nancy Hart. See id.

associate to Court in 12 hours to advise the Court that we have received no instruction from the Company due to the time difference and language barriers. It is possible that the Court will grant the application anyway." See ECF No. 37-3 at 2. Schechtman added, "How would you like us to handle?" Id.

On December 14, Baliga filed an OSC, seeking a TRO. See ECF No. 7, No. 18-CV-11642; see also Compl. ¶ 48. Defendants appeared on behalf of Link Motion at the hearing before the Court. Compl. ¶¶ 52, 58. On December 14, the Court entered a TRO, restraining and enjoining Link Motion, Dr. Shi, and the other defendants, from liquidating, transferring, or dissipating any assets of the company. ECF No. 7, No. 18-CV-11642.

On December 17, Schechtman reached out to Shi in a text message stating, "Vincent we need to discuss how the company wants us to handle the derivative action"—referring to the Baliga action. See ECF No. 37-2 at 5. The next day, December 18, Schechtman again contacted Shi via text message stating, "We have to discuss the derivative action. We need to enter a scheduling order on Friday US." Id. On December 20, Schechtman pressed Shi via text message to "bring us current on invoices"—presumably referring to fees owed for work previously performed by DLA Piper for Link Motion. Id. at 4.

On December 21, 2018, the parties in the Baliga action filed a joint letter, notifying the Court of Link Motion's agreement to extend the TRO and requesting a deadline of January 21, 2019, to respond to Baliga's motion for a preliminary injunction. See ECF No. 20, No. 18-CV-11642. Schechtman signed the joint letter as "Counsel for Defendant, Link Motion Inc." Id. at 2.

On December 28, 2018, Schechtman sent Shi a text message explaining that DLA Piper could not "open up a litigation matter" without "payment on outstanding invoices." See ECF No. 37-2 at 3. On January 6, 2019, Schechtman warned Shi via text message, "[W]e won't be able to

3

draft the briefs that are due on [t]he 21st"—referencing the brief that needed to be filed on behalf of Link Motion if the company wanted to oppose Baliga's motion for a preliminary injunction. Id. Schechtman explained that "we can't open the matter as we have not received the retainer and we are not up to date on payment." Id. The next day, January 7, Schechtman sent Shi a text message, asking when they could "speak" and explaining to Shi that "the insurance policy has a 2.5 million dollar retention which means it won't kick in until the company has paid 2.5 million toward legal fees on the claim." Id. Later on January 7, Schechtman again asked Shi, "Can we speak?" Id. On January 8 and January 10, Schechtman again followed up with Shi in text messages, both times asking for an opportunity to speak to Shi. Id. On January 14, 2019, Schechtman asked Shi, "When can we speak." Id. Schechtman informed Shi that she "need[ed] to let the other side and the court know what we are doing. We have to start drafting today. It's one week out"—referring again to the need to file briefing in opposition to Baliga's preliminary injunction motion. Id.

On January 14, 2019, DLA Piper sent an e-mail to Shi and the Link Motion Board, written in English and Mandarin, stating that the opposition to Baliga's motion for a preliminary injunction and appointment of a receiver was due on January 21, 2019. See ECF No. 37-4 at 3. The e-mail explained, "If we do nothing, the motion may be granted, which may include such relief as appointing a receiver over the company and a preliminary injunction restricting the Company from transferring assets." Id. at 3. The e-mail further explained, "We have repeatedly asked for instruction on how to proceed but have not received any guidance from the Company or the individual defendants and advised that if we do not receive payment for legal services, we cannot take on this litigation matter." Id. at 4.

4

The next day, January 15, Schechtman sent another text message to Shi stating, "If I do not hear from you in 24 hours I will need to alert the Court that we have not been engaged to proceed further on the Company's behalf." See ECF No. 37-2 at 3. On January 17, Schechtman again contacted Shi via text message stating, "I have not heard from you. We have not prepared briefs and will not be in a position to represent the company in the derivative action." Id. Later that same day, Schechtman told Shi, "Can you give me a quick call. I want to avoid withdrawing as Counsel on the derivative action because it will look bad for the company. Instead I would prefer for the company to agree that it isn't submitting papers on Jan 21." Id. A few hours later, Schechtman again reached out to Shi via text message stating, "We must speak. When can you talk?," adding, "I need you to confirm that we can tell the court you aren't responding." Id. at 2.

On January 18, 2019, DLA Piper followed-up on its e-mail from January 14, forwarding the prior email in its new communication with the company. See ECF No. 37-4. In an e-mail to Shi and the Link Motion Board, written in both English and Mandarin, DLA Piper indicated that it had "not heard back from [the company]" regarding the January 14th e-mail. Id. at 2. The e-mail continued:

> [I]f we do not hear back from you within 24 hours, DLA will assume that we have Link Motion's consent not to oppose the motion [for a preliminary injunction]. As explained below [(referencing the January 14 e-mail)], we reiterate that if Link Motion does not respond, the motion may be granted, which may include such relief as appointing a receiver over the company and a preliminary injunction restricting the Company from transferring assets, attorneys' fees and cost, and other such relief that the Court may deem appropriate. It may also include relief as to Plaintiff's request for an order requiring the Defendants to restore all assets transferred to third parties within the past ninety days. It may include other relief as well. Further, if we do not hear back from you within 24 hours, we will also assume that we have Link Motion's consent to withdraw from representation.

Id. The e-mail further stated that if the company did not respond, DLA Piper would notify the Court that the company would not be submitting an opposition to Baliga's motion for a preliminary injunction and appointment of a temporary receiver. Id.

On January 19, 2019, Schechtman sent a text message to Shi, asking him to call her and stating that they "need[ed] to speak." See ECF No. 37-2 at 2. Separately, Schechtman contacted Crystal Zhanglu, a Senior Legal Manager at Link Motion, via text message and said: "Crystal it is important that I speak with you and Vincent as soon as possible. When can we speak." Id. at 5. On January 20, Schechtman continued her efforts to speak with Shi, asking Shi via text message: "[Y]ou owe me the courtesy of a call. Please call me." Id. at 2. Later on January 20, Schechtman asked Shi: "Do you want us to do the answer. We will need some payment. Otherwise I'm not sure what to recommend. You don't want a default judgment entered. Answers are not that expensive." Id. About an hour later, Schechtman sent another text message asking Shi, "I would like your consent for us to withdraw as your counsel from the litigation if you determine not to pay us to go forward." Id. Schechtman then told Shi, "I am trying to do what is best for the company but we cannot work for no payment." Id. On January 21, 2019, Schechtman asked Shi via text message to please "respond" and stated that "[t]he other option is we also withdraw as Counsel now." Id. Shi responded to Schechtman in a text message stating that he "fully respect[ed] and appreciate[d] [her] excellent work." Id. Shi explained that, "at this moment, it's very hard to make any further payment arrangement, even employees' payrolls were impacted. I'm very sorry about this situation and also bear huge pressure from many parties." Id.

On January 21, 2019, Baliga and Link Motion filed a joint stipulation, whereby Link Motion agreed not to oppose the entry of a preliminary injunction and obtained an extension of time to answer or otherwise respond to the complaint. See ECF No. 22, No. 18-CV-11642. In the

6

stipulation, DLA Piper represented that it was acting as "Counsel for Defendant Link Motion Inc." Id. at 3. On February 1, 2019, the Court entered an order granting Baliga's motion for a preliminary injunction and appointing a Receiver. See ECF No. 26, No. 18-CV-11642.

On March 1, 2019, Defendants moved for leave to withdraw as counsel for Link Motion. See ECF No. 28, No. 18-CV-11642. In a letter to the Court, Schechtman explained that DLA Piper sought to withdraw as counsel, because Link Motion "has been unable to pay DLA's legal fees and has represented that it cannot do so at this time," and "has not cooperated in its representation by failing to respond to inquiries." Id. at 1. Schechtman elaborated that Link Motion "had failed to pay outstanding and overdue legal fees owed to DLA despite repeated requests to pay." Id. at 3. Schechtman explained that the firm had "appeared in this action after [Baliga] filed [his] Complaint and [Order to Show Cause] in order to protect Link Motion's immediate interest in the emergency filing and to allow Link Motion the opportunity to determine whether to contest the matter." Id. Schechtman added that "Link Motion ha[d] failed to cooperate in the representation by failing to respond to inquiries, thus making the representation unreasonably difficult for DLA to carry out its representation effectively." Id. The Court granted Defendants' request to withdraw on March 1. See id. at 4; see also Compl. ¶ 82.

Following DLA Piper's withdrawal as counsel on March 1, 2019, Shi retained new counsel, and counsel filed a motion to dismiss and to discharge the Receiver on March 27, 2019. See ECF Nos. 35-37, No. 18-CV-11642. On March 29, 2019, the Court held a conference, at which counsel for Shi was present, and where counsel for Baliga indicated that Baliga was not a registered shareholder because he held Link Motion American Depository shares ("ADS"). See ECF No. 41 at 19, No. 18-CV-11642. In Shi's motion to dismiss, his new counsel did not argue

7

that Baliga lacked standing to bring his claims because he was a holder of ADS. See ECF No. 37 at 12-21, No. 18-CV-11642.

On March 19, 2020, the Receiver notified the Court that he had obtained a copy of an arbitration award, which was issued relating to an arbitration filed by Tongfang Investment Fund Series SPC ("Tongfang") in April 2019 against Link Motion (the "Tongfang Arbitration Award"). See ECF No. 269 at 1, No. 18-CV-11642. According to that award, Tongfang obtained damages of 2.52 billion RMB (approximately $400 million) against Link Motion. Id. The award indicated that Link Motion was not "legally represented in this arbitration." Id. Instead, the company "opted not to submit any document" and "did not file any Statement of Defence [sic]." Id. at 2. Further, the award noted that Shi, in an e-mail from May 5, 2019, "confirmed to [the arbitration tribunal] that he was acting on behalf of [the company]." Id. at 1-2.

B. Procedural Background

1. China AI's derivative legal-malpractice suit against Defendants

Plaintiff commenced this derivative, legal-malpractice action on behalf of Link Motion on December 20, 2021. See Compl. ¶¶ 1-2. In its complaint, Plaintiff alleges that Defendants acted as counsel for Link Motion in the Baliga action. See, e.g., id. ¶¶ 4, 58-59. According to Plaintiff, Baliga lacked standing to bring a derivative claim on behalf of Link Motion under the laws of the Cayman Islands, because he was a holder of ADS and thus not a "registered owner[ ] of shares." Id. ¶¶ 41, 44-46. Plaintiff alleges that Defendants, at the time of the TRO hearing on December 14, "knew or should have known that Baliga was not a registered shareholder and, therefore, lacked standing . . . to bring the derivative action." Id. ¶ 53. And because Baliga lacked standing, Plaintiff contends that Defendants should have known that the Court lacked jurisdiction to grant any provisional equitable relief. Id. ¶ 54.

Plaintiff avers that it did not receive advice from Defendants concerning Link Motion's "defense based on Baliga's lack of standing." Id. ¶¶ 69-71, 77-80. According to Plaintiff, Defendants' "failure to recognize Baliga's fundamental lack of standing and to assert that lack of standing as a defense to the Baliga Action" amounted to professional malpractice which was the but-for cause of Link Motion's damages. See id. ¶¶ 7, 55, 83, 85-94. Those purported damages flow, in part, from an arbitration involving Link Motion and Tongfang, which, according to Plaintiff, ultimately resulted in Link Motion losing one of its "most valuable assets at the time." See, e.g., id. ¶¶ 8, 65, 81, 85-91, 113.

At the time Baliga commenced his derivative lawsuit, Link Motion was a party to a Share Purchase Agreement ("SPA") with Tongfang. Id. ¶¶ 61-62. Pursuant to that SPA, Link Motion was required to transfer shares of FL Mobile, one of Link Motion's legacy businesses, to Tongfang. Id. ¶ 62. According to the Complaint, the "SPA was executory: Tongfang SPC had already conveyed to [Link Motion] consideration for the transaction," but Link Motion's obligation to transfer the FL Mobile shares to Tongfang had not yet been triggered. Id. ¶¶ 63-64. However, because of the TRO, Plaintiff contends that Link Motion was "restrained from performing its obligations to cause the transfer of FL Mobile shares [to Tongfang] in accordance with the SPA." Id. ¶¶ 65, 85. Plaintiff alleges that because Link Motion failed to transfer the FL Mobile shares, Tongfang commenced an arbitration proceeding against Link Motion and the arbitration resulted in the Tongfang Arbitration Award of approximately $396,000,000 against Link Motion. Id. ¶¶ 87-88. Further, Plaintiff claims that Link Motion's "inability to complete the transfer of FL Mobile" also resulted in the company losing the value it had ascribed to the Tongfang Transaction—a "deferred net gain" of $180,400,000. See id. ¶¶ 90, 113.

9

On September 6, 2022, Plaintiff filed a notice of voluntary dismissal without prejudice under Federal Rules of Civil Procedure 41(a)(1)(A) and 23.1. See ECF No. 22. Because Rule 23.1(c) requires that notice of a voluntary dismissal of a derivative action be given to other shareholders, the Court required Plaintiff to file a proposed notice, for the Court's review and approval. See ECF No. 28. On September 19, 2022, Plaintiff submitted its proposed notice. See ECF No. 30. On September 26, 2022, Defendants raised several objections to the proposed notice submitted by Plaintiff. See ECF No. 34. On September 26, 2022, Defendants filed the instant motion for sanctions under Rule 11. See ECF No. 35. On October 3, 2022, the motion for sanctions and approval of the notice to shareholders was referred to the undersigned for issuance of a Report and Recommendation. See ECF No. 38.

2. *Link Motion's direct legal-malpractice suit against Defendants*

On September 12, 2022, Link Motion commenced an action in the Supreme Court of New York against Defendants, asserting a legal-malpractice claim arising out of Defendants' conduct in the Baliga action that was "the mirror-image" of the malpractice suit brought by Plaintiff here. See No. 22-CV-8313 (ECF No. 1 at ¶¶ 1-2; ECF No. 1-1 at ¶¶ 1-2, 4, 30-31; ECF No. 24 at 20). Defendants removed that action to this Court on September 29, 2022. See ECF No. 1, No. 22-CV-8313.

On May 26, 2023, the Honorable Victor Marrero issued an order holding that Link Motion's legal-malpractice claim was time barred and granting Defendants' motion to dismiss the complaint with prejudice. See ECF No. 30, No. 22-CV-8313.

On May 30, 2023, Plaintiff submitted a letter, seeking to adjourn a conference in the instant case, which was scheduled to address the pending motion for approval of Plaintiff's proposed notice to shareholders. See ECF No. 47. Counsel for Plaintiff contended that, given the

dismissal of Link Motion's direct legal-malpractice action by Judge Marrero, Plaintiff now had the right to withdraw its notice of voluntary dismissal in this action and seek leave to amend the complaint. Id. at 1. Counsel requested an adjournment of the conference in order to discuss with Plaintiff its options going forward. Id. at 2. At the conference, which proceeded as scheduled on June 1, Defendants argued that the derivative action must be dismissed, because Link Motion had directedly asserted its legal-malpractice claim and the claim was dismissed on the merits. See ECF No. 51 ("Tr.") at 4-6, 8-10.

Following the conference, Defendants submitted a letter brief, again arguing that Plaintiff's derivative action must be dismissed because Link Motion asserted its claim directly and dismissal of that claim on the merits barred Plaintiff's derivative action. See ECF No. 50 at 1-2. Plaintiff also submitted a letter, contending that a stay of the instant action was appropriate while Link Motion awaited a decision by Judge Marrero on its pending motion for reconsideration of the May 26 order. See ECF No. 49 at 2. Alternatively, Plaintiff argued that it should be allowed to withdraw its notice of voluntary dismissal and be permitted to amend its complaint. Id. at 2-3. Lastly, Plaintiff contended that claim preclusion typically applied to bar a later filed case, whereas Plaintiff filed its claim first, before Link Motion. Id. at 1.

## DISCUSSION

A. Legal Standards For Rule 11 Sanctions

Federal Rule of Civil Procedure 11 imposes on a party who signs a pleading, motion, or other paper "an affirmative duty to conduct a reasonable inquiry into the facts and the law before filing." Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc., 498 U.S. 533, 551 (1991). Among other things, under Rule 11 an attorney filing a pleading certifies, "to the best of the

[attorney's] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," that:

> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; [and]
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery[.]

Fed. R. Civ. P. 11(b)(1)-(3); see also Yeremis v. Amerit Fleet Solutions, No. 20-CV-4723 (GHW), 2021 WL 1565693, at *9-10 (S.D.N.Y. Apr. 21, 2021).

Under Rule 11(b), there are two grounds for sanctions: "the frivolous clause and the improper purpose clause." Yeremis, 2021 WL 1565693, at *10. The frivolous clause looks at "whether the party or attorney has made a reasonable inquiry into the facts, and whether the party has made a reasonable inquiry into the law." Id. "An argument constitutes a frivolous legal position for purposes of Rule 11 sanctions if, under an objective standard of reasonableness, it is clear . . . that there is no chance of success and no reasonable argument to extend, modify or reverse the law as it stands." Morley v. Ciba–Geigy Corp., 66 F.3d 21, 25 (2d Cir. 1995) (cleaned up); see also Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd., 682 F.3d 170, 177 (2d Cir. 2012) ("[T]he standard for triggering the award of fees under Rule 11 is objective unreasonableness and is not based on the subjective beliefs of the person making the statement.") (alteration in original, citations omitted).

In determining whether to impose sanctions, courts consider a number of factors, such as:

> (1) whether the improper conduct was willful, or negligent; (2) whether it was part of a pattern o[f] activity, or an isolated event; (3) whether it infected the entire pleading, or only one particular count or defense; (4) whether the person

12

has engaged in similar conduct in other litigation; (5) what effect it had on the litigation process in time or expense; (6) whether the responsible person is trained in the law; [and] (7) what amount, given the financial resources of the responsible person, is needed to deter that person from repetition in the same case.

Bobcar Media, LLC v. Aardvark Event Logistics, Inc., No. 16-CV-885 (JPO), 2019 WL 422613, at *3 (S.D.N.Y. Feb. 4, 2019). If "the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c)(1). However, for a violation of subsection (b)(2) of Rule 11, a court may impose sanctions on an attorney, but not a party. See Holmes v. Allstate Corp., No. 11-CV-1543 (LTS) (DF), 2012 WL 627238, at *14 (S.D.N.Y. Jan. 27, 2012); Zagami v. Cellceutix Corp., No. 15-CV-7194 (KPF), 2017 WL 1180923, at *10 (S.D.N.Y. Mar. 29, 2017). Any sanction "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4); see also Tantaros v. Fox News Network LLC, No. 17-CV-2958 (GBD), 2018 WL 1662779, at *3 (S.D.N.Y. Mar. 16, 2018) ("[C]ourts must remain mindful that the point of Rule 11 sanctions is not to compensate or reimburse the defendants for the totality of their losses, but rather to punish and to deter future similar conduct.").

"Courts maintain a high bar for establishing a Rule 11 violation given judicial concern for encouraging zealous advocacy." E. Gluck Corp. v. Rothenhaus, 252 F.R.D. 175, 179 (S.D.N.Y. 2008). And, a finding that Rule 11 was violated "does not compel the imposition of sanctions." Braun ex rel. Advanced Battery Techs., Inc. v. Fu, No. 11-CV-4383 (CM) (DF), 2015 WL 4389893, at *12 (S.D.N.Y. July 10, 2015) (citation and internal quotation marks omitted). Nevertheless, "the decision whether or not to impose sanctions is a matter for the court's discretion." Bobcar Media, LLC v. Aardvark Event Logistics, Inc., No. 16-CV-885 (JPO), 2019 WL 422613, at *2 (S.D.N.Y. Feb. 4, 2019).

A party's motion for sanctions must comply with Rule 11's safe-harbor requirement and provide the opposing party with a draft of the motion 21 days before filing it with the court. See Rule 11(c)(2); see also ED Capital, LLC v. Bloomfield Inv. Res. Corp., 316 F.R.D. 77, 82 (S.D.N.Y. 2016). "The non-movant is then afforded a 21-day safe harbor period to withdraw or correct the challenged paper, claim, defense, contention, or denial before the movant is allowed to file or present the motion to the court." New V & J Produce Corp. v. NYCCaterers Inc., No. 13-CV-4861 (ER), 2014 WL 5026157, at *4 (S.D.N.Y. Sept. 29, 2014).

Before filing the instant motion, Defendants complied with the safe-harbor requirement in Rule 11(c)(2). Defendants notified Plaintiff of their intent to file the Rule 11 motion in a letter that outlined the specific grounds for sanctions raised in the instant motion. See ECF No. 37 at ¶ 16; ECF No. 37-14 (Ex. N). And Defendants filed an affidavit of service, which indicates that the letter was served on Plaintiff's counsel on March 8, 2022. See ECF No. 37 at ¶ 17; ECF No. 37-15 (Ex. O). Plaintiff did not respond to Defendants' letter. See ECF No. 36 at 13. Defendants did not file their sanctions motion until September 26, 2022, well after the 21-day period required under Rule 11(c)(2). See ECF No. 35.

## B. Rule 11 Sanctions Are Warranted

Defendants advance three grounds in support of their request for sanctions against Plaintiff and its counsel. See ECF No. 36. First, Defendants contend that Plaintiff and its counsel violated Rule 11(b)(3), because they knowingly made false allegations in the Complaint. Id. at 20-23. More specifically, Defendants argue that Link Motion's public statements indicated that the Tongfang Transaction closed in December 2017, a year before Baliga filed his complaint in December 2018, and therefore the shares in FL Mobile were transferred to Tongfang long before the appointment of the Receiver. Id. at 21-22. In other words, Defendants aver that the appointment of the Receiver could not (and did not) prevent the transfer of FL Mobile shares

14

from Link Motion to Tongfang, notwithstanding Plaintiff's allegations to the contrary in the Complaint. See, e.g., Compl. ¶¶ 62-65, 85-87, 91.

Second, Defendants argue that Plaintiff and its counsel also violated Rule 11(b)(2), because the legal-malpractice claim is frivolous. ECF No. 36 at 25-30. Defendants contend that Plaintiff will be unable to establish multiple elements of its claim, including that Defendants actions or inactions were the but-for cause of Link Motion's damages. Id. at 26-27. Additionally, Defendants aver that Shi's retention of counsel after DLA Piper withdrew from the Baliga action was an intervening event that defeats causation as a matter of law. Id. at 28. Finally, Defendants claim that Plaintiff itself lacks standing to assert this derivative legal-malpractice claim on behalf of Link Motion. Id. at 28-29. For all of these reasons, Defendants argue that Plaintiff and its counsel filed a claim that has no chance of success.

Lastly, Defendants contend that Plaintiff and its counsel violated Rule 11(b)(1), because Plaintiff filed the Complaint for an improper purpose. Id. at 30. Defendants argue that the only reasonable inference from Plaintiff's decision to continue with its "patently deficient" claim is to harass Defendants and threaten significant reputational harm on the law firm and one of its lawyers. Id.

Defendants are correct that sanctions under Rule 11 are appropriate here. In commencing the instant action, neither Plaintiff nor its counsel could have reasonably believed that the allegations in the Complaint—concerning Link Motion's purported inability to transfer the FL Mobile shares because of the appointment of the Receiver—had evidentiary support. Likewise, Plaintiff's legal-malpractice claims suffers from multiple deficiencies that viewed collectively should have led counsel to conclude that the claim had no chance of success. Finally, Defendants raised all of these grounds in a letter to Plaintiff's counsel on March 7, 2022. See ECF No. 16.

15

Plaintiff nevertheless declined to voluntarily withdraw the action until six months later, in September 2022, see ECF No. 22, but only after Plaintiff's counsel filed a similar lawsuit, this time on behalf of Link Motion, against Defendants in state court. See ECF No. 1, No. 22-CV-8313. Then, after the direct legal-malpractice claim by Link Motion was dismissed with prejudice by Judge Marrero, Plaintiff baselessly argued that it should be permitted to withdraw its voluntary dismissal of this action and amend the Complaint. Simply put, Plaintiff's decision to continue pursuing this legal-malpractice claim against Defendants is objectively unreasonable and can only be viewed as an attempt to harass Defendants and cause reputational harm.

1. *Plaintiff made false allegations in its complaint in violation of Rule 11(b)(3).*

The Complaint alleges that prior to the entry of the TRO, "[w]hat remained to be performed under the SPA was [Link Motion's] obligation to cause the transfer of FL Mobile shares in accordance with the SPA." Compl. ¶¶ 62-64. The Complaint further alleges that the TRO and preliminary injunction "prevented [Link Motion] from satisfying its obligation to non-party Tongfang SPC (causing the transfer of the Company's legacy business, FL Mobile) after Tongfang SPC had already paid [Link Motion] consideration as required by the SPA." Id. ¶ 85. At the time Plaintiff filed its Complaint, neither Plaintiff nor its counsel could have reasonably believed that those allegations had or were likely to have evidentiary support. See G-I Holdings, Inc. v. Baron & Budd, No. 01-CV-216 (RWS), 2002 WL 1934004, at *13 (S.D.N.Y. 2002). Instead, numerous public filings by Link Motion—made by the company with the SEC— indicate that Link Motion transferred its shares in FL Mobile to Tongfang *before* Baliga filed his suit in December 2018. And these public filings would have been available to Plaintiff and its counsel before it commenced this action, after a reasonable inquiry into the evidentiary support for the factual allegations in the Complaint.

For instance, in March 2017, Link Motion announced, in a Form 6-K filing with the SEC, that it had entered into a "definitive agreement[ ]" to sell its interests in FL Mobile, and another business, to Tongfang. See ECF No. 37-6 at 5; see also ECF No. 37-7 at 4. The SPA, which was entered into on March 30, 2017, provided that the shares in FL Mobile would be transferred to Tongfang upon Tongfang completing its payment obligations. See ECF No. 228-4 at 7, No. 18-CV-11642 (Share Purchase Agreement). In a Form 20-F filed with the SEC for the 2016 fiscal year, Link Motion represented that it had "transferred [its] equity interests in FL Mobile and Showself (Beijing), while the purchasers still have certain period to complete their payment obligations." ECF No. 37-7 at 4; see also id. (describing the transfer as a "divestment[ ]" and discussing the financial "impact of these divestments" to Link Motion). Alongside the SPA, Tongfang and Link Motion executed a Supplemental Agreement on March 31, 2017. See ECF No. 42, ¶¶ 30-31; see also ECF No. 42-10 (Supplemental Agreement). That Supplemental Agreement provided for the FL Mobile shares to be held in trust by Shi until the "closing" of the SPA—that is, until Tongfang fulfilled its payment obligation. Id. ¶¶ 31-34.

Tongfang completed its payment obligation pursuant to the SPA in December 2017. In December 2017, Link Motion announced a "significant event[ ]," in a Form 6-K filed with the SEC—namely, the "completion of the FL Mobile Divestment." ECF No. 37-8 at 6. As is relevant here, the company's filing with the SEC stated:

> The Company announced in a press release on December 14, 2017 that it had *completed the divestment of FL Mobile* and sale of Showself's Live Social Video Business. The Company received in aggregate a total of approximately RMB 3,320 million, consisting of approximately RMB 1,550 million in cash and RMB 1,770 million in a senior note, which together *totals 100% of the agreed upon price* pursuant to the definitive agreements with Tongfang Investment Fund Series SPC.

17

ECF No. 37-8 at 6 (emphasis added). The filing confirms that Tongfang completed its payment obligations by paying for the shares with cash and a senior note issued to Link Motion for RMB 1,770 million (the "Tongfang Note"). Id.; see also ECF No. 37-9 (Letter to shareholders from Shi explaining that Link Motion received as "total consideration" for the transaction, "RMB 3.32 billion in cash and senior note from Tongfang"). The Tongfang Note was due to be paid in December 2018. ECF No. 37-8 at 7 (indicating that it was a "one-year senior note" that could be extended "by another 12 months at [Link Motion's] option"). As the company's statement with the SEC makes clear, however, Link Motion received "100% of the agreed upon price pursuant" to the SPA in December 2017, and consequently, Link Motion announced that it had reclassified FL Mobile as "discontinued operations." Id. at 5-6.

Consistent with the SEC filing, Shi subsequently represented to Link Motion's shareholders that the Tongfang Transaction had been completed. Shi, as Chairman of Link Motion, told Link Motion's shareholders in a letter that was publicly filed on February 9, 2018, that the transaction with Tongfang was "completed on December 14, 2017." ECF No. 37-9 at 5. And on April 11, 2018, Link Motion, in a Form 6-K filed with the SEC, again reported that it had "[c]ompleted the FL Mobile Divestment," explaining that the company "recognized $161.5 million of gain in the fourth quarter and booked $180.4 million as deferred gain from the disposal of discontinued operations to be recognized when the receivables from the purchasers are collected in future periods." ECF No. 37-10 at 5. All of these public statements consistently represented to investors and the public that the Tongfang Transaction was complete and that therefore Link Motion had fulfilled its obligation under the SPA to transfer its shares in FL Mobile to Tongfang.

That conclusion is bolstered by the existence of the Equity Pledge Agreement. Tongfang and Link Motion executed an "Equity Pledge Agreement" when Tongfang issued the Tongfang Note. See ECF No. 37-11. That Equity Pledge Agreement gave Link Motion the right to retake ownership of the FL Mobile shares if Tongfang failed to pay the Tongfang Note. Id. at 2-3. In a Form 6-K filed with the SEC on September 10, 2018, Link Motion explained that "[i]n connection with the sale of FL Mobile shares" to Tongfang, "the agreements signed with Tongfang" gives Link Motion "the ability to *recover the shares* it has sold to Tongfang if Tongfang fails to pay its RMB 1.77 billion senior note delivered in payment for those shares." ECF No. 37-12 at 6 (emphasis added). And, tellingly, the Equity Pledge Agreement itself states that the "Target Assets"—defined as "63% equity of FL Mobile"—"are held by Party B," and Party B is defined in the agreement as "Tongfang Investment Fund Series SPC." See ECF No. 37-11 at 2. In other words, at the time of the Equity Pledge Agreement, the FL Mobile shares were "held by" Tongfang, not Link Motion. Id.

All of these public representations by Link Motion indicate that the transaction with Tongfang was completed in December 2017, and that as a result of that transaction, Link Motion received payment from Tongfang and transferred its shares in FL Mobile to Tongfang. Moreover, there would have been no reason for the Equity Pledge Agreement—allowing Link Motion to *recover* ownership in FL Mobile shares from Tongfang—if Link Motion had not transferred those shares to Tongfang. That agreement gave Link Motion a security interest in the shares precisely because the shares were held by Tongfang. None of Link Motion's public representations about the FL Mobile shares can be squared with the allegations in the Complaint that Link Motion's "obligation to cause the transfer of FL Mobile shares" had not occurred before the appointment of the Receiver in February 2019. See, e.g., Compl. ¶¶ 64, 86.

19

In defense of its allegations in the Complaint, Plaintiff argues that the transfer of FL Mobile shares could not occur until the Tongfang Note was paid, which was to occur at "the end of December 2018," and did not actually occur because the appointment of the Receiver prevented Link Motion from fulfilling its obligation to transfer the FL Mobile shares. ECF No. 41 at 16-17. As an initial matter, the principal on the Tongfang Note was due on December 14, 2018, the day the Court issued the TRO in the Baliga action, and interest in arrears on the Note was due on December 12, 2018, the day before the Baliga action was commenced. See ECF No. 42-13 at 11 (clauses 1.3 and 3.1). The Tongfang Note was thus due in full prior to the appointment of the Receiver, in February 2019.

In any case, Plaintiff's argument that the issuance of the TRO somehow interfered with Tongfang's repayment of the Tongfang Note is nonsensical. ECF No. 41 at 17. The TRO merely prohibited Link Motion from "transferring, liquidating, dissipating, assigning, and/or granting a lien or security interest or other interest in, any assets" belonging to the company. See ECF No. 7 at 1, No. 18-CV-11642. Nothing in the language of the TRO prevented Link Motion from enforcing the Tongfang Note, receiving payment under the Note, or foreclosing on its security interest in the FL Mobile shares if Tongfang failed to repay the Note. What's more, it is evident from the Tongfang Arbitration Award that the arbitrator found that Tongfang *had completed* its payment obligations in December 2017, and that Link Motion was obligated to transfer the Link Motion shares in December 2017—a year before Baliga filed his complaint. See ECF No. 42-17 at 8-10 (specifically, ¶¶ 21-22).

Plaintiff also argues that the word "completion" as used in the various press releases from the company referred only to "deconsolidation of financial results, not legal completion of Tongfang's obligations to Link Motion under the Note." ECF No. 41 at 17. That argument falls

20

flat given the public statements by Link Motion and Shi that unambiguously announced completion of the transaction and receipt of full payment from Tongfang for the FL Mobile shares. See, e.g., ECF No. 37-8 at 6-7 (Link Motion announcing in December 2017 that it had "received . . . 100% of the agreed upon price" and "completed the FL Mobile Divestment"); ECF No. 37-9 at 5 (Shi informing shareholders that "the transaction completed on December 14, 2017" and that "the total consideration received by [Link Motion] as of December 14, 2017 amounted to" cash and a senior note from Tongfang).

To save its allegations, Plaintiff conflates completion of the bargained-for exchange under the SPA with payment by Tongfang of the Tongfang Note. As Link Motion indicated in public filings, it received "100% of the agreed upon price" for the FL Mobile shares, and it accepted as payment for those shares a combination of cash and a note. See ECF No. 37-8 at 6-7. Acceptance of that payment, in exchange for the transfer of the FL Mobile shares, consummated the Tongfang Transaction in December 2017. Whether Tongfang subsequently repaid the Tongfang Note is distinct from whether the transaction was completed. And, this distinction is borne out by the company's own public filings which unambiguously stated that the transaction was completed. Those public statements did not link completion of the transaction with payment in full of the Tongfang Note.

Moreover, even if the word "completion" in the company's public filings could be construed as referring merely to the company removing the FL Mobile business from its balance sheet (as Plaintiff now argues), that still does not explain the language in the Equity Pledge Agreement. That agreement describes the FL Mobile shares as being "held by" Tongfang. See ECF No 37-11 at 2. And in another public filing with the SEC filed on September 10, 2018, the company, consistent with the Equity Pledge Agreement, represented that it had "the ability to

*recover the shares* it has sold to Tongfang if Tongfang fails to pay its RMB 1.77 billion senior note delivered in payment for those shares." See ECF No. 37-12 at 6 (emphasis added). The use of the word "recover" by Link Motion in reference to the FL Mobile shares further demonstrates that it no longer had possession of those shares.

In short, a reasonable inquiry by Plaintiff and its counsel would have revealed Link Motion's public statements about the Tongfang Transaction. And given those public statements, Plaintiff and its counsel could not have reasonably concluded that the factual allegations in the Complaint would have evidentiary support.

2. *Plaintiff's legal-malpractice claim is frivolous in violation of Rule 11(b)(2).*

Defendants also seek sanctions on the basis that Plaintiff's legal-malpractice claim is frivolous, in violation of Rule 11(b)(2). ECF No. 36 at 25-30. Even if the allegations in the Complaint concerning the inability to transfer the FL Mobile shares because of the Receiver's appointment had evidentiary support, Plaintiff's claim would still suffer from multiple deficiencies. When these obvious deficiencies are viewed collectively, the only plausible conclusion is that it was objectively unreasonable for Plaintiff to have commenced this action against Defendants.

To begin, the parties dispute whether Link Motion retained Defendants to represent the company in the Baliga action, thereby creating the existence of an attorney-client relationship. Compare ECF No. 36 at 23-25 with ECF No. 41 at 15-16, 21-22; see also Compl. ¶¶ 58-59. Plaintiff contends that DLA Piper represented Link Motion in the Baliga action and Defendants failed to provide any substantive advice or assert any defenses on behalf of the company. See ECF No. 41 at 15-18; Compl. ¶¶ 58-60. Defendants dispute that they were retained to substantively defend Link Motion, arguing that the company declined to respond to numerous

communications from Defendants concerning how to handle the action. ECF No. 36 at 9-12, 23-25, 27.

There is no dispute, however, that Defendants appeared in the Baliga action on behalf of Link Motion, in December 2018 after the TRO was filed, and subsequently sought leave to withdraw as counsel on March 1, 2019. See ECF Nos. 20, 28, No. 18-CV-11642. I need not decide whether Plaintiff's allegations that Defendants were formally retained by Link Motion have evidentiary support, because the communications between Defendants and Shi after the filing of the Baliga action demonstrate that it would have been exceedingly difficult (if not impossible) for Plaintiff to prove that Defendants breached a duty to Link Motion to act with the "skill, prudence, and diligence as other members of [the legal] profession commonly exercise." See Schweizer v. Mulvehill, 93 F. Supp. 2d 376, 393 (S.D.N.Y. 2000) (explaining elements of legal malpractice claim).

In that regard, it is apparent from the many communications by Schechtman to either Link Motion, Shi, or both that Link Motion and Shi refused to engage with Defendants in a discussion about how to respond to the TRO and preliminary injunction motions. See supra pp. 2-3. Those e-mails and text messages—including e-mails in English and Mandarin sent to the entire Link Motion Board of Directors—indicate that Schechtman diligently attempted, on numerous occasions, to discuss with Shi Baliga's complaint. Her communications went unanswered, the company refused to discuss the case (or even confirm that it wished to retain DLA Piper to defend the action), and Defendants were left with no guidance as to how to proceed. Against that backdrop of unanswered communications and nearly complete radio silence from Shi, Plaintiff's counsel could not have in good faith believed that it would be able to show that Defendants breached a duty to Link Motion by failing to raise a standing defense.

Turning to causation, Plaintiff and its counsel could not have reasonably believed that Defendants' actions were the but-for cause of Link Motion's alleged damages. See Schutz v. Kagan Lubic Lepper Finkelstein & Gold, LLP, No. 12-CV-9459 (PAE), 2013 WL 3357921, at *4 (S.D.N.Y. July 2, 2013) (explaining that legal-malpractice claim under New York law requires evidence that defendant's conduct was "the proximate cause of a loss" and "actual damages"). According to Plaintiff, Defendant's failure to advise the company about Baliga's lack of standing resulted in the entry of the TRO and the appointment of the Receiver; those acts prevented Link Motion "from satisfying its obligation" to transfer the FL Mobile shares to Tongfang pursuant to the SPA; and in response to Link Motion's failure, Tongfang commenced an arbitration proceeding that resulted in an award of $396,000,000 against Link Motion. See Compl. ¶¶ 63-65, 67, 73, 76-78, 85-88, 91. As already discussed, however, Link Motion transferred the FL Mobile shares to Tongfang before Baliga commenced his suit.

Moreover, it appears that Link Motion did not defend against Tongfang's claims in the arbitration, and Shi did not notify the Receiver of the arbitration. The arbitration was initiated in April 2019, two months after the appointment of the Receiver in February 2019. See ECF No. 269 at 1, No. 18-CV-11642; ECF No. 26, No. 18-CV-11642 (appointing receiver). The Court's order appointing the Receiver instructed Shi and Link Motion to "ensure that litigation or arbitration matters [be] directed and controlled by the Company's lawyers, the appointed Receiver, and/or the non-conflicted board members as directed by the Receiver." ECF No. 26 at 3, No. 18-CV-11642. Despite that clear instruction, Shi did not disclose to the Receiver the existence of the Tongfang Arbitration. See ECF No. 269 at 1 (letter from Receiver to the Court stating, "I had no knowledge of the Tongfang Arbitration or the Award."). Instead, Shi represented to the arbitrator during the arbitration that he alone "was acting on behalf" of Link

24

Motion. Id. at 1-2. And even worse, neither Shi nor Link Motion mounted a defense to Tongfang's claims in the arbitration. Id. Given the utter failure of Link Motion to defend itself against the claims in the arbitration, it is speculative, at best, for Plaintiff to claim that Defendant's purported failure to "competently advise" Link Motion about a standing defense (see ECF No. 41 at 24-25) proximately caused the company to lose the arbitration, resulting in the issuance of the Tongfang Arbitration Award.

Plaintiff now contends that the e-mail communications between the arbitrator and Shi (where Shi purported to act on behalf of Link Motion) were in fact with someone other than Shi who was posing as Shi and using Shi's corporate e-mail account without authorization. See ECF No. 42 at ¶¶ 75-80. Putting aside the plausibility of that explanation, what is significant here is that an adequate investigation by counsel of the factual basis for Plaintiff's legal-malpractice claim should have uncovered that Link Motion was not represented by counsel in the arbitration, that it mounted no defense to Tongfang's claims, and that someone acting without authority was claiming to be Shi and representing the company in the arbitration, without the Receiver's knowledge. All of those facts should have led counsel to deeply question the viability of a legal-malpractice claim against Defendants, where the issuance of the Tongfang Arbitration Award is one of the alleged harms purportedly suffered by Plaintiff as a result of Defendants' alleged malpractice.[4] See Compl. ¶¶ 8, 87-91.

---

[4] Plaintiff tries to disavow its reliance on the Tongfang Arbitration Award (see ECF No. 41 at 18), arguing that the damages claimed here are the cost of the Receiver and the loss in value of the Tongfang Note. But in its brief Plaintiff also claims that "[t]he Tongfang arbitration resulted in an award of $396,000,000 . . . against the Company . . . and recission of the Note, rendering the asset worthless." ECF No. 41 at 13. In other words, Plaintiff's own argument links the loss in the Note's value to the issuance of the Tongfang Arbitration Award. In any case, as is apparent from the arbitrator's award, Tongfang fulfilled its payment obligations pursuant to the SPA prior to the appointment of the Receiver (see ECF No. 42-17 at 8-10), further undermining

Second, even if Defendants, in response to the TRO or preliminary injunction motions, had argued that Baliga lacked standing to bring his claims, the outcome would have remained the same, because, as the Court later concluded, it had jurisdiction to appoint the Receiver. See Flutie Bros. v. Hayes, 2006 WL 1379594, at *5 (S.D.N.Y. May 18, 2006) ("In order to plead causation adequately in a legal malpractice claim, the plaintiff must show that but for the attorney's negligence, 'what would have been a favorable outcome was an unfavorable outcome.'") (citation omitted). In June 2021, Shi moved to vacate the preliminary injunction and discharge the receiver in the Baliga action. See ECF No. 227, No. 18-CV-11642. As part of that motion, the Court considered Shi's argument as to whether "at the commencement of this action, the Court lacked subject-matter jurisdiction over the action," because Baliga did not have standing under Cayman Islands law to bring derivative claims on behalf of Link Motion. See ECF No. 275 at 18, 20. Ultimately, in a Report and Recommendation that was adopted by Judge Marrero (see ECF No. 331 at 2, No. 18-CV-11642), Magistrate Judge Freeman concluded that although Baliga lacked standing to assert his derivative state-law claims for breach of fiduciary duty and unjust enrichment, he had standing to assert his derivative federal securities-law claims. See ECF No. 227 at 21-30, No. 18-CV-11642. Judge Freeman thus concluded that the Court had subject-matter jurisdiction over the case and the power to issue the preliminary injunction and receivership order. Id. at 30.

Plaintiff now argues that its legal-malpractice claim is not precluded by the Court's prior finding of standing because Judge Freeman considered whether to vacate the receivership order and that issue was "legally distinct" from whether Plaintiff has a viable claim of legal

---

any argument that Defendants' actions were the but-for cause of the loss in value of the Tongfang Note.

malpractice. ECF No. 41 at 23-24. But whether Judge Freeman was assessing Baliga's standing for purposes of determining the Court's jurisdiction to appoint a receiver or for some other reason is of no consequence. The critical point is that the Court already determined that Baliga had standing to bring his derivative federal-securities claims in December 2018. Consequently, and contrary to Plaintiff's argument (see ECF No. 41 at 23), the Court's jurisdiction to issue the preliminary injunction would not have been "a substantial issue in controversy" even if an argument had been raised by Defendants about Baliga's lack of standing.[5] This, too, goes to whether counsel could have reasonably believed, at the time it filed this action, that Plaintiff would be able to make a colorable argument that Defendants' actions were the but-for cause of Plaintiff's alleged damages.[6]

And, tellingly, Shi's new counsel following Defendants' withdrawal did not raise an argument that Baliga lacked standing because he held ADS shares. Shi retained new counsel in March 2019, before the commencement of the Tongfang Arbitration and shortly after the appointment of the Receiver in February 2019. See ECF No. 35, No. 18-CV-11642 (new counsel filing motion to dismiss for lack of jurisdiction). Counsel for Shi thus had time to challenge Baliga's purported lack of standing to bring his claims. And, Shi did file a motion to dismiss on March 27, 2019, where counsel argued that Baliga's claims should be dismissed, that the Receiver should be discharged, and that the Court lacked jurisdiction over Link Motion. See ECF

---

[5] And because the Court found that it had jurisdiction to appoint the Receiver, Plaintiff's counsel could not have had an objectively reasonable basis for claiming that Defendants' actions caused Plaintiff's damages, to the extent those damages are the cost of the Receiver. See ECF No. 41 at 12.

[6] Nor is there any merit to Plaintiff's contention that the Court relied on Link Motion's consent to issue the preliminary injunction. See ECF No. 41 at 23. Even with Link Motion's consent to the preliminary injunction, the Court still had to independently determine that a sufficient basis for the issuance of an injunction existed.

No. 37 at 12-21, No. 18-CV-11642. Shi's counsel, however, did not raise a challenge to Baliga's standing based on Baliga not being a registered shareholder. See ECF Nos. 37, 62, No. 18-CV-11642. Of course, Shi's counsel was not acting as counsel for Link Motion.[7] See ECF No. 41 at 26-27. But Shi's counsel raised numerous arguments for dismissal of Baliga's claims and yet he did not raise Baliga's lack of standing based on his ownership of ADS.[8]

Finally, putting aside whether Plaintiff could establish a breach of duty and causation, Plaintiff's claim suffers from yet another problem—a reasonable inquiry into the legal basis for the claim should have uncovered that Plaintiff lacked standing to assert its legal-malpractice claim derivatively on behalf of Link Motion. Plaintiff acknowledges that Cayman Islands law applies in determining whether Plaintiff has standing to sue derivatively. See ECF No. 41 at 28; see also Compl. ¶¶ 42-45, 95-98. Cayman Islands law prohibits derivative common-law claims except in narrow circumstances. See Winn v. Schafer, 499 F. Supp. 2d 390, 393, 396 (S.D.N.Y. 2007) (outlining four circumstances where derivative claim can be brought by shareholder under English law, which applies because Cayman Islands law is silent on issue of shareholder

---

[7] Whether the retention by Shi of new counsel could constitute an intervening event that severed the causal chain for a legal-malpractice claim—a point the parties dispute (Compare ECF No. 36 at 28, with ECF No. 41 at 27)—does not need to be determined for purposes of addressing Defendants' sanctions motion. The key point is that if Baliga's purported lack of standing were such an obvious and meritorious defense as Plaintiff contends, one would have expected Shi's counsel or the company's later counsel to have raised that defense. Neither did. And that fact goes to whether Defendants actions were negligent because they failed "to exercise the degree of skill commonly exercised by an ordinary member of the legal community." Schweizer, 93 F. Supp. 2d at 393.

[8] Plaintiff contends that Defendants inaccurately represent that Shi never raised the issue of Baliga's lack of standing. See ECF No. 42 ¶ 123. Citing to the transcript of a hearing on March 29, 2019, Plaintiff evidently implies that the argument was raised. At that hearing, Shi's new counsel merely alerted the Court to the fact that "the shareholders purchased shares through ADRs from Deutsche Bank in New York." See ECF No. 41 at 19, No. 18-CV-11642. But counsel never connected the dots. In other words, counsel never said that Baliga lacked standing to assert his derivative claims on behalf of Link Motion because he held ADS shares.

derivative suits). According to Plaintiff, it has standing as a registered shareholder to assert claims derivatively where conduct "qualifies as a fraud on the minority." ECF No. 41 at 29.

To establish the "fraud on the minority" exception, Plaintiff must show that the alleged wrongdoers "hold a controlling number of the company's shares or that they exercise *de facto* control over those shares." Winn, 499 F. Supp. 2d at 398. Additionally, the wrongdoer must have committed "fraud" which under Cayman Islands law examines whether there was any "self-dealing." Id. at 397-98. Further, to qualify for the fraud-on-the-minority exception and sue a third party other than the wrongdoer, "the plaintiff must establish that the third party directly participated in or was an accessory to the conduct of the controlling stockholders constituting the alleged breach of duty." In re Renren, Inc. v. XXX, Index No. 653594/2018, 2020 WL 2564684, at *29 (N.Y. Sup. Ct. May 20, 2020).

Plaintiff acknowledges that the alleged wrongdoer under its fraud-on-the-minority theory is Baliga. See ECF No. 41 at 29. Plaintiff's counsel, however, could not have reasonably believed that his arguments for application of the exception to Plaintiff were warranted by existing law. First, Baliga was not in control of the Company when he filed his suit. See Winn, 499 F. Supp. 2d at 396-98 (explaining that wrongdoer "must have control over a majority of the stock with voting rights" or exercised "*de facto* control" over those shares) (internal quotation marks omitted). The Complaint alleges that Baliga was a "former stakeholder" that had "lost the contest for control" of Link Motion's Board of Directors. See Compl. ¶¶ 20, 30, 37. Second, there are no allegations in the Complaint that Baliga breached a duty to Link Motion or engaged in fraudulent or self-dealing conduct at the expense of the minority, as required to qualify for the fraud-on-the-minority exception. Lastly, there no allegations in the Complaint that Defendants "directly participated in or [were] an accessory to" any fraudulent conduct by Baliga. Renren,

29

2020 WL 2564684, at \*29. In fact, there is no indication whatsoever in the Complaint that DLA

Piper and Baliga had any communications, let alone a relationship such that it could plausibly be

inferred that DLA Piper directly participated or assisted in Baliga's fraudulent conduct.[9] See id.

(explaining that pleading must allege with particularity "how the third party acted dishonestly in

assisting the primary perpetrator of the fraud"). Nor are there any allegations to support a

plausible inference that Defendants benefited from Baliga's fraudulent conduct. And Plaintiff

was required to plead with particularity "how [Defendants'] acted dishonestly in assisting the

primary perpetrator of the fraud," in this case, Baliga. Renren, 2020 WL 2564684, at \*29

("Where dishonest assistance is alleged, the pleading must identify and particularize the nature of

the third party's conduct in assisting the breach of fiduciary duty, how the assistance caused the

plaintiff's loss, and how the third party acted dishonestly in assisting the primary perpetrator of

the fraud.").

* * *

A reasonable inquiry by Plaintiff's counsel would have uncovered the apparent legal and

factual deficiencies in Plaintiff's legal-malpractice claim. Further, Defendants alerted Plaintiff

that they intended to seek sanctions if Plaintiff did not voluntarily withdraw its claim, and

Defendants raised all of these deficiencies in their letter. See ECF No. 16. Even if one could

conclude that Plaintiff and its counsel had a good-faith basis for initially filing suit, they certainly

had no good-faith basis for continuing to pursue this claim after Defendants pointed out the

---

[9] To the extent Plaintiff is claiming that Defendants assisted in Baliga's purported fraud by failing to advice the company and raise the defense of lack of standing (ECF No. 41 at 30), that argument fails because, as already discussed, that defense was not meritorious and the Court had jurisdiction to issue the receivership order. See supra p. 26.

numerous deficiencies in the claim. Yet, Plaintiff ignored Defendants' letter and instead persisted with this suit for six months before filing a voluntary notice of dismissal. See ECF No. 23.

Viewing all of the deficiencies in Plaintiff's claim collectively, the only plausible conclusion to be drawn from pursuit of this litigation is that it was done to harass Defendants. That conclusion is reinforced by Plaintiff's most recent course of action. See ECF No. 49. Following Judge Marrero's dismissal of Link Motion's direct legal-malpractice claim on May 26 (see ECF No. 30, No. 22-CV-8313), Plaintiff sought to unnecessarily prolong this case even more, raising the possibility that it could withdraw its prior notice of voluntary dismissal and amend the complaint here. See ECF No. 49. But as Defendants point out (see ECF No. 50), any argument that Plaintiff can continue to pursue this legal-malpractice claim derivatively on behalf of Link Motion, given the dismissal on the merits of Link Motion's direct legal-malpractice claim, is patently meritless. As is well established, a derivative claim on behalf of a corporation is "unnecessary and duplicative, and should be dismissed" if the corporation "subsequently sues to assert claims on its own behalf." Ross v. Patrusky, Mintz & Semel, No. 90-CV-1356 (SWK), 1997 WL 214957, at *10 (S.D.N.Y. Apr. 29, 1997). Additionally, under New York law, a dismissal on statute of limitations grounds, as Judge Marrero concluded was appropriate in Link Motion's suit against Defendants (see ECF No. 30 at 9, No. 22-CV-8313), is deemed a dismissal on the merits. See Sun v. City of New York, 803 Fed. App'x 469, 471 n.3 (2d Cir. 2020). There thus is no derivative claim remaining for Plaintiff to pursue here. Plaintiff nevertheless argued for a stay of this case, seemingly suggesting that it should be permitted to withdraw its voluntary dismissal and amend the complaint.

**CONCLUSION**

For the reasons discussed, I respectfully recommend that Defendants' motion for Rule 11

sanctions be **GRANTED** and that Plaintiff and its counsel be awarded the reasonable costs and

fees incurred by Defendants in defending this action.

**SO ORDERED.**

DATED:      New York, New York
            July 24, 2023

_____
VALERIE FIGUEREDO
United States Magistrate Judge

**PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND
RECOMMENDATION**

**Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure,
the parties have fourteen (14) days (including weekends and holidays) from service of this
Report and Recommendation to file any objections. See also Fed. R. Civ. P. 6(a), 6(b), 6(d).
A party may respond to any objections within 14 days after being served. Any objections
and responses shall be filed with the Clerk of the Court. Any request for an extension of
time to file objections or responses must be directed to the Honorable Victor Marrero. If a
party fails to file timely objections, that party will not be permitted to raise any objections
to this Report and Recommendation on appeal. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P.
72; Fed. R. Civ. P. 6(a), 6(b), 6(d); Thomas v. Arn, 474 U.S. 140 (1985); Wagner & Wagner,
LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C., 596 F.3d 84, 92 (2d
Cir. 2010).**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X
CHINA AI CAPITAL LIMITED,

                Plaintiff,

        -against-

DLA PIPER LLP (US), and CARYN SCHECHTMAN,

                Defendants,

        -and-

LINK MOTION INC. f/k/a NQ MOBILE INC.,

                Nominal Defendant.
--------------------------------------------------------------------X

21-CV-10911 (VM) (VF)

**<u>AMENDED REPORT &</u>**
**<u>RECOMMENDATION</u>**

**VALERIE FIGUEREDO, United States Magistrate Judge**

**TO THE HONORABLE VICTOR MARRERO, United States District Judge:**

      Defendants Caryn G. Schechtman and DLA Piper LLP (US) ("DLA Piper") have moved

for sanctions against Plaintiff China AI Capital Limited ("China AI") and Plaintiff's counsel,

Michael Maloney and Rosanne Felicello of Felicello Law P.C., pursuant to Federal Rule of Civil

Procedure 11 for filing a frivolous complaint that also contained false allegations. See ECF Nos.

35-37, 45. Plaintiff opposes the motion. See ECF Nos. 41-44. For the following reasons, I

recommend that the motion be **GRANTED** and that Plaintiff and its counsel be ordered to pay

the reasonable costs and fees incurred by Defendants in defending this action.[1]

---

[1] This Amended Report and Recommendation amends the prior Report and
Recommendation (ECF No. 53) in response to a letter submitted by Defendants' counsel on July
26, 2023 (see ECF No. 54), bringing to the Court's attention an error it had made in the prior
Report and Recommendation.  Such an amendment is permitted pursuant to Federal Rule of
Civil Procedure 60(a), which allows the Court to, by motion or on its own, "correct a clerical
mistake or a mistake arising from oversight or omission whenever one is found in a judgment,
order, or other part of the record." Fed. R. Civ P. 60(a). The only amendments to the prior Report

1

## BACKGROUND

### A. Factual Background

Plaintiff filed this legal-malpractice, shareholder-derivative complaint, on behalf of Link Motion Inc. ("Link Motion"), on December 20, 2021. See ECF No. 1 ("Compl.") ¶¶ 1-2. The legal-malpractice allegations in the Complaint relate to conduct by Defendants that occurred in a separate lawsuit filed by Wayne Baliga against Link Motion and several of its officers and directors, including Dr. Vincent Wenyong Shi ("Shi"). See ECF No. 1 ¶¶ 1-2, No. 18-CV-11642.

Baliga commenced his suit on December 13, 2018, alleging that Shi and others were looting the company of its most valuable assets and seeking the appointment of an independent receiver to prevent further dissipation of the company's assets. Id. ¶¶ 15-22, 31, 37. That same day, Baliga notified Schechtman and DLA Piper via e-mail of the filing of the complaint and of Baliga's intent to file an Order to Show Cause ("OSC") the next day, seeking a Temporary Restraining Order ("TRO").[2] See ECF No. 37-1; Compl. ¶ 50. On December 13, Schechtman forwarded the e-mail from Baliga's counsel to Shi and another Link Motion director, asking them to "[p]lease instruct DLA if you would like us to respond." ECF No. 37-1 at 2.[3] Schechtman also stated that they "should have a call immediately to discuss—as action will be

---

and Recommendation made here were to correct the holding that "Plaintiff and its counsel be *awarded* the reasonable costs and fees incurred by Defendants in defending this action" to instead read that "Plaintiff and its counsel be *ordered to pay* the reasonable costs and fees incurred by Defendants in defending this action." See supra at 1; infra at 32.

[2] In 2018, Link Motion retained DLA Piper to represent it in connection with a corporate transaction (see Compl. ¶¶ 22-25) and evidently because of that representation, Baliga's counsel notified Schechtman of the filing of the complaint and of Baliga's intent to seek a TRO. See ECF No. 37-1 at 2.

[3] The page numbers referenced herein for citations to the electronic docket ("ECF") are to the court-generated page numbers at the top of the cited document.

2

taking place tomorrow," and she added that "DLA has still not received a retainer so we would need to receive that as well." Id. Later that same day, Schechtman followed up, asking Shi, "[d]id you see the lawsuit that was filed. They are going into court in 12 hours to get a restraining order against the company."[4] ECF No. 37-2 at 5. The next day, December 14, Schechtman asked Dr. Shi, "Do you want me to send an associate?" Id. at 4. Shi responded, "OK, thanks." Id. Schechtman subsequently told Shi in an e-mail that DLA Piper would "send an associate to Court in 12 hours to advise the Court that we have received no instruction from the Company due to the time difference and language barriers. It is possible that the Court will grant the application anyway." See ECF No. 37-3 at 2. Schechtman added, "How would you like us to handle?" Id.

On December 14, Baliga filed an OSC, seeking a TRO. See ECF No. 7, No. 18-CV-11642; see also Compl. ¶ 48. Defendants appeared on behalf of Link Motion at the hearing before the Court. Compl. ¶¶ 52, 58. On December 14, the Court entered a TRO, restraining and enjoining Link Motion, Dr. Shi, and the other defendants, from liquidating, transferring, or dissipating any assets of the company. ECF No. 7, No. 18-CV-11642.

On December 17, Schechtman reached out to Shi in a text message stating, "Vincent we need to discuss how the company wants us to handle the derivative action"—referring to the Baliga action. See ECF No. 37-2 at 5. The next day, December 18, Schechtman again contacted Shi via text message stating, "We have to discuss the derivative action. We need to enter a scheduling order on Friday US." Id. On December 20, Schechtman pressed Shi via text message

---

[4] This communication, and many others discussed herein, occurred via a messaging application called "WeChat." See ECF No. 37 ¶ 4. Copies of those text messages are annexed to the Declaration of Nancy Hart. See id.

to "bring us current on invoices"—presumably referring to fees owed for work previously performed by DLA Piper for Link Motion. Id. at 4.

On December 21, 2018, the parties in the Baliga action filed a joint letter, notifying the Court of Link Motion's agreement to extend the TRO and requesting a deadline of January 21, 2019, to respond to Baliga's motion for a preliminary injunction. See ECF No. 20, No. 18-CV-11642. Schechtman signed the joint letter as "Counsel for Defendant, Link Motion Inc." Id. at 2.

On December 28, 2018, Schechtman sent Shi a text message explaining that DLA Piper could not "open up a litigation matter" without "payment on outstanding invoices." See ECF No. 37-2 at 3. On January 6, 2019, Schechtman warned Shi via text message, "[W]e won't be able to draft the briefs that are due on [t]he 21st"—referencing the brief that needed to be filed on behalf of Link Motion if the company wanted to oppose Baliga's motion for a preliminary injunction. Id. Schechtman explained that "we can't open the matter as we have not received the retainer and we are not up to date on payment." Id. The next day, January 7, Schechtman sent Shi a text message, asking when they could "speak" and explaining to Shi that "the insurance policy has a 2.5 million dollar retention which means it won't kick in until the company has paid 2.5 million toward legal fees on the claim." Id. Later on January 7, Schechtman again asked Shi, "Can we speak?" Id. On January 8 and January 10, Schechtman again followed up with Shi in text messages, both times asking for an opportunity to speak to Shi. Id. On January 14, 2019, Schechtman asked Shi, "When can we speak." Id. Schechtman informed Shi that she "need[ed] to let the other side and the court know what we are doing. We have to start drafting today. It's one week out"—referring again to the need to file briefing in opposition to Baliga's preliminary injunction motion. Id.

4

On January 14, 2019, DLA Piper sent an e-mail to Shi and the Link Motion Board, written in English and Mandarin, stating that the opposition to Baliga's motion for a preliminary injunction and appointment of a receiver was due on January 21, 2019. See ECF No. 37-4 at 3. The e-mail explained, "If we do nothing, the motion may be granted, which may include such relief as appointing a receiver over the company and a preliminary injunction restricting the Company from transferring assets." Id. at 3. The e-mail further explained, "We have repeatedly asked for instruction on how to proceed but have not received any guidance from the Company or the individual defendants and advised that if we do not receive payment for legal services, we cannot take on this litigation matter." Id. at 4.

The next day, January 15, Schechtman sent another text message to Shi stating, "If I do not hear from you in 24 hours I will need to alert the Court that we have not been engaged to proceed further on the Company's behalf." See ECF No. 37-2 at 3. On January 17, Schechtman again contacted Shi via text message stating, "I have not heard from you. We have not prepared briefs and will not be in a position to represent the company in the derivative action." Id. Later that same day, Schechtman told Shi, "Can you give me a quick call. I want to avoid withdrawing as Counsel on the derivative action because it will look bad for the company. Instead I would prefer for the company to agree that it isn't submitting papers on Jan 21." Id. A few hours later, Schechtman again reached out to Shi via text message stating, "We must speak. When can you talk?," adding, "I need you to confirm that we can tell the court you aren't responding." Id. at 2.

On January 18, 2019, DLA Piper followed-up on its e-mail from January 14, forwarding the prior email in its new communication with the company. See ECF No. 37-4. In an e-mail to Shi and the Link Motion Board, written in both English and Mandarin, DLA Piper indicated that

5

it had "not heard back from [the company]" regarding the January 14th e-mail. Id. at 2. The e-mail continued:

> [I]f we do not hear back from you within 24 hours, DLA will assume that we have Link Motion's consent not to oppose the motion [for a preliminary injunction]. As explained below [(referencing the January 14 e-mail)], we reiterate that if Link Motion does not respond, the motion may be granted, which may include such relief as appointing a receiver over the company and a preliminary injunction restricting the Company from transferring assets, attorneys' fees and cost, and other such relief that the Court may deem appropriate. It may also include relief as to Plaintiff's request for an order requiring the Defendants to restore all assets transferred to third parties within the past ninety days. It may include other relief as well. Further, if we do not hear back from you within 24 hours, we will also assume that we have Link Motion's consent to withdraw from representation.

Id. The e-mail further stated that if the company did not respond, DLA Piper would notify the Court that the company would not be submitting an opposition to Baliga's motion for a preliminary injunction and appointment of a temporary receiver. Id.

On January 19, 2019, Schechtman sent a text message to Shi, asking him to call her and stating that they "need[ed] to speak." See ECF No. 37-2 at 2. Separately, Schechtman contacted Crystal Zhanglu, a Senior Legal Manager at Link Motion, via text message and said: "Crystal it is important that I speak with you and Vincent as soon as possible. When can we speak." Id. at 5. On January 20, Schechtman continued her efforts to speak with Shi, asking Shi via text message: "[Y]ou owe me the courtesy of a call. Please call me." Id. at 2. Later on January 20, Schechtman asked Shi: "Do you want us to do the answer. We will need some payment. Otherwise I'm not sure what to recommend. You don't want a default judgment entered. Answers are not that expensive." Id. About an hour later, Schechtman sent another text message asking Shi, "I would like your consent for us to withdraw as your counsel from the litigation if you determine not to pay us to go forward." Id. Schechtman then told Shi, "I am trying to do what is best for the company but we cannot work for no payment." Id. On January 21, 2019, Schechtman asked Shi

6

via text message to please "respond" and stated that "[t]he other option is we also withdraw as Counsel now." Id. Shi responded to Schechtman in a text message stating that he "fully respect[ed] and appreciate[d] [her] excellent work." Id. Shi explained that, "at this moment, it's very hard to make any further payment arrangement, even employees' payrolls were impacted. I'm very sorry about this situation and also bear huge pressure from many parties." Id.

On January 21, 2019, Baliga and Link Motion filed a joint stipulation, whereby Link Motion agreed not to oppose the entry of a preliminary injunction and obtained an extension of time to answer or otherwise respond to the complaint. See ECF No. 22, No. 18-CV-11642. In the stipulation, DLA Piper represented that it was acting as "Counsel for Defendant Link Motion Inc." Id. at 3. On February 1, 2019, the Court entered an order granting Baliga's motion for a preliminary injunction and appointing a Receiver. See ECF No. 26, No. 18-CV-11642.

On March 1, 2019, Defendants moved for leave to withdraw as counsel for Link Motion. See ECF No. 28, No. 18-CV-11642. In a letter to the Court, Schechtman explained that DLA Piper sought to withdraw as counsel, because Link Motion "has been unable to pay DLA's legal fees and has represented that it cannot do so at this time," and "has not cooperated in its representation by failing to respond to inquiries." Id. at 1. Schechtman elaborated that Link Motion "had failed to pay outstanding and overdue legal fees owed to DLA despite repeated requests to pay." Id. at 3. Schechtman explained that the firm had "appeared in this action after [Baliga] filed [his] Complaint and [Order to Show Cause] in order to protect Link Motion's immediate interest in the emergency filing and to allow Link Motion the opportunity to determine whether to contest the matter." Id. Schechtman added that "Link Motion ha[d] failed to cooperate in the representation by failing to respond to inquiries, thus making the

representation unreasonably difficult for DLA to carry out its representation effectively." Id. The Court granted Defendants' request to withdraw on March 1. See id. at 4; see also Compl. ¶ 82.

Following DLA Piper's withdrawal as counsel on March 1, 2019, Shi retained new counsel, and counsel filed a motion to dismiss and to discharge the Receiver on March 27, 2019. See ECF Nos. 35-37, No. 18-CV-11642. On March 29, 2019, the Court held a conference, at which counsel for Shi was present, and where counsel for Baliga indicated that Baliga was not a registered shareholder because he held Link Motion American Depository shares ("ADS"). See ECF No. 41 at 19, No. 18-CV-11642. In Shi's motion to dismiss, his new counsel did not argue that Baliga lacked standing to bring his claims because he was a holder of ADS. See ECF No. 37 at 12-21, No. 18-CV-11642.

On March 19, 2020, the Receiver notified the Court that he had obtained a copy of an arbitration award, which was issued relating to an arbitration filed by Tongfang Investment Fund Series SPC ("Tongfang") in April 2019 against Link Motion (the "Tongfang Arbitration Award"). See ECF No. 269 at 1, No. 18-CV-11642. According to that award, Tongfang obtained damages of 2.52 billion RMB (approximately $400 million) against Link Motion. Id. The award indicated that Link Motion was not "legally represented in this arbitration." Id. Instead, the company "opted not to submit any document" and "did not file any Statement of Defence [sic]." Id. at 2. Further, the award noted that Shi, in an e-mail from May 5, 2019, "confirmed to [the arbitration tribunal] that he was acting on behalf of [the company]." Id. at 1-2.

B. Procedural Background

1. *China AI's derivative legal-malpractice suit against Defendants*

Plaintiff commenced this derivative, legal-malpractice action on behalf of Link Motion on December 20, 2021. See Compl. ¶¶ 1-2. In its complaint, Plaintiff alleges that Defendants acted as counsel for Link Motion in the Baliga action. See, e.g., id. ¶¶ 4, 58-59. According to

8

Plaintiff, Baliga lacked standing to bring a derivative claim on behalf of Link Motion under the laws of the Cayman Islands, because he was a holder of ADS and thus not a "registered owner[ ] of shares." Id. ¶¶ 41, 44-46. Plaintiff alleges that Defendants, at the time of the TRO hearing on December 14, "knew or should have known that Baliga was not a registered shareholder and, therefore, lacked standing . . . to bring the derivative action." Id. ¶ 53. And because Baliga lacked standing, Plaintiff contends that Defendants should have known that the Court lacked jurisdiction to grant any provisional equitable relief. Id. ¶ 54.

Plaintiff avers that it did not receive advice from Defendants concerning Link Motion's "defense based on Baliga's lack of standing." Id. ¶¶ 69-71, 77-80. According to Plaintiff, Defendants' "failure to recognize Baliga's fundamental lack of standing and to assert that lack of standing as a defense to the Baliga Action" amounted to professional malpractice which was the but-for cause of Link Motion's damages. See id. ¶¶ 7, 55, 83, 85-94. Those purported damages flow, in part, from an arbitration involving Link Motion and Tongfang, which, according to Plaintiff, ultimately resulted in Link Motion losing one of its "most valuable assets at the time." See, e.g., id. ¶¶ 8, 65, 81, 85-91, 113.

At the time Baliga commenced his derivative lawsuit, Link Motion was a party to a Share Purchase Agreement ("SPA") with Tongfang. Id. ¶¶ 61-62. Pursuant to that SPA, Link Motion was required to transfer shares of FL Mobile, one of Link Motion's legacy businesses, to Tongfang. Id. ¶ 62. According to the Complaint, the "SPA was executory: Tongfang SPC had already conveyed to [Link Motion] consideration for the transaction," but Link Motion's obligation to transfer the FL Mobile shares to Tongfang had not yet been triggered. Id. ¶¶ 63-64. However, because of the TRO, Plaintiff contends that Link Motion was "restrained from performing its obligations to cause the transfer of FL Mobile shares [to Tongfang] in accordance

9

with the SPA." Id. ¶¶ 65, 85. Plaintiff alleges that because Link Motion failed to transfer the FL Mobile shares, Tongfang commenced an arbitration proceeding against Link Motion and the arbitration resulted in the Tongfang Arbitration Award of approximately $396,000,000 against Link Motion. Id. ¶¶ 87-88. Further, Plaintiff claims that Link Motion's "inability to complete the transfer of FL Mobile" also resulted in the company losing the value it had ascribed to the Tongfang Transaction—a "deferred net gain" of $180,400,000. See id. ¶¶ 90, 113.

On September 6, 2022, Plaintiff filed a notice of voluntary dismissal without prejudice under Federal Rules of Civil Procedure 41(a)(1)(A) and 23.1. See ECF No. 22. Because Rule 23.1(c) requires that notice of a voluntary dismissal of a derivative action be given to other shareholders, the Court required Plaintiff to file a proposed notice, for the Court's review and approval. See ECF No. 28. On September 19, 2022, Plaintiff submitted its proposed notice. See ECF No. 30. On September 26, 2022, Defendants raised several objections to the proposed notice submitted by Plaintiff. See ECF No. 34. On September 26, 2022, Defendants filed the instant motion for sanctions under Rule 11. See ECF No. 35. On October 3, 2022, the motion for sanctions and approval of the notice to shareholders was referred to the undersigned for issuance of a Report and Recommendation. See ECF No. 38.

2. *Link Motion's direct legal-malpractice suit against Defendants*

On September 12, 2022, Link Motion commenced an action in the Supreme Court of New York against Defendants, asserting a legal-malpractice claim arising out of Defendants' conduct in the Baliga action that was "the mirror-image" of the malpractice suit brought by Plaintiff here. See No. 22-CV-8313 (ECF No. 1 at ¶¶ 1-2; ECF No. 1-1 at ¶¶ 1-2, 4, 30-31; ECF No. 24 at 20). Defendants removed that action to this Court on September 29, 2022. See ECF No. 1, No. 22-CV-8313.

10

On May 26, 2023, the Honorable Victor Marrero issued an order holding that Link Motion's legal-malpractice claim was time barred and granting Defendants' motion to dismiss the complaint with prejudice. See ECF No. 30, No. 22-CV-8313.

On May 30, 2023, Plaintiff submitted a letter, seeking to adjourn a conference in the instant case, which was scheduled to address the pending motion for approval of Plaintiff's proposed notice to shareholders. See ECF No. 47. Counsel for Plaintiff contended that, given the dismissal of Link Motion's direct legal-malpractice action by Judge Marrero, Plaintiff now had the right to withdraw its notice of voluntary dismissal in this action and seek leave to amend the complaint. Id. at 1. Counsel requested an adjournment of the conference in order to discuss with Plaintiff its options going forward. Id. at 2. At the conference, which proceeded as scheduled on June 1, Defendants argued that the derivative action must be dismissed, because Link Motion had directedly asserted its legal-malpractice claim and the claim was dismissed on the merits. See ECF No. 51 ("Tr.") at 4-6, 8-10.

Following the conference, Defendants submitted a letter brief, again arguing that Plaintiff's derivative action must be dismissed because Link Motion asserted its claim directly and dismissal of that claim on the merits barred Plaintiff's derivative action. See ECF No. 50 at 1-2. Plaintiff also submitted a letter, contending that a stay of the instant action was appropriate while Link Motion awaited a decision by Judge Marrero on its pending motion for reconsideration of the May 26 order. See ECF No. 49 at 2. Alternatively, Plaintiff argued that it should be allowed to withdraw its notice of voluntary dismissal and be permitted to amend its complaint. Id. at 2-3. Lastly, Plaintiff contended that claim preclusion typically applied to bar a later filed case, whereas Plaintiff filed its claim first, before Link Motion. Id. at 1.

## DISCUSSION

A. Legal Standards For Rule 11 Sanctions

Federal Rule of Civil Procedure 11 imposes on a party who signs a pleading, motion, or other paper "an affirmative duty to conduct a reasonable inquiry into the facts and the law before filing." Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc., 498 U.S. 533, 551 (1991). Among other things, under Rule 11 an attorney filing a pleading certifies, "to the best of the [attorney's] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," that:

> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; [and]
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery[.]

Fed. R. Civ. P. 11(b)(1)-(3); see also Yeremis v. Amerit Fleet Solutions, No. 20-CV-4723 (GHW), 2021 WL 1565693, at *9-10 (S.D.N.Y. Apr. 21, 2021).

Under Rule 11(b), there are two grounds for sanctions: "the frivolous clause and the improper purpose clause." Yeremis, 2021 WL 1565693, at *10. The frivolous clause looks at "whether the party or attorney has made a reasonable inquiry into the facts, and whether the party has made a reasonable inquiry into the law." Id. "An argument constitutes a frivolous legal position for purposes of Rule 11 sanctions if, under an objective standard of reasonableness, it is clear . . . that there is no chance of success and no reasonable argument to extend, modify or reverse the law as it stands." Morley v. Ciba–Geigy Corp., 66 F.3d 21, 25 (2d Cir. 1995) (cleaned up); see also Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory,

12

Ltd., 682 F.3d 170, 177 (2d Cir. 2012) ("[T]he standard for triggering the award of fees under Rule 11 is objective unreasonableness and is not based on the subjective beliefs of the person making the statement.") (alteration in original, citations omitted).

> In determining whether to impose sanctions, courts consider a number of factors, such as:

> (1) whether the improper conduct was willful, or negligent; (2) whether it was part of a pattern o[f] activity, or an isolated event; (3) whether it infected the entire pleading, or only one particular count or defense; (4) whether the person has engaged in similar conduct in other litigation; (5) what effect it had on the litigation process in time or expense; (6) whether the responsible person is trained in the law; [and] (7) what amount, given the financial resources of the responsible person, is needed to deter that person from repetition in the same case.

Bobcar Media, LLC v. Aardvark Event Logistics, Inc., No. 16-CV-885 (JPO), 2019 WL 422613, at *3 (S.D.N.Y. Feb. 4, 2019). If "the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c)(1). However, for a violation of subsection (b)(2) of Rule 11, a court may impose sanctions on an attorney, but not a party. See Holmes v. Allstate Corp., No. 11-CV-1543 (LTS) (DF), 2012 WL 627238, at *14 (S.D.N.Y. Jan. 27, 2012); Zagami v. Cellceutix Corp., No. 15-CV-7194 (KPF), 2017 WL 1180923, at *10 (S.D.N.Y. Mar. 29, 2017). Any sanction "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4); see also Tantaros v. Fox News Network LLC, No. 17-CV-2958 (GBD), 2018 WL 1662779, at *3 (S.D.N.Y. Mar. 16, 2018) ("[C]ourts must remain mindful that the point of Rule 11 sanctions is not to compensate or reimburse the defendants for the totality of their losses, but rather to punish and to deter future similar conduct.").

"Courts maintain a high bar for establishing a Rule 11 violation given judicial concern for encouraging zealous advocacy." E. Gluck Corp. v. Rothenhaus, 252 F.R.D. 175, 179 (S.D.N.Y.

13

2008). And, a finding that Rule 11 was violated "does not compel the imposition of sanctions." Braun ex rel. Advanced Battery Techs., Inc. v. Fu, No. 11-CV-4383 (CM) (DF), 2015 WL 4389893, at *12 (S.D.N.Y. July 10, 2015) (citation and internal quotation marks omitted). Nevertheless, "the decision whether or not to impose sanctions is a matter for the court's discretion." Bobcar Media, LLC v. Aardvark Event Logistics, Inc., No. 16-CV-885 (JPO), 2019 WL 422613, at *2 (S.D.N.Y. Feb. 4, 2019).

A party's motion for sanctions must comply with Rule 11's safe-harbor requirement and provide the opposing party with a draft of the motion 21 days before filing it with the court. See Rule 11(c)(2); see also ED Capital, LLC v. Bloomfield Inv. Res. Corp., 316 F.R.D. 77, 82 (S.D.N.Y. 2016). "The non-movant is then afforded a 21-day safe harbor period to withdraw or correct the challenged paper, claim, defense, contention, or denial before the movant is allowed to file or present the motion to the court." New V & J Produce Corp. v. NYCCaterers Inc., No. 13-CV-4861 (ER), 2014 WL 5026157, at *4 (S.D.N.Y. Sept. 29, 2014).

Before filing the instant motion, Defendants complied with the safe-harbor requirement in Rule 11(c)(2). Defendants notified Plaintiff of their intent to file the Rule 11 motion in a letter that outlined the specific grounds for sanctions raised in the instant motion. See ECF No. 37 at ¶ 16; ECF No. 37-14 (Ex. N). And Defendants filed an affidavit of service, which indicates that the letter was served on Plaintiff's counsel on March 8, 2022. See ECF No. 37 at ¶ 17; ECF No. 37-15 (Ex. O). Plaintiff did not respond to Defendants' letter. See ECF No. 36 at 13. Defendants did not file their sanctions motion until September 26, 2022, well after the 21-day period required under Rule 11(c)(2). See ECF No. 35.

B. Rule 11 Sanctions Are Warranted

Defendants advance three grounds in support of their request for sanctions against Plaintiff and its counsel. See ECF No. 36. First, Defendants contend that Plaintiff and its counsel

14

violated Rule 11(b)(3), because they knowingly made false allegations in the Complaint. Id. at 20-23. More specifically, Defendants argue that Link Motion's public statements indicated that the Tongfang Transaction closed in December 2017, a year before Baliga filed his complaint in December 2018, and therefore the shares in FL Mobile were transferred to Tongfang long before the appointment of the Receiver. Id. at 21-22. In other words, Defendants aver that the appointment of the Receiver could not (and did not) prevent the transfer of FL Mobile shares from Link Motion to Tongfang, notwithstanding Plaintiff's allegations to the contrary in the Complaint. See, e.g., Compl. ¶¶ 62-65, 85-87, 91.

Second, Defendants argue that Plaintiff and its counsel also violated Rule 11(b)(2), because the legal-malpractice claim is frivolous. ECF No. 36 at 25-30. Defendants contend that Plaintiff will be unable to establish multiple elements of its claim, including that Defendants actions or inactions were the but-for cause of Link Motion's damages. Id. at 26-27. Additionally, Defendants aver that Shi's retention of counsel after DLA Piper withdrew from the Baliga action was an intervening event that defeats causation as a matter of law. Id. at 28. Finally, Defendants claim that Plaintiff itself lacks standing to assert this derivative legal-malpractice claim on behalf of Link Motion. Id. at 28-29. For all of these reasons, Defendants argue that Plaintiff and its counsel filed a claim that has no chance of success.

Lastly, Defendants contend that Plaintiff and its counsel violated Rule 11(b)(1), because Plaintiff filed the Complaint for an improper purpose. Id. at 30. Defendants argue that the only reasonable inference from Plaintiff's decision to continue with its "patently deficient" claim is to harass Defendants and threaten significant reputational harm on the law firm and one of its lawyers. Id.

15

Defendants are correct that sanctions under Rule 11 are appropriate here. In commencing the instant action, neither Plaintiff nor its counsel could have reasonably believed that the allegations in the Complaint—concerning Link Motion's purported inability to transfer the FL Mobile shares because of the appointment of the Receiver—had evidentiary support. Likewise, Plaintiff's legal-malpractice claims suffers from multiple deficiencies that viewed collectively should have led counsel to conclude that the claim had no chance of success. Finally, Defendants raised all of these grounds in a letter to Plaintiff's counsel on March 7, 2022. See ECF No. 16. Plaintiff nevertheless declined to voluntarily withdraw the action until six months later, in September 2022, see ECF No. 22, but only after Plaintiff's counsel filed a similar lawsuit, this time on behalf of Link Motion, against Defendants in state court. See ECF No. 1, No. 22-CV-8313. Then, after the direct legal-malpractice claim by Link Motion was dismissed with prejudice by Judge Marrero, Plaintiff baselessly argued that it should be permitted to withdraw its voluntary dismissal of this action and amend the Complaint. Simply put, Plaintiff's decision to continue pursuing this legal-malpractice claim against Defendants is objectively unreasonable and can only be viewed as an attempt to harass Defendants and cause reputational harm.

1. *Plaintiff made false allegations in its complaint in violation of Rule 11(b)(3).*

The Complaint alleges that prior to the entry of the TRO, "[w]hat remained to be performed under the SPA was [Link Motion's] obligation to cause the transfer of FL Mobile shares in accordance with the SPA." Compl. ¶¶ 62-64. The Complaint further alleges that the TRO and preliminary injunction "prevented [Link Motion] from satisfying its obligation to non-party Tongfang SPC (causing the transfer of the Company's legacy business, FL Mobile) after Tongfang SPC had already paid [Link Motion] consideration as required by the SPA." Id. ¶ 85. At the time Plaintiff filed its Complaint, neither Plaintiff nor its counsel could have reasonably

believed that those allegations had or were likely to have evidentiary support. See G-I Holdings, Inc. v. Baron & Budd, No. 01-CV-216 (RWS), 2002 WL 1934004, at *13 (S.D.N.Y. 2002). Instead, numerous public filings by Link Motion—made by the company with the SEC— indicate that Link Motion transferred its shares in FL Mobile to Tongfang *before* Baliga filed his suit in December 2018. And these public filings would have been available to Plaintiff and its counsel before it commenced this action, after a reasonable inquiry into the evidentiary support for the factual allegations in the Complaint.

For instance, in March 2017, Link Motion announced, in a Form 6-K filing with the SEC, that it had entered into a "definitive agreement[ ]" to sell its interests in FL Mobile, and another business, to Tongfang. See ECF No. 37-6 at 5; see also ECF No. 37-7 at 4. The SPA, which was entered into on March 30, 2017, provided that the shares in FL Mobile would be transferred to Tongfang upon Tongfang completing its payment obligations. See ECF No. 228-4 at 7, No. 18-CV-11642 (Share Purchase Agreement). In a Form 20-F filed with the SEC for the 2016 fiscal year, Link Motion represented that it had "transferred [its] equity interests in FL Mobile and Showself (Beijing), while the purchasers still have certain period to complete their payment obligations." ECF No. 37-7 at 4; see also id. (describing the transfer as a "divestment[ ]" and discussing the financial "impact of these divestments" to Link Motion). Alongside the SPA, Tongfang and Link Motion executed a Supplemental Agreement on March 31, 2017. See ECF No. 42, ¶¶ 30-31; see also ECF No. 42-10 (Supplemental Agreement). That Supplemental Agreement provided for the FL Mobile shares to be held in trust by Shi until the "closing" of the SPA—that is, until Tongfang fulfilled its payment obligation. Id. ¶¶ 31-34.

Tongfang completed its payment obligation pursuant to the SPA in December 2017. In December 2017, Link Motion announced a "significant event[ ]," in a Form 6-K filed with the

SEC—namely, the "completion of the FL Mobile Divestment." ECF No. 37-8 at 6. As is relevant

here, the company's filing with the SEC stated:

> The Company announced in a press release on December 14, 2017 that it had
> *completed the divestment of FL Mobile* and sale of Showself's Live Social Video
> Business. The Company received in aggregate a total of approximately RMB
> 3,320 million, consisting of approximately RMB 1,550 million in cash and RMB
> 1,770 million in a senior note, which together *totals 100% of the agreed upon*
> *price* pursuant to the definitive agreements with Tongfang Investment Fund Series
> SPC.

ECF No. 37-8 at 6 (emphasis added). The filing confirms that Tongfang completed its payment

obligations by paying for the shares with cash and a senior note issued to Link Motion for RMB

1,770 million (the "Tongfang Note"). Id.; see also ECF No. 37-9 (Letter to shareholders from Shi

explaining that Link Motion received as "total consideration" for the transaction, "RMB 3.32

billion in cash and senior note from Tongfang"). The Tongfang Note was due to be paid in

December 2018. ECF No. 37-8 at 7 (indicating that it was a "one-year senior note" that could be

extended "by another 12 months at [Link Motion's] option"). As the company's statement with

the SEC makes clear, however, Link Motion received "100% of the agreed upon price pursuant"

to the SPA in December 2017, and consequently, Link Motion announced that it had reclassified

FL Mobile as "discontinued operations." Id. at 5-6.

Consistent with the SEC filing, Shi subsequently represented to Link Motion's

shareholders that the Tongfang Transaction had been completed. Shi, as Chairman of Link

Motion, told Link Motion's shareholders in a letter that was publicly filed on February 9, 2018,

that the transaction with Tongfang was "completed on December 14, 2017." ECF No. 37-9 at 5.

And on April 11, 2018, Link Motion, in a Form 6-K filed with the SEC, again reported that it

had "[c]ompleted the FL Mobile Divestment," explaining that the company "recognized $161.5

million of gain in the fourth quarter and booked $180.4 million as deferred gain from the

18

disposal of discontinued operations to be recognized when the receivables from the purchasers are collected in future periods." ECF No. 37-10 at 5. All of these public statements consistently represented to investors and the public that the Tongfang Transaction was complete and that therefore Link Motion had fulfilled its obligation under the SPA to transfer its shares in FL Mobile to Tongfang.

That conclusion is bolstered by the existence of the Equity Pledge Agreement. Tongfang and Link Motion executed an "Equity Pledge Agreement" when Tongfang issued the Tongfang Note. See ECF No. 37-11. That Equity Pledge Agreement gave Link Motion the right to retake ownership of the FL Mobile shares if Tongfang failed to pay the Tongfang Note. Id. at 2-3. In a Form 6-K filed with the SEC on September 10, 2018, Link Motion explained that "[i]n connection with the sale of FL Mobile shares" to Tongfang, "the agreements signed with Tongfang" gives Link Motion "the ability to *recover the shares* it has sold to Tongfang if Tongfang fails to pay its RMB 1.77 billion senior note delivered in payment for those shares." ECF No. 37-12 at 6 (emphasis added). And, tellingly, the Equity Pledge Agreement itself states that the "Target Assets"—defined as "63% equity of FL Mobile"—"are held by Party B," and Party B is defined in the agreement as "Tongfang Investment Fund Series SPC." See ECF No. 37-11 at 2. In other words, at the time of the Equity Pledge Agreement, the FL Mobile shares were "held by" Tongfang, not Link Motion. Id.

All of these public representations by Link Motion indicate that the transaction with Tongfang was completed in December 2017, and that as a result of that transaction, Link Motion received payment from Tongfang and transferred its shares in FL Mobile to Tongfang. Moreover, there would have been no reason for the Equity Pledge Agreement—allowing Link Motion to *recover* ownership in FL Mobile shares from Tongfang—if Link Motion had not

19

transferred those shares to Tongfang. That agreement gave Link Motion a security interest in the shares precisely because the shares were held by Tongfang. None of Link Motion's public representations about the FL Mobile shares can be squared with the allegations in the Complaint that Link Motion's "obligation to cause the transfer of FL Mobile shares" had not occurred before the appointment of the Receiver in February 2019. See, e.g., Compl. ¶¶ 64, 86.

In defense of its allegations in the Complaint, Plaintiff argues that the transfer of FL Mobile shares could not occur until the Tongfang Note was paid, which was to occur at "the end of December 2018," and did not actually occur because the appointment of the Receiver prevented Link Motion from fulfilling its obligation to transfer the FL Mobile shares. ECF No. 41 at 16-17. As an initial matter, the principal on the Tongfang Note was due on December 14, 2018, the day the Court issued the TRO in the Baliga action, and interest in arrears on the Note was due on December 12, 2018, the day before the Baliga action was commenced. See ECF No. 42-13 at 11 (clauses 1.3 and 3.1). The Tongfang Note was thus due in full prior to the appointment of the Receiver, in February 2019.

In any case, Plaintiff's argument that the issuance of the TRO somehow interfered with Tongfang's repayment of the Tongfang Note is nonsensical. ECF No. 41 at 17. The TRO merely prohibited Link Motion from "transferring, liquidating, dissipating, assigning, and/or granting a lien or security interest or other interest in, any assets" belonging to the company. See ECF No. 7 at 1, No. 18-CV-11642. Nothing in the language of the TRO prevented Link Motion from enforcing the Tongfang Note, receiving payment under the Note, or foreclosing on its security interest in the FL Mobile shares if Tongfang failed to repay the Note. What's more, it is evident from the Tongfang Arbitration Award that the arbitrator found that Tongfang *had completed* its payment obligations in December 2017, and that Link Motion was obligated to transfer the Link

20

Motion shares in December 2017—a year before Baliga filed his complaint. See ECF No. 42-17 at 8-10 (specifically, ¶¶ 21-22).

Plaintiff also argues that the word "completion" as used in the various press releases from the company referred only to "deconsolidation of financial results, not legal completion of Tongfang's obligations to Link Motion under the Note." ECF No. 41 at 17. That argument falls flat given the public statements by Link Motion and Shi that unambiguously announced completion of the transaction and receipt of full payment from Tongfang for the FL Mobile shares. See, e.g., ECF No. 37-8 at 6-7 (Link Motion announcing in December 2017 that it had "received . . . 100% of the agreed upon price" and "completed the FL Mobile Divestment"); ECF No. 37-9 at 5 (Shi informing shareholders that "the transaction completed on December 14, 2017" and that "the total consideration received by [Link Motion] as of December 14, 2017 amounted to" cash and a senior note from Tongfang).

To save its allegations, Plaintiff conflates completion of the bargained-for exchange under the SPA with payment by Tongfang of the Tongfang Note. As Link Motion indicated in public filings, it received "100% of the agreed upon price" for the FL Mobile shares, and it accepted as payment for those shares a combination of cash and a note. See ECF No. 37-8 at 6-7. Acceptance of that payment, in exchange for the transfer of the FL Mobile shares, consummated the Tongfang Transaction in December 2017. Whether Tongfang subsequently repaid the Tongfang Note is distinct from whether the transaction was completed. And, this distinction is borne out by the company's own public filings which unambiguously stated that the transaction was completed. Those public statements did not link completion of the transaction with payment in full of the Tongfang Note.

21

Moreover, even if the word "completion" in the company's public filings could be construed as referring merely to the company removing the FL Mobile business from its balance sheet (as Plaintiff now argues), that still does not explain the language in the Equity Pledge Agreement. That agreement describes the FL Mobile shares as being "held by" Tongfang. See ECF No 37-11 at 2. And in another public filing with the SEC filed on September 10, 2018, the company, consistent with the Equity Pledge Agreement, represented that it had "the ability to *recover the shares* it has sold to Tongfang if Tongfang fails to pay its RMB 1.77 billion senior note delivered in payment for those shares." See ECF No. 37-12 at 6 (emphasis added). The use of the word "recover" by Link Motion in reference to the FL Mobile shares further demonstrates that it no longer had possession of those shares.

In short, a reasonable inquiry by Plaintiff and its counsel would have revealed Link Motion's public statements about the Tongfang Transaction. And given those public statements, Plaintiff and its counsel could not have reasonably concluded that the factual allegations in the Complaint would have evidentiary support.

2. *Plaintiff's legal-malpractice claim is frivolous in violation of Rule 11(b)(2).*

Defendants also seek sanctions on the basis that Plaintiff's legal-malpractice claim is frivolous, in violation of Rule 11(b)(2). ECF No. 36 at 25-30. Even if the allegations in the Complaint concerning the inability to transfer the FL Mobile shares because of the Receiver's appointment had evidentiary support, Plaintiff's claim would still suffer from multiple deficiencies. When these obvious deficiencies are viewed collectively, the only plausible conclusion is that it was objectively unreasonable for Plaintiff to have commenced this action against Defendants.

To begin, the parties dispute whether Link Motion retained Defendants to represent the company in the Baliga action, thereby creating the existence of an attorney-client relationship. Compare ECF No. 36 at 23-25 with ECF No. 41 at 15-16, 21-22; see also Compl. ¶¶ 58-59. Plaintiff contends that DLA Piper represented Link Motion in the Baliga action and Defendants failed to provide any substantive advice or assert any defenses on behalf of the company. See ECF No. 41 at 15-18; Compl. ¶¶ 58-60. Defendants dispute that they were retained to substantively defend Link Motion, arguing that the company declined to respond to numerous communications from Defendants concerning how to handle the action. ECF No. 36 at 9-12, 23-25, 27.

There is no dispute, however, that Defendants appeared in the Baliga action on behalf of Link Motion, in December 2018 after the TRO was filed, and subsequently sought leave to withdraw as counsel on March 1, 2019. See ECF Nos. 20, 28, No. 18-CV-11642. I need not decide whether Plaintiff's allegations that Defendants were formally retained by Link Motion have evidentiary support, because the communications between Defendants and Shi after the filing of the Baliga action demonstrate that it would have been exceedingly difficult (if not impossible) for Plaintiff to prove that Defendants breached a duty to Link Motion to act with the "skill, prudence, and diligence as other members of [the legal] profession commonly exercise." See Schweizer v. Mulvehill, 93 F. Supp. 2d 376, 393 (S.D.N.Y. 2000) (explaining elements of legal malpractice claim).

In that regard, it is apparent from the many communications by Schechtman to either Link Motion, Shi, or both that Link Motion and Shi refused to engage with Defendants in a discussion about how to respond to the TRO and preliminary injunction motions. See supra pp. 2-3. Those e-mails and text messages—including e-mails in English and Mandarin sent to the

23

entire Link Motion Board of Directors—indicate that Schechtman diligently attempted, on numerous occasions, to discuss with Shi Baliga's complaint. Her communications went unanswered, the company refused to discuss the case (or even confirm that it wished to retain DLA Piper to defend the action), and Defendants were left with no guidance as to how to proceed. Against that backdrop of unanswered communications and nearly complete radio silence from Shi, Plaintiff's counsel could not have in good faith believed that it would be able to show that Defendants breached a duty to Link Motion by failing to raise a standing defense.

Turning to causation, Plaintiff and its counsel could not have reasonably believed that Defendants' actions were the but-for cause of Link Motion's alleged damages. See Schutz v. Kagan Lubic Lepper Finkelstein & Gold, LLP, No. 12-CV-9459 (PAE), 2013 WL 3357921, at *4 (S.D.N.Y. July 2, 2013) (explaining that legal-malpractice claim under New York law requires evidence that defendant's conduct was "the proximate cause of a loss" and "actual damages"). According to Plaintiff, Defendant's failure to advise the company about Baliga's lack of standing resulted in the entry of the TRO and the appointment of the Receiver; those acts prevented Link Motion "from satisfying its obligation" to transfer the FL Mobile shares to Tongfang pursuant to the SPA; and in response to Link Motion's failure, Tongfang commenced an arbitration proceeding that resulted in an award of $396,000,000 against Link Motion. See Compl. ¶¶ 63-65, 67, 73, 76-78, 85-88, 91. As already discussed, however, Link Motion transferred the FL Mobile shares to Tongfang before Baliga commenced his suit.

Moreover, it appears that Link Motion did not defend against Tongfang's claims in the arbitration, and Shi did not notify the Receiver of the arbitration. The arbitration was initiated in April 2019, two months after the appointment of the Receiver in February 2019. See ECF No. 269 at 1, No. 18-CV-11642; ECF No. 26, No. 18-CV-11642 (appointing receiver). The Court's

24

order appointing the Receiver instructed Shi and Link Motion to "ensure that litigation or arbitration matters [be] directed and controlled by the Company's lawyers, the appointed Receiver, and/or the non-conflicted board members as directed by the Receiver." ECF No. 26 at 3, No. 18-CV-11642. Despite that clear instruction, Shi did not disclose to the Receiver the existence of the Tongfang Arbitration. See ECF No. 269 at 1 (letter from Receiver to the Court stating, "I had no knowledge of the Tongfang Arbitration or the Award."). Instead, Shi represented to the arbitrator during the arbitration that he alone "was acting on behalf" of Link Motion. Id. at 1-2. And even worse, neither Shi nor Link Motion mounted a defense to Tongfang's claims in the arbitration. Id. Given the utter failure of Link Motion to defend itself against the claims in the arbitration, it is speculative, at best, for Plaintiff to claim that Defendant's purported failure to "competently advise" Link Motion about a standing defense (see ECF No. 41 at 24-25) proximately caused the company to lose the arbitration, resulting in the issuance of the Tongfang Arbitration Award.

Plaintiff now contends that the e-mail communications between the arbitrator and Shi (where Shi purported to act on behalf of Link Motion) were in fact with someone other than Shi who was posing as Shi and using Shi's corporate e-mail account without authorization. See ECF No. 42 at ¶¶ 75-80. Putting aside the plausibility of that explanation, what is significant here is that an adequate investigation by counsel of the factual basis for Plaintiff's legal-malpractice claim should have uncovered that Link Motion was not represented by counsel in the arbitration, that it mounted no defense to Tongfang's claims, and that someone acting without authority was claiming to be Shi and representing the company in the arbitration, without the Receiver's knowledge. All of those facts should have led counsel to deeply question the viability of a legal-malpractice claim against Defendants, where the issuance of the Tongfang Arbitration Award is

25

one of the alleged harms purportedly suffered by Plaintiff as a result of Defendants' alleged malpractice.[5] See Compl. ¶¶ 8, 87-91.

Second, even if Defendants, in response to the TRO or preliminary injunction motions, had argued that Baliga lacked standing to bring his claims, the outcome would have remained the same, because, as the Court later concluded, it had jurisdiction to appoint the Receiver. See Flutie Bros. v. Hayes, 2006 WL 1379594, at *5 (S.D.N.Y. May 18, 2006) ("In order to plead causation adequately in a legal malpractice claim, the plaintiff must show that but for the attorney's negligence, 'what would have been a favorable outcome was an unfavorable outcome.'") (citation omitted). In June 2021, Shi moved to vacate the preliminary injunction and discharge the receiver in the Baliga action. See ECF No. 227, No. 18-CV-11642. As part of that motion, the Court considered Shi's argument as to whether "at the commencement of this action, the Court lacked subject-matter jurisdiction over the action," because Baliga did not have standing under Cayman Islands law to bring derivative claims on behalf of Link Motion. See ECF No. 275 at 18, 20. Ultimately, in a Report and Recommendation that was adopted by Judge Marrero (see ECF No. 331 at 2, No. 18-CV-11642), Magistrate Judge Freeman concluded that although Baliga lacked standing to assert his derivative state-law claims for breach of fiduciary duty and unjust enrichment, he had standing to assert his derivative federal securities-law claims.

---

[5] Plaintiff tries to disavow its reliance on the Tongfang Arbitration Award (see ECF No. 41 at 18), arguing that the damages claimed here are the cost of the Receiver and the loss in value of the Tongfang Note. But in its brief Plaintiff also claims that "[t]he Tongfang arbitration resulted in an award of $396,000,000 . . . against the Company . . . and recission of the Note, rendering the asset worthless." ECF No. 41 at 13. In other words, Plaintiff's own argument links the loss in the Note's value to the issuance of the Tongfang Arbitration Award. In any case, as is apparent from the arbitrator's award, Tongfang fulfilled its payment obligations pursuant to the SPA prior to the appointment of the Receiver (see ECF No. 42-17 at 8-10), further undermining any argument that Defendants' actions were the but-for cause of the loss in value of the Tongfang Note.

<u>See</u> ECF No. 227 at 21-30, No. 18-CV-11642. Judge Freeman thus concluded that the Court had subject-matter jurisdiction over the case and the power to issue the preliminary injunction and receivership order. <u>Id.</u> at 30.

Plaintiff now argues that its legal-malpractice claim is not precluded by the Court's prior finding of standing because Judge Freeman considered whether to vacate the receivership order and that issue was "legally distinct" from whether Plaintiff has a viable claim of legal malpractice. ECF No. 41 at 23-24. But whether Judge Freeman was assessing Baliga's standing for purposes of determining the Court's jurisdiction to appoint a receiver or for some other reason is of no consequence. The critical point is that the Court already determined that Baliga had standing to bring his derivative federal-securities claims in December 2018. Consequently, and contrary to Plaintiff's argument (<u>see</u> ECF No. 41 at 23), the Court's jurisdiction to issue the preliminary injunction would not have been "a substantial issue in controversy" even if an argument had been raised by Defendants about Baliga's lack of standing.[6] This, too, goes to whether counsel could have reasonably believed, at the time it filed this action, that Plaintiff would be able to make a colorable argument that Defendants' actions were the but-for cause of Plaintiff's alleged damages.[7]

And, tellingly, Shi's new counsel following Defendants' withdrawal did not raise an argument that Baliga lacked standing because he held ADS shares. Shi retained new counsel in

---

[6] And because the Court found that it had jurisdiction to appoint the Receiver, Plaintiff's counsel could not have had an objectively reasonable basis for claiming that Defendants' actions caused Plaintiff's damages, to the extent those damages are the cost of the Receiver. <u>See</u> ECF No. 41 at 12.

[7] Nor is there any merit to Plaintiff's contention that the Court relied on Link Motion's consent to issue the preliminary injunction. <u>See</u> ECF No. 41 at 23. Even with Link Motion's consent to the preliminary injunction, the Court still had to independently determine that a sufficient basis for the issuance of an injunction existed.

March 2019, before the commencement of the Tongfang Arbitration and shortly after the appointment of the Receiver in February 2019. See ECF No. 35, No. 18-CV-11642 (new counsel filing motion to dismiss for lack of jurisdiction). Counsel for Shi thus had time to challenge Baliga's purported lack of standing to bring his claims. And, Shi did file a motion to dismiss on March 27, 2019, where counsel argued that Baliga's claims should be dismissed, that the Receiver should be discharged, and that the Court lacked jurisdiction over Link Motion. See ECF No. 37 at 12-21, No. 18-CV-11642. Shi's counsel, however, did not raise a challenge to Baliga's standing based on Baliga not being a registered shareholder. See ECF Nos. 37, 62, No. 18-CV-11642. Of course, Shi's counsel was not acting as counsel for Link Motion.[8] See ECF No. 41 at 26-27. But Shi's counsel raised numerous arguments for dismissal of Baliga's claims and yet he did not raise Baliga's lack of standing based on his ownership of ADS.[9]

Finally, putting aside whether Plaintiff could establish a breach of duty and causation, Plaintiff's claim suffers from yet another problem—a reasonable inquiry into the legal basis for the claim should have uncovered that Plaintiff lacked standing to assert its legal-malpractice

---

[8] Whether the retention by Shi of new counsel could constitute an intervening event that severed the causal chain for a legal-malpractice claim—a point the parties dispute (Compare ECF No. 36 at 28, with ECF No. 41 at 27)—does not need to be determined for purposes of addressing Defendants' sanctions motion. The key point is that if Baliga's purported lack of standing were such an obvious and meritorious defense as Plaintiff contends, one would have expected Shi's counsel or the company's later counsel to have raised that defense. Neither did. And that fact goes to whether Defendants actions were negligent because they failed "to exercise the degree of skill commonly exercised by an ordinary member of the legal community." Schweizer, 93 F. Supp. 2d at 393.

[9] Plaintiff contends that Defendants inaccurately represent that Shi never raised the issue of Baliga's lack of standing. See ECF No. 42 ¶ 123. Citing to the transcript of a hearing on March 29, 2019, Plaintiff evidently implies that the argument was raised. At that hearing, Shi's new counsel merely alerted the Court to the fact that "the shareholders purchased shares through ADRs from Deutsche Bank in New York." See ECF No. 41 at 19, No. 18-CV-11642. But counsel never connected the dots. In other words, counsel never said that Baliga lacked standing to assert his derivative claims on behalf of Link Motion because he held ADS shares.

claim derivatively on behalf of Link Motion. Plaintiff acknowledges that Cayman Islands law applies in determining whether Plaintiff has standing to sue derivatively. See ECF No. 41 at 28; see also Compl. ¶¶ 42-45, 95-98. Cayman Islands law prohibits derivative common-law claims except in narrow circumstances. See Winn v. Schafer, 499 F. Supp. 2d 390, 393, 396 (S.D.N.Y. 2007) (outlining four circumstances where derivative claim can be brought by shareholder under English law, which applies because Cayman Islands law is silent on issue of shareholder derivative suits). According to Plaintiff, it has standing as a registered shareholder to assert claims derivatively where conduct "qualifies as a fraud on the minority." ECF No. 41 at 29.

To establish the "fraud on the minority" exception, Plaintiff must show that the alleged wrongdoers "hold a controlling number of the company's shares or that they exercise *de facto* control over those shares." Winn, 499 F. Supp. 2d at 398. Additionally, the wrongdoer must have committed "fraud" which under Cayman Islands law examines whether there was any "self-dealing." Id. at 397-98. Further, to qualify for the fraud-on-the-minority exception and sue a third party other than the wrongdoer, "the plaintiff must establish that the third party directly participated in or was an accessory to the conduct of the controlling stockholders constituting the alleged breach of duty." In re Renren, Inc. v. XXX, Index No. 653594/2018, 2020 WL 2564684, at *29 (N.Y. Sup. Ct. May 20, 2020).

Plaintiff acknowledges that the alleged wrongdoer under its fraud-on-the-minority theory is Baliga. See ECF No. 41 at 29. Plaintiff's counsel, however, could not have reasonably believed that his arguments for application of the exception to Plaintiff were warranted by existing law. First, Baliga was not in control of the Company when he filed his suit. See Winn, 499 F. Supp. 2d at 396-98 (explaining that wrongdoer "must have control over a majority of the stock with voting rights" or exercised "*de facto* control" over those shares) (internal quotation

29

marks omitted). The Complaint alleges that Baliga was a "former stakeholder" that had "lost the contest for control" of Link Motion's Board of Directors. See Compl. ¶¶ 20, 30, 37. Second, there are no allegations in the Complaint that Baliga breached a duty to Link Motion or engaged in fraudulent or self-dealing conduct at the expense of the minority, as required to qualify for the fraud-on-the-minority exception. Lastly, there no allegations in the Complaint that Defendants "directly participated in or [were] an accessory to" any fraudulent conduct by Baliga. Renren, 2020 WL 2564684, at *29. In fact, there is no indication whatsoever in the Complaint that DLA Piper and Baliga had any communications, let alone a relationship such that it could plausibly be inferred that DLA Piper directly participated or assisted in Baliga's fraudulent conduct.[10] See id. (explaining that pleading must allege with particularity "how the third party acted dishonestly in assisting the primary perpetrator of the fraud"). Nor are there any allegations to support a plausible inference that Defendants benefited from Baliga's fraudulent conduct. And Plaintiff was required to plead with particularity "how [Defendants'] acted dishonestly in assisting the primary perpetrator of the fraud," in this case, Baliga. Renren, 2020 WL 2564684, at *29 ("Where dishonest assistance is alleged, the pleading must identify and particularize the nature of the third party's conduct in assisting the breach of fiduciary duty, how the assistance caused the plaintiff's loss, and how the third party acted dishonestly in assisting the primary perpetrator of the fraud.").

* * *

---

[10] To the extent Plaintiff is claiming that Defendants assisted in Baliga's purported fraud by failing to advice the company and raise the defense of lack of standing (ECF No. 41 at 30), that argument fails because, as already discussed, that defense was not meritorious and the Court had jurisdiction to issue the receivership order. See supra p. 26.

A reasonable inquiry by Plaintiff's counsel would have uncovered the apparent legal and factual deficiencies in Plaintiff's legal-malpractice claim. Further, Defendants alerted Plaintiff that they intended to seek sanctions if Plaintiff did not voluntarily withdraw its claim, and Defendants raised all of these deficiencies in their letter. See ECF No. 16. Even if one could conclude that Plaintiff and its counsel had a good-faith basis for initially filing suit, they certainly had no good-faith basis for continuing to pursue this claim after Defendants pointed out the numerous deficiencies in the claim. Yet, Plaintiff ignored Defendants' letter and instead persisted with this suit for six months before filing a voluntary notice of dismissal. See ECF No. 23.

Viewing all of the deficiencies in Plaintiff's claim collectively, the only plausible conclusion to be drawn from pursuit of this litigation is that it was done to harass Defendants. That conclusion is reinforced by Plaintiff's most recent course of action. See ECF No. 49. Following Judge Marrero's dismissal of Link Motion's direct legal-malpractice claim on May 26 (see ECF No. 30, No. 22-CV-8313), Plaintiff sought to unnecessarily prolong this case even more, raising the possibility that it could withdraw its prior notice of voluntary dismissal and amend the complaint here. See ECF No. 49. But as Defendants point out (see ECF No. 50), any argument that Plaintiff can continue to pursue this legal-malpractice claim derivatively on behalf of Link Motion, given the dismissal on the merits of Link Motion's direct legal-malpractice claim, is patently meritless. As is well established, a derivative claim on behalf of a corporation is "unnecessary and duplicative, and should be dismissed" if the corporation "subsequently sues to assert claims on its own behalf." Ross v. Patrusky, Mintz & Semel, No. 90-CV-1356 (SWK), 1997 WL 214957, at *10 (S.D.N.Y. Apr. 29, 1997). Additionally, under New York law, a dismissal on statute of limitations grounds, as Judge Marrero concluded was appropriate in Link Motion's suit against Defendants (see ECF No. 30 at 9, No. 22-CV-8313), is deemed a dismissal

31

on the merits. See <u>Sun v. City of New York</u>, 803 Fed. App'x 469, 471 n.3 (2d Cir. 2020). There

thus is no derivative claim remaining for Plaintiff to pursue here. Plaintiff nevertheless argued

for a stay of this case, seemingly suggesting that it should be permitted to withdraw its voluntary

dismissal and amend the complaint.

## CONCLUSION

For the reasons discussed, I respectfully recommend that Defendants' motion for Rule 11

sanctions be **GRANTED** and that Plaintiff and its counsel be ordered to pay the reasonable costs

and fees incurred by Defendants in defending this action.

**SO ORDERED.**

DATED:      New York, New York
            July 28, 2023


_____
VALERIE FIGUEREDO
United States Magistrate Judge


## PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION

**Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days (including weekends and holidays) from service of this Report and Recommendation to file any objections. <u>See also</u> Fed. R. Civ. P. 6(a), 6(b), 6(d). A party may respond to any objections within 14 days after being served. Any objections and responses shall be filed with the Clerk of the Court. Any request for an extension of time to file objections or responses must be directed to the Honorable Victor Marrero. If a party fails to file timely objections, that party will not be permitted to raise any objections to this Report and Recommendation on appeal. <u>See</u> 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; Fed. R. Civ. P. 6(a), 6(b), 6(d); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.</u>, 596 F.3d 84, 92 (2d Cir. 2010).**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/6/24

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CHINA AI CAPITAL LTD., derivatively on behalf of LINK MOTION INC., <br><br> Plaintiff, <br><br> - against - <br><br> DLA PIPER LLP (US) and CARYN G. SCHECHTMAN, <br><br> Defendants, and <br><br> LINK MOTION INC., <br> Nominal Defendant. | **21 Civ. 10911 (VM)** <br><br> <u>DECISION AND ORDER</u> |

**VICTOR MARRERO, United States District Judge.**

On July 28, 2023, Magistrate Judge Valerie Figueredo issued a Report and Recommendation with respect to a sanctions motion brought in this matter by defendants DLA Piper LLP (US) ("DLA Piper") and Caryn G. Schechtman ("Schechtman") against plaintiff China AI Capital Ltd. ("China AI") and its counsel. (<u>See</u> Dkt. No. 58 [hereinafter the "R&R"].)[1] Judge Figueredo recommends that the Court grant the motion and that China AI and its counsel be ordered to pay the reasonable costs and fees incurred by DLA Piper and Schechtman

---

[1] The R&R is reported at 2023 WL 5016492. Magistrate Judge Figueredo initially issued the R&R on July 24, 2023 (<u>see</u> Dkt. No. 53) and shortly thereafter issued an amended R&R on July 28 (<u>see</u> Dkt. No. 58) to correct a clerical error not relevant here. All references to the R&R in this Decision and Order are to the amended R&R at Docket No. 58.

(collectively "Defendants") in defending this action. (See R&R at 1.)

On August 21, 2023, China AI and its counsel filed objections to the R&R. (See Dkt. No. 63 [hereinafter the "Objections" or "Objs."].) Defendants responded to the Objections on September 18, 2023. (See Dkt. No. 64 [hereinafter "Resp."].) For the reasons below, the Court overrules the Objections, accepts the R&R, and adopts it in its entirety.

## I.   BACKGROUND

This matter entails a legal malpractice action arising out of DLA Piper's brief involvement in another case pending before this Court: Baliga v. Link Motion Inc., No. 18 Civ. 11642. Link Motion Inc. ("Link Motion") is a Chinese company organized under the laws of the Cayman Islands. (See Dkt. No. 1 [hereinafter the "Complaint" or "Compl."] ¶ 18.) Link Motion was founded by, among others, Vincent Wenyong Shi ("Shi"). (See id.)

## A.   LINK MOTION'S SALE OF FL MOBILE

In March 2017, Link Motion entered into a Share Purchase Agreement (the "SPA") with Tongfang Investment Fund Series SPC ("Tongfang"). (See Objs. at 5-6.) Under the SPA, Tongfang agreed to purchase Link Motion's 63 percent equity interest

2

in FL Mobile, a Chinese technology company. (See id.) The purchase price was RMB 2,520 million — an amount approximately equivalent to USD $400 million. (See id. at 6; R&R at 8.)

Tongfang completed its payment obligation pursuant to the SPA in December 2017. (See R&R at 17.) Tongfang paid with a combination of cash and a note (the "Tongfang Note") issued to Link Motion for RMB 1,770 million and due in December 2018. (See id. at 18.)

On the same day in December 2017 that the Tongfang Note was issued, Tongfang and Link Motion entered an "Equity Pledge Agreement" under which Tongfang granted to Link Motion a security interest in the FL Mobile equity. (See Objs. at 8.) The Equity Pledge Agreement allowed Link Motion to "retake ownership of the FL Mobile shares if Tongfang failed to pay the Tongfang Note." (R&R at 19.)

B.    THE *BALIGA* ACTION

On December 13, 2018, Wayne Baliga ("Baliga") filed the Baliga action, a derivative suit brought on behalf of Link Motion against, among other defendants, Shi. (See No. 18 Civ. 11642, Dkt. No. 1.) Baliga alleged that Shi and others were mismanaging Link Motion, engaging in self-dealing, stealing the company's assets, and stripping Link Motion of its value. (See id. ¶¶ 2-3.) The same day, Baliga (through counsel)

3

emailed DLA Piper and Schechtman, who is an attorney associated with DLA Piper, to notify them of the lawsuit and of Baliga's intent to seek a temporary restraining order the next day. (See R&R at 2.) Baliga contacted DLA Piper and Schechtman because Link Motion had retained DLA Piper in 2018 to represent it in connection with a corporate transaction. (See id. at 2 n.2.) Later on December 13, Schechtman forwarded Baliga's email to Shi and a Link Motion director, asking them to "instruct DLA if you would like us to respond" and asking for a retainer. (Id. at 2–3 (quoting Dkt. No 37-1 at 1).) Schechtman followed up again hours later. (See id. at 3; Dkt. No. 37-2 at 4.)

The next day, Schechtman asked Shi, "Do you want me to send an associate?"; Shi responded, "OK, thanks." (R&R at 3 (quoting Dkt. No. 37-2 at 3).) Schechtman told Shi that DLA Piper would send an associate to court to advise that DLA Piper "had received no instruction from [Link Motion] due to the time difference and language barriers." (Id. (quoting Dkt. No. 37-3 at 1).) Schechtman added, "How would you like us to handle?" (Id. (quoting Dkt. No. 37-3 at 1).)

On December 14, Baliga filed an order to show cause and sought a temporary restraining order, and Defendants appeared on behalf of Link Motion at a hearing before this Court. (See id.) The Court signed and entered the temporary restraining

4

order (the "TRO") the same day. (Id.) The TRO prohibited the Baliga defendants, including Link Motion and Shi, from "transferring, liquidating, dissipating, assigning, and/or granting a lien or security interest or other interest in, any assets belonging to Link Motion." (No. 18 Civ. 11642, Dkt. No. 7 at 1.)

On December 21, 2018, the Baliga parties filed a joint letter, notifying the Court of Link Motion's agreement to extend the TRO and requesting a deadline of January 21, 2019 to respond to a motion, filed by Baliga, for a preliminary injunction and appointment of a temporary receiver. (See R&R at 4, 6.) Schechtman signed the joint letter as "Counsel for Defendant, Link Motion Inc." (Id. (quoting No. 18 Civ. 11642, Dkt. No. 20 at 2).)

Over the next month, Defendants repeatedly attempted, via text message and by emails written in both English and Mandarin, to contact Shi and Link Motion, seeking direction and seeking payment on outstanding invoices. (See R&R at 4-7.) In a January 18, 2019 email to Shi and Link Motion written in both English and Mandarin, DLA Piper advised that absent a response from the company within 24 hours, DLA Piper would assume that it had Link Motion's consent not to oppose the motion for a preliminary injunction and appointment of a temporary receiver and that it had consent to withdraw from

5

representing the company. (See id. at 6.) Shi finally responded on January 21, 2019, writing, "I fully respect and appreciate your excellent work. But at this moment, it's very hard to make any further payment arrangement . . . ." (Dkt. No. 37-2 at 1.)

On January 21, 2019, Baliga and DLA Piper (the latter purporting to be acting as counsel for Link Motion) filed a joint stipulation stating that Link Motion agreed not to oppose the entry of a preliminary injunction and that Link Motion would receive an extension of time to answer or otherwise respond to the complaint. (See R&R at 7; No. 18 Civ. 11642, Dkt. No. 22.) The stipulation further stated that Link Motion "has preserved and is not waiving and h[as] not waived any objections, defenses or responses to" Baliga's complaint. (No. 18 Civ. 11642, Dkt. No. 22 at 3.) The Court approved the joint stipulation on January 22, 2019. (See No. 18 Civ. 11642, Dkt. No. 23.)

On February 1, 2019, the Court granted the motion for a preliminary injunction and appointed a receiver. (See No. 18 Civ. 11642, Dkt. No. 26.) The preliminary injunction restrained the Baliga defendants, including Shi and Link Motion, from "transferring, liquidating, dissipating, assigning, and/or granting a lien or security interest or

6

other interest in, any assets belonging to Link Motion." (Id. at 2.)

The Court appointed as temporary receiver Baliga's counsel, Robert Seiden (the "Receiver"), and directed that the Receiver "shall assume full control" of Link Motion. (Id. at 3.) The Court also directed that the Receiver "shall have the power to commence, continue, join in, and/or control any action, suit, arbitration or proceeding of any kind or nature, in the name of [Link Motion] or otherwise, . . . wherever such proceeding is located." (Id. at 4.) The Court further directed the Baliga defendants, including Link Motion and Shi, to "ensure that litigation or arbitration matters are directed and controlled by [Link Motion's] lawyers, the appointed Receiver, and/or the non-conflicted board members as directed by the Receiver." (Id. at 3.)

On March 1, 2019, Defendants formally withdrew as counsel for Link Motion. (See R&R at 7-8.) Later that month, attorneys Rosanne E. Felicello ("Felicello") and Michael James Maloney ("Maloney") appeared in the Baliga action on behalf of Shi. (See No. 18 Civ. 11642, Dkt. Nos. 35, 38, 125, 176.) On March 27, 2019, Maloney filed a motion to dismiss the underlying action and to discharge the Receiver. (See No. 18 Civ. 11642, Dkt. No. 36.)

7

On March 29, 2019, the Court held a conference at which Maloney was present and during which counsel for Baliga indicated that Baliga was not a registered shareholder of Link Motion because he merely held American depository shares — a fact relevant to whether Baliga had standing to bring certain claims on behalf of Link Motion. (See R&R at 8.) Yet Maloney made no mention of this fact in the reply brief he filed in May 2019 on behalf of Shi on the motion to dismiss. (See No. 18 Civ. 11642, Dkt. No. 62.) Maloney did raise the issue in a memorandum of law on a subsequent motion (the "June 2021 Motion") to dissolve the preliminary injunction and discharge the Receiver, filed in June 2021. (See No. 18 Civ. 11642, Dkt. Nos. 227, 230.)

## C.   THE TONGFANG ARBITRATION

On April 23, 2019, Tongfang[2] commenced arbitration proceedings against Link Motion. (See Dkt. No. 42-17 ¶ 3.) Despite the preliminary injunction's direction that Link Motion and Shi ensure that litigation or arbitration matters be directed by the Receiver, the Receiver was not notified about the Tongfang arbitration. (See No. 18 Civ. 11642, Dkt. No. 269 at 1.) Link Motion was not represented by counsel in

---

[2] In the Baliga action, the Receiver alleged in a May 3, 2021 letter that Shi owned Tongfang. (See No. 18 Civ. 11642, Dkt. No. 220 at 4.) In the instant action, China AI contended, "Even Baliga has conceded that Tongfang . . . was not Dr. Shi's alter ego." (Dkt. No. 17 at 3.)

the arbitration. (See Dkt. No. 42-17 ¶ 9.) The arbitrator's understanding was that Shi was acting on behalf of Link Motion in the arbitration. (See id.)

Link Motion did not submit any evidence in the arbitration and mounted no defense. (See id. ¶¶ 9-18.) The arbitrator ruled in a March 19, 2020 decision (the "Tongfang Award") that Link Motion owed Tongfang in the amount of RMB 2,520 million due to Link Motion's alleged failure to deliver FL Mobile shares to Tongfang. (See id. ¶ 21.) The Receiver later said in a court filing that he had no knowledge of these arbitration proceedings or of the Tongfang Award until February 2022. (See No. 18 Civ. 11642, Dkt. No. 269 at 1.)[3]

D.   THE INSTANT LITIGATION

On December 20, 2021, China AI commenced this shareholder lawsuit derivatively on behalf of Link Motion. (See Compl. at 1.) China AI is represented by Felicello and Maloney. (See id. at 25.) The Complaint alleges that DLA Piper and Schechtman committed legal malpractice by failing to argue in the Baliga action that Baliga lacked standing to bring a derivative suit and by failing to obtain Link Motion's informed consent to the appointment of the Receiver,

---

[3] In one of the headings in their brief, DLA Piper and Schechtman characterize the Tongfang Award as follows: "The Tongfang Award Was A Sham Orchestrated By Dr. Shi, And China AI And Its Counsel Knew It When They Filed The Complaint Here." (See Resp. at 10.)

resulting in entry of the TRO and preliminary injunction and the appointment of the Receiver. (See id. ¶¶ 108–114.) The Complaint also alleges that because of the TRO and preliminary injunction, Link Motion could not transfer the FL Mobile shares to Tongfang, which in turn resulted in the Tongfang Award. (See id. ¶¶ 85–88.)

DLA Piper and Schechtman initiated sanctions proceedings under Federal Rule of Civil Procedure 11 ("Rule 11") in March 2022. Rule 11(c)(2) provides that a sanctions motion "must not . . . be presented to the court if the challenged paper . . . is withdrawn or appropriately corrected within 21 days after service" of the motion on the party or attorney against whom sanctions are sought. Accordingly, DLA Piper and Schechtman served papers complying with this safe harbor requirement on March 8, 2022. (See R&R at 14; Dkt. No. 37-14; Dkt. No. 37-15.) In those papers, Defendants warned China AI that its claim was frivolous in part because the causation element of the claim was premised on a supposed failure to raise a "novel" standing argument in Baliga that had "never previously been tested in a New York court." (Dkt. No. 37-14 at 13.) China AI did not respond (see R&R at 14) and instead decided in a letter filed March 14, 2022 (see Dkt. No. 17) to oppose a motion to dismiss proposed by Defendants.

10

Meanwhile, in Baliga, Magistrate Judge Debra Freeman on March 9, 2022 issued an opinion on the June 2021 Motion, concluding that although Baliga lacked standing to assert his derivative state law claims for breach of fiduciary duty and unjust enrichment, he had standing to assert his derivative federal securities law claims. (See R&R at 26; No. 18 Civ. 11642, Dkt. No. 275.) Judge Freeman thus concluded that the Court had subject matter jurisdiction over the Baliga case and the power to issue the preliminary injunction and receivership order. (See R&R at 27.) The Court adopted Judge Freeman's conclusions on August 25, 2022. (See 18 Civ. 11642, Dkt. No. 331.)

Back in the instant litigation, China AI filed a proposed notice of voluntary dismissal on September 6, 2022. (See Dkt. No. 22.) Federal Rule of Civil Procedure 23.1(c) provides that voluntary dismissals in derivative actions may occur "only with the court's approval" and that a court may direct that notice of a proposed voluntary dismissal "be given to shareholders or members in the manner that the court orders." Accordingly, the Court on September 13, 2022 ordered China AI to file a proposed notice to Link Motion shareholders. (See Dkt. No. 28.) China AI did so (see Dkt. No. 30), and Defendants objected to the proposed notice (see Dkt. No. 34).

11

Also on September 13, 2022, DLA Piper and Schechtman advised the Court that Felicello and Maloney on the previous day had filed a direct legal malpractice action on behalf of Link Motion against DLA Piper and Schechtman in New York state court. (See Dkt. No. 27 at 1.) DLA Piper and Schechtman removed the state court action — whose allegations against Defendants were similar to the allegations in the instant case — to this Court on September 29, 2022. (See No. 22 Civ. 8313, Dkt. No. 1.)

On September 26, 2022, DLA Piper and Schechtman filed their sanctions motion in the instant litigation. (See Dkt. No. 35.) During October and November 2022, the parties fully briefed the sanctions motion and submitted evidence in support of their positions. (See Dkt. Nos. 36-37, 41-45.)

On May 26, 2023, the Court held in the direct malpractice action — i.e., the action removed from state court — that Link Motion's claim was time-barred. (See R&R at 11.) The Court granted Defendants' motion to dismiss the direct malpractice suit with prejudice. (See id.) Then, on May 30, 2023, China AI in the instant derivative litigation submitted a letter arguing that this action should be stayed pending reconsideration of the Court's decision in the direct malpractice action and, alternatively, that China AI should

12

be allowed to withdraw its proposed voluntary dismissal and seek leave to amend the Complaint. (See id.)

Judge Figueredo issued the R&R on the Rule 11 sanctions motion in July 2023. Judge Figueredo recommended that the sanctions motion be granted and that China AI and its counsel be ordered to pay the reasonable costs and fees incurred by Defendants in defending this action. (See R&R at 1.)

## II. STANDARD OF REVIEW

Under 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72, the Court may designate a magistrate judge to submit recommendations for the disposition of certain motions. A party may object in writing to the magistrate judge's recommendations, and the Court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); see Fed. R. Civ. P. 72(b)(3). "However, when the objections simply reiterate previous arguments or make only conclusory statements, the Court should review the report for clear error." Brown v. Colvin, 73 F. Supp. 3d 193, 197 (S.D.N.Y. 2014). "[A]n error is clear when the reviewing court is left with a 'definite and firm conviction that a mistake has been committed.'" Levinson v.

13

<u>U.S. Fed. Bureau of Prisons</u>, 594 F. Supp. 3d 559, 563 (S.D.N.Y. 2022).

China AI raises voluminous objections to the R&R — ten specific objections in total. (<u>See</u> Objs. at 14–49.) Unless otherwise specified below, the Court has reviewed the R&R de novo with respect to each of China AI's specific objections.

### III. **<u>LEGAL STANDARD ON A RULE 11 MOTION</u>**

The R&R's recommendations pertain to a sanctions motion brought under Rule 11. As relevant here, Rule 11(b) provides that when filing papers in court, an attorney certifies that to the best of his or her knowledge, formed after a reasonable inquiry,

> (1) [the papers are] not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; [and]
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery[.]

Rule 11(b)(1) has been called the "improper purpose clause." <u>Yeremis v. Amerit Fleet Sols.</u>, No. 20 Civ. 4723, 2021 WL 1565693, at *10 (S.D.N.Y. Apr. 21, 2021) (quoting <u>Bruno v. City of New York</u>, No. 89 Civ. 6661, 1992 WL 84471, at *3 (S.D.N.Y. 1992)). Paragraphs (b)(2) and (b)(3) of the rule,

14

on the other hand, have been collectively labeled the "frivolous clause." Id. (quoting Bruno, 1992 WL 84471, at *3).

The "frivolous clause" requires parties and attorneys to make "a reasonable inquiry into the facts" and requires attorneys to make "a reasonable inquiry into the law." Id. (quoting Bruno, 1992 WL 84471, at *3). Thus, under Rule 11(b)(2) and (b)(3), the "standard for triggering the award of fees . . . is objective unreasonableness." Storey v. Cello Holdings, L.L.C., 347 F.3d 370, 387 (2d Cir. 2003) (Sotomayor, J.) (quoting Margo v. Weiss, 213 F.3d 55, 65 (2d Cir. 2000)). In other words, the standard "is not based on the subjective beliefs" of the attorney or party against whom sanctions are sought. Id.

With respect to the imposition of monetary sanctions, there is a distinction between Rule 11(b)(3) (which pertains to factual contentions) and Rule 11(b)(2) (which pertains to legal contentions). "Sanctions that involve monetary awards . . . may not be imposed on a represented party for causing a violation of subdivision (b)(2), involving frivolous contentions of law. Monetary responsibility for such violations is more properly placed solely on the party's attorneys." Manchester Mgmt. Co. v. Echo Therapeutics, Inc., 297 F. Supp. 3d 451, 463 (S.D.N.Y. 2018) (quoting Fed. R.

15

Civ. P. 11(b) advisory committee's note to 1993 amendment); see Fed. R. Civ. P. 11(c)(5). Moreover, as Judge Figueredo noted (see R&R at 13), any sanction "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4).

## IV. DISCUSSION

The R&R rests on two express conclusions and one conclusion that was somewhat more implicit. First, Judge Figueredo expressly found that China AI and its counsel made false allegations in the Complaint in violation of Rule 11(b)(3). (See R&R at 16-22.) Second, Judge Figueredo expressly concluded that China AI's counsel brought a frivolous legal malpractice claim in violation of Rule 11(b)(2). (See id. at 22-30.) Third, the R&R appears to have concluded that this litigation has been carried on for an improper purpose in violation of Rule 11(b)(1). (See id. at 31-32.) Judge Figueredo recommends that the Court remedy these violations by ordering that China AI and its counsel pay the reasonable costs and fees incurred by DLA Piper and Schechtman in defending this action. (See id. at 1, 32.)

16

A.    OBJECTIONS TO THE RULE 11(b)(3) CONCLUSION

Judge Figueredo concluded that China AI and its counsel violated Rule 11(b)(3) by making two false allegations in the Complaint. First, Judge Figueredo found that the Complaint falsely alleged that "prior to the entry of the TRO, '[w]hat remained to be performed under the SPA was [Link Motion's] obligation to cause the transfer of FL Mobile shares in accordance with the SPA.'" (R&R at 16 (alterations in original) (quoting Compl. ¶¶ 64).) Second, Judge Figueredo found that the Complaint falsely alleged that the TRO and preliminary injunction prevented Link Motion from satisfying its obligation to Tongfang (i.e., causing the transfer of FL Mobile) after Tongfang "had already paid [Link Motion] consideration as required by the SPA." (Id. (alteration in original) (quoting Compl. ¶ 85).) China AI and its counsel object to both findings.

1.    Whether Link Motion Transferred FL Mobile Shares to Tongfang Prior to the Entry of the TRO

Judge Figueredo made the following findings on the basis of publicly available Securities and Exchange Commission ("SEC") filings: (1) that Link Motion transferred the FL Mobile shares to Tongfang before Baliga filed suit in December 2018, and (2) that China AI's allegation that the shares had not been transferred pursuant to the SPA prior to entry of

17

the TRO was therefore false. (See R&R at 17.) Judge Figueredo further found that the public filings "would have been available to [China AI] and its counsel before it commenced this action, after a reasonable inquiry into the evidentiary support for the factual allegations in the Complaint." (Id.)

China AI objects, arguing that Judge Figueredo misread the Tongfang Award. (See Objs. at 16–18.) China AI contends that in issuing the Tongfang Award, the arbitrator found (1) that delivery of the FL Mobile shares to Tongfang "was contingent upon payment of the [Tongfang] Note in full" and (2) that Tongfang had not satisfied its obligations under the Tongfang Note and thus "had paid only part of the total consideration owed under the SPA." (Objs. at 17.)

Judge Figueredo did not misread the Tongfang Award. The arbitrator clearly found that Tongfang had, in part by issuing the Tongfang Note, completed its payment obligations under the SPA as of December 14, 2017 and that the FL Mobile shares were due at that time. (See Dkt. No. 42-17 ¶¶ 19–22.)[4] This is exactly how Judge Figueredo read the Tongfang Award. (See

---

[4] China AI argues that under a "Supplemental Agreement" entered into by Link Motion and Tongfang in connection with the SPA, Tongfang could not satisfy its obligation under the SPA to pay for the FL Mobile shares until it did so in cash (as opposed to partly in cash and partly in the form of the Tongfang Note). (See Dkt. No. 42-10; Objs. at 6.) The text of the cited portions of the Supplemental Agreement simply does not support China AI's argument. (See Dkt. No. 42-10 §§ 2.3, 4.1, 4.2 (stating only that "part or the whole of the purchase price may be paid in US dollars or RMB, within or outside PRC as the parties may deem fit")).

18

R&R at 20–21.) And in fact, the arbitrator found that Tongfang did not owe Link Motion *anything* under the Tongfang Note because Link Motion had pledged the Tongfang Note elsewhere. (See Dkt. No. 42-17 ¶ 20 (stating that Tongfang would not be unjustly enriched by repayment of the value of the Tongfang Note).)

China AI further argues that since Link Motion retained control (if not legal title) over the FL Mobile shares pursuant to the Equity Pledge Agreement, it had not yet satisfied its legal obligation to Tongfang by transferring control over the shares to Tongfang. (See Objs. at 18–22.) Thus, according to China AI, the R&R was wrong to conclude that Link Motion had already transferred the FL Mobile shares to Tongfang, the SEC filings notwithstanding.

China AI's argument is unavailing. The Complaint alleges that Link Motion had, as of the date of the TRO, yet to transfer the FL Mobile shares to Tongfang *under the SPA*. (See Compl. ¶¶ 63–64.) Judge Figueredo concluded that this allegation was false because, as SEC filings clearly show, Link Motion transferred the FL Mobile shares to Tongfang as of December 2017 — a year before the Complaint was filed — and therefore satisfied its obligations under the SPA as of that date. (See R&R at 17–19; see also id. at 19–20 (stating that there "would have been no reason for the Equity Pledge

19

agreement — allowing Link Motion to *recover* ownership in FL Mobile shares from Tongfang — if Link Motion had not already transferred those shares to Tongfang").) The question of who controlled the shares under the subsequent Equity Pledge Agreement is irrelevant.

Moreover, China AI's characterization of the Equity Pledge Agreement as part of an arrangement under which Link Motion "had failed to transfer the FL Mobile shares to Tongfang" (Objs. at 9) is backward. Link Motion was not obligated to transfer the FL Mobile shares to Tongfang under the Equity Pledge Agreement. Rather, the Equity Pledge Agreement provided Link Motion security for Tongfang's obligation to honor the Tongfang Note, upon whose satisfaction Link Motion's security interest in the shares would be extinguished. (See R&R at 21 (stating that China AI "conflates completion of the bargained-for exchange under the SPA with payment by Tongfang of the Tongfang Note").) This objection is thus overruled.

2.    Whether the TRO or the Preliminary Injunction Prevented Link Motion from Transferring FL Mobile

Judge Figueredo's second conclusion followed from her first: Since Link Motion transferred the FL Mobile shares to Tongfang before Baliga filed suit, neither the TRO nor the preliminary injunction could have prevented Link Motion from

20

doing so. (See R&R at 17.) China AI's objection to this conclusion depends, in turn, on the viability of its previous objection. (See Objs. at 22-26.)

Accordingly, the Court overrules the objection. Indeed, this objection makes even clearer that China AI's characterization of the Equity Pledge Agreement is backward. The TRO and preliminary injunction prevented the Baliga defendants from *dissipating* Link Motion's assets, not from *receiving* assets on behalf of the company. And as the R&R concluded, "[n]othing in the language of the TRO [or preliminary injunction] prevented Link Motion from enforcing the Tongfang Note, receiving payment under the Note, or foreclosing on its security interest in the FL Mobile shares if Tongfang failed to repay the Note." (R&R at 20.)

In short, the Court upholds Judge Figueredo's conclusion that China AI and its counsel violated Rule 11(b)(3) by making false allegations in the Complaint.

B. OBJECTIONS TO THE RULE 11(b)(2) CONCLUSION

Judge Figueredo concluded that China AI's counsel violated Rule 11(b)(2) by bringing a frivolous claim for legal malpractice. (See R&R at 22.) "An argument constitutes a frivolous legal position for purposes of Rule 11 sanctions if, under an objective standard of reasonableness, it is clear

21

. . . that there is no chance of success and no reasonable argument to extend, modify or reverse the law as it stands." Morley v. Ciba-Geigy Corp., 66 F.3d 21, 25 (2d Cir. 1995) (ellipsis in original) (quoting Caisse Nationale de Crédit Agricole v. Valcorp, Inc., 28 F.3d 259, 264 (2d Cir. 1994)); see also Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd., 682 F.3d 170, 177 (2d Cir. 2012) (per curiam) (stating that standard under Rule 11 "is objective unreasonableness and is not based on the subjective beliefs of the person making the statement" (quoting Storey, 347 F.3d at 387)).

Judge Figueredo's Rule 11(b)(2) recommendation rests on several independent grounds. First, the R&R concluded that "a reasonable inquiry into the legal basis for the claim should have uncovered that [China AI] lacked standing to assert its . . . claim derivatively on behalf of Link Motion." (Id. at 28-29.) Second, Judge Figueredo found that counsel could not have reasonably believed that DLA Piper and Schechtman breached a duty to Link Motion. (See id. at 24.) And third, the R&R concluded that counsel could not have reasonably believed that DLA Piper's and Schechtman's actions caused Link Motion's alleged damages. (See id.) China AI and its counsel raise five objections to Judge Figueredo's Rule 11(b)(2) conclusions. (See Objs. at 26-40.)

22

### 1. Whether Counsel Could Have Reasonably Believed China AI Has Standing

Judge Figueredo concluded that, because of China AI's clear lack of standing to sue derivatively on behalf of Link Motion, a reasonable lawyer in the position of China AI's counsel would not have brought this lawsuit. (See R&R at 28-29.) She noted that the law of the Cayman Islands governs the standing issue and that when Cayman Islands law is silent, Cayman Islands courts primarily look to the English common law for guidance. (See id. at 29.)

The standing issue here turns on whether China AI can establish an exception to the general English common law rule that shareholders are not permitted to bring derivative actions on behalf of a company — specifically the "fraud on the minority" exception. (See id. at 29.) A shareholder derivative plaintiff invoking that exception must plead and prove fraud — defined under the doctrine as self-dealing — by a wrongdoer with control over a majority of the company's voting shares. See Winn v. Schafer, 499 F. Supp. 2d 390, 396-97 (S.D.N.Y. 2007) (applying the English common law as incorporated by Cayman Islands law). "[F]raud is not present unless the alleged wrongdoer has benefitted at the company's expense as a result of his misconduct." Id. at 397 (alteration

23

in original) (quoting In re Tyco Int'l, Ltd. Multidistrict Litig., 340 F. Supp. 2d 94, 99 (D.N.H. 2004)).

Where the lawsuit is brought against a third party other than the wrongdoer, the plaintiff must also "establish that the third party directly participated in or was an accessory to the conduct of" the wrongdoer. In re Renren, Inc. Derivative Litig., No. 653594/2018, 2020 WL 2564684, at *27 (N.Y. Sup. Ct. N.Y. Cnty. May 20, 2020), aff'd sub nom. In re Renren, Inc., 192 A.D.3d 539 (N.Y. App. Div. 1st Dep't 2021). To satisfy that burden at the pleading stage, the plaintiff — as China AI acknowledges (see Objs. at 40) — must allege with particularity "how the third party acted dishonestly" in assisting the wrongdoer. Id.

The alleged wrongdoers under China AI's fraud-on-the-minority theory are Baliga and his counsel, the Receiver. (See R&R at 29; Objs. at 39.) The R&R concluded that China AI's counsel "could not have reasonably believed" that the theory would be viable in this case. (R&R at 29.) China AI and its counsel object to this conclusion. (See Objs. at 38-40.)

China AI's objection lacks merit. For one thing, China AI and its counsel make no effort to refute Judge Figueredo's finding that the Complaint lacks an allegation that Baliga or his counsel engaged in self-dealing conduct or otherwise

24

improperly benefitted at the expense of Link Motion. (See R&R at 30.) This concession alone is enough to doom the objection. Moreover, China AI provides no support for its contention that it "adequately alleged" in the Complaint that DLA Piper and Schechtman, the third parties under its fraud-on-the-minority theory, "acted dishonestly." (Objs. at 40.) In fact, China AI's legal malpractice claim is predicated merely on negligence. (See Compl. ¶ 112.)

The Court thus agrees that the standing argument advanced by China AI and its counsel was frivolous. Their objection on this issue is therefore overruled.[5]

### 2. Whether the R&R Reached a Conclusion with Respect to an Attorney-Client Relationship

China AI argues that the R&R erred in "conclud[ing] that [China AI's] claim that an attorney-client relationship arose when Defendants appeared in the [Baliga] action on behalf of Link Motion had no chance of success." (Objs. at 28.) Judge Figueredo reached no such conclusion. Indeed, she wrote that

---

[5] The Court notes that it is at this point unnecessary to reach the additional objections raised by China AI and its counsel to Judge Figueredo's conclusion that counsel violated Rule 11(b)(2), as absent standing to bring its malpractice claim, China AI "had no chance of success." Morley, 66 F.3d at 25 (quoting Caisse Nationale, 28 F.3d at 264); see Nelson v. Smith, 618 F. Supp. 1186, 1199 (S.D.N.Y. 1985) (stating that it was "unnecessary for the Court to reach the Magistrate's alternative recommendation" in light of dispositive holding); In re Lifetrade Litig., No. 17 Civ. 2987, 2022 WL 1448431, at *4 & nn.3–5 (S.D.N.Y. May 9, 2022) (overruling objections as moot in light of dispositive holdings). The Court nevertheless proceeds to the additional objections.

25

she "need not decide whether [China AI's] allegations that Defendants were formally retained by Link Motion have evidentiary support." (R&R at 23.) She rested her holding instead on the frivolousness of other independent elements of China AI's malpractice claim. (See R&R at 24.)[6] Thus, this objection is overruled.

### 3. Whether China AI's Counsel Could Have Reasonably Believed China AI Could Prove Malpractice

China AI's next objection pertains to Judge Figueredo's conclusion that its counsel could not have reasonably believed that China AI could prove malpractice, i.e., that DLA Piper and Schechtman breached the duty attorneys in New York owe to their clients. (See Objs. at 28–34.) Judge Figueredo based this conclusion on Link Motion's and Shi's "refus[al] to engage with Defendants in a discussion about how to respond to the TRO and preliminary injunction motions" despite Schechtman's "diligent[] attempt[s], on numerous occasions, to discuss . . . Baliga's complaint." (R&R at 23-

---

[6] Legal malpractice is a species of negligence; accordingly, a plaintiff alleging legal malpractice must prove (1) duty, i.e., an attorney-client relationship; (2) breach; (3) proximate causation; and (4) damages. See Schweizer v. Mulvehill, 93 F. Supp. 2d 376, 393 (S.D.N.Y. 2000). All four elements must be proven, so if China AI's theory with respect to any element is frivolous, the entire claim has "no chance of success," Morley, 66 F.3d at 25 (quoting Caisse Nationale, 28 F.3d at 264), and the entire claim is therefore frivolous. Cf. Thompson v. Ouellette, 986 N.W.2d 338, 350 (Wis. Ct. App. 2023) (stating that "one situation in which an appeal is frivolous" in its entirety "is when an element, issue, or argument" necessary to succeed on appeal "is supported solely by frivolous arguments").

26

24.) China AI argues that the R&R's conclusion must be reversed because the question of whether Defendants breached a duty to China AI is a jury question that cannot be resolved on a pre-discovery motion and without expert testimony. (See Objs. at 29–30.) China AI further argues that it should be entitled to discovery in light of China AI's lack of "opportunity to review communications in the files of Shi or Link Motion, or to cross-examine Schechtman about other communications that occurred between the parties." (Id. at 30.)

The Court is not persuaded. China AI's counsel represented Shi and, in the direct malpractice action, purported to represent Link Motion, as well, during the relevant period (see generally Nos. 18 Civ. 11642 and 22 Civ. 8313),[7] so the Court doubts that there was no opportunity to examine Shi's and Link Motion's files.[8] In any case, China AI

---

[7] Maloney also currently claims in the Baliga action that his and Felicello's law firm, Felicello Law P.C., represents Link Motion in that action "for motion to dismiss purposes." (No. 18 Civ. 11642, Dkt. No. 507 at 1.) The Receiver's position is that Shi "has conflicts of interest" with Link Motion and that "the Receiver should have the authority to control [Link Motion's] positions in this litigation," and the Receiver has accordingly asked Judge Figueredo for "instructions as to whether [the Receiver] should engage counsel for [Link Motion] in defending Baliga's Third Amended Complaint." (No. 18 Civ. 11642, Dkt. No. 506.)

[8] In the Baliga action, the Receiver wrote in a letter to the Court that Shi "is directly connected to China AI" and "engineered the sale of [Link Motion] shares to his close associates through China AI in order to illegally secure greater power over [Link Motion's] board." (No. 18 Civ. 11642, Dkt. No. 220-2 at 2.) In this action, China AI contends that it is "owned and controlled by Mr. Hua Jingyuan" and that Shi "has never owned an interest in" China AI. (Dkt. No. 41 at 25.)

27

had the chance to — and did — submit evidence on the Rule 11 motion before Judge Figueredo, and that evidence included nothing indicating that the communications on which Judge Figueredo relied told less than the full story. (See generally Dkt. No. 42.) Further, courts routinely resolve Rule 11 motions before discovery. See, e.g., An v. Despins, No. 22 Civ. 10062, 2023 WL 4931832, at *1 (S.D.N.Y. Aug. 2, 2023); Bletas v. Deluca, No. 11 Civ. 1777, 2011 WL 13130879, at *10 (S.D.N.Y. Nov. 15, 2011) (stating that while Rule 11 permits parties to identify contentions that will likely have evidentiary support after discovery, "this allowance cannot be understood to give parties free reign to fire shots into the proverbial dark because a reasonable inquiry must still support the likelihood of the inference drawn"); see also Stonewell Corp. v. Conestoga Title Ins. Co., 678 F. Supp. 2d 203, 209 (S.D.N.Y. 2010) (stating that expert testimony is not always required to establish standard of care in legal profession "[w]here it is apparent that the attorney exercised reasonable judgment as to how to proceed").

China AI's next argument is also unpersuasive. It contends that Judge Figueredo was wrong on the merits — i.e., that the R&R was incorrect to conclude that counsel could not have reasonably believed that China AI could prove malpractice. But China AI's theory of malpractice — that

28

Defendants failed to defeat the TRO and preliminary injunction by raising a standing defense against Baliga and failed to obtain Link Motion's informed consent to the appointment of the Receiver — was presented to (see Dkt. No. 41 at 15-18) and rejected by Judge Figueredo. And the Court cannot say the R&R's conclusion constitutes clear error considering the "unanswered communications and nearly complete radio silence from Shi" on which Judge Figueredo relied. (R&R at 24.) This objection is accordingly overruled.

### 4.    Whether the R&R Erred with Respect to Causation

Judge Figueredo also concluded that China AI's counsel could not have reasonably believed that China AI could prove causation — i.e., that any malpractice by DLA Piper or Schechtman caused China AI's alleged damages. (See R&R at 24-28.) The element of causation is, of course, intertwined with the separate element of damages. On the latter element, the R&R concluded that the only damages alleged by China AI in connection with its malpractice claim are the Tongfang Award and the cost to Link Motion of the receivership (see R&R at 26 n.5.), and China AI has not specifically objected to this conclusion.

China AI's theory of causation is that Defendants' malpractice caused the entry of the TRO and preliminary

29

injunction and the appointment of the Receiver, which in turn prevented Link Motion from transferring FL Mobile shares to Tongfang and accordingly resulted in the imposition of the Tongfang Award. (See Compl. ¶¶ 83-91.) China AI and its counsel object to the R&R's conclusions on the causation issue for several reasons. (See Objs. at 34-38.) These reasons can be grouped into two categories: (a) reasons relating to the Tongfang Award and (b) reasons relating to the outcome of the June 2021 Motion.

a. *Reasons relating to the Tongfang Award*

China AI's first reason for objecting to the R&R's conclusion on the causation issue can be easily dismissed. Judge Figueredo's finding that China AI's causation theory is frivolous was grounded in part on her conclusion with respect to the Rule 11(b)(3) violations: since Link Motion had already transferred the FL Mobile shares to Tongfang before Baliga commenced his lawsuit (the findings of the Tongfang Award arbitrator notwithstanding), any malpractice arising from the Baliga case could not have prohibited that transfer from happening. (See R&R at 24.) To the extent China AI objects to the R&R's causation analysis on the ground that the R&R's Rule 11(b)(3) findings were wrong (see Objs. at 34), the Court overrules the objection for the reasons discussed above.

Judge Figueredo's second reason for finding the causation theory frivolous — grounded on Shi's apparent decision not to submit evidence or mount a defense in the arbitration proceeding against Tongfang, and on Shi's failure to contemporaneously alert the Receiver to the pendency of the arbitration proceeding — was also sound. Judge Figueredo wrote, "Given the utter failure of Link Motion to defend itself against the claims in the arbitration, it is speculative, at best, for [China AI] to claim that [Defendants'] purported failure to 'competently advise' Link Motion about a standing defense proximately caused the company to lose the arbitration." (R&R at 25 (citation omitted).) China AI argues against this conclusion by raising contentions about the Tongfang Award already overruled above (see Objs. at 34-36); those arguments are accordingly rejected.

China AI fares no better by arguing (see id. at 35) that the R&R improperly weighed the credibility of Shi's explanation for Link Motion's lack of defense in the arbitration. Shi's explanation was that the "communications between the arbitrator and Shi (where Shi purported to act on behalf of Link Motion) were in fact with someone other than Shi who was posing as Shi and using Shi's corporate e-mail account without authorization." (R&R at 25.) In fact, Judge

31

Figueredo expressly did not base her conclusion on the credibility (or lack thereof) of Shi's story. The R&R "[p]ut[] aside the plausibility" of Shi's story and concluded that even if it was true, "an adequate investigation by counsel . . . should have uncovered that Link Motion was not represented by counsel in the arbitration, [and] that it mounted no defense to Tongfang's claims." (R&R at 25.) Judge Figueredo concluded that those facts "should have led counsel to deeply question the viability of a legal-malpractice claim against Defendants." (Id.) The Court thus overrules this objection to the extent it is premised on an argument that the R&R's conclusion improperly depended on a credibility determination.

b. *Reasons relating to the June 2021 Motion*

The R&R's third reason for finding the causation theory frivolous was that even if DLA Piper and Schechtman had, in the Baliga case, argued in response to the TRO and preliminary injunction motions that Baliga lacked standing, the "outcome would have remained the same, because, as the Court later concluded, it had jurisdiction to appoint the Receiver." (R&R at 26.) This conclusion was based on the Court's adoption in August 2022 of Magistrate Judge Freeman's findings on the June 2021 Motion. (See id. at 26-27.) Judge Figueredo

32

concluded that since, as Judge Freeman found, Baliga did have standing to bring his federal securities claims in December 2018, the Court's jurisdiction to enter the preliminary injunction and appoint the Receiver would not have been a substantial issue in controversy even if Defendants had raised the standing argument. (See id. at 27.)

China AI raises two arguments against the R&R's conclusion on this point. First, China AI contends that Judge Freeman's opinion, which was not issued until March 2022 and was not adopted by the Court until August 2022, cannot serve as the basis for a ruling that the Complaint — filed earlier, on December 20, 2021 — was frivolous in violation of Rule 11(b)(2). (See Objs. at 36–37.)

On the surface, this argument has some intuitive appeal, so the Court pauses here to more closely review the timeline. Papers complying with Rule 11's safe harbor requirement were served upon China AI on March 8, 2022. (See R&R at 14; Dkt. No. 37-14; Dkt. No. 37-15.) In those papers, Defendants put China AI on notice that its malpractice claim was potentially frivolous in part because the claim's causation element was premised on Defendants' alleged failure to raise a "novel" standing argument in Baliga that had "never previously been tested in a New York court." (See Dkt. No. 37-14 at 13.) The next day, Judge Freeman issued her opinion — which, despite

33

considering the standing argument, concluded that the Court had jurisdiction to enter the preliminary injunction and appoint the Receiver — and the Court adopted Judge Freeman's opinion on August 25, 2022. (See No. 18 Civ. 11642, Dkt. Nos. 275, 331.)

The issuance and adoption of Judge Freeman's opinion distinguishes this case from the typical malpractice action in which, like DLA Piper and Schechtman here, the defendant attorney stands accused of "failing to make a particular argument." Gunn v. Minton, 568 U.S. 251, 259 (2013). Usually, in such a lawsuit, "the causation element requires a 'case within a case' analysis of whether, had the argument been made, the outcome of the earlier litigation would have been different." Id. And "[b]ecause of the backward-looking nature of a legal malpractice claim," the "case within a case" question "is posed in a merely hypothetical sense: If [the] lawyers had raised a timely . . . argument, would the result . . . have been different?" Id. at 261. Here, though, the "case within a case" question is not hypothetical. Shi did eventually make the standing argument that China AI accuses Defendants of forfeiting, and the Court considered it on its merits and nevertheless concluded (by adopting Judge Freeman's opinion) that it had jurisdiction to enter the preliminary injunction and appoint the Receiver.

China AI thus was — after having been warned pursuant to Rule 11(c)(2) in March 2022 that its causation theory was potentially untenable — on notice as of August 25, 2022 that the theory was definitely untenable. The "case within a case" question had an answer, and not merely a hypothetical one: If Defendants had raised the standing argument that, allegedly, they negligently forfeited, the result would not have been different, and therefore China AI cannot prove causation.

Further, Defendants had not yet filed their Rule 11 motion, so there was still time for China AI and its counsel to avoid sanctions. More than 21 days, see Fed. R. Civ. P. 11(c)(2), passed after the Court's adoption of Judge Freeman's opinion foreclosing China AI's causation theory. Yet instead of using that period to "withdraw[] or appropriately correct[]" the Complaint, id., China AI's counsel filed the direct legal malpractice action in state court on September 12, 2022, lodging against the same Defendants allegations similar to those in the instant case. (See Dkt. No. 27 at 1.) It was not until September 26, 2022 that Defendants filed their Rule 11 sanctions motion with the Court. (See Dkt. No. 35.)

The Court thus rejects China AI's argument that Judge Freeman's opinion cannot serve as the basis for sanctions under these circumstances. See Bletas, 2011 WL 13130879, at

35

*11 (stating that it was not necessary to decide "whether plaintiffs' failure to ascertain that all of these claims are foreclosed . . . was objectively unreasonable at the time they first brought suit because after receiving notice that . . . defendants intended to seek sanctions unless plaintiffs withdrew these claims, plaintiffs chose to double down on their allegations").

China AI's final argument on the causation issue is similarly unavailing. China AI contends that even if the Court had *authority* (as Judge Freeman found) to enter the preliminary injunction and appoint the Receiver, the Court would not have necessarily done so if DLA Piper and Schechtman had argued that Baliga made "false allegations" in his complaint and that Baliga's securities law claims were "facially defective." (Objs. at 37.) The "false allegations" argument would have necessarily been raised as part of the standing argument discussed above because the allegedly "false" allegation was that Baliga was a registered Link Motion shareholder rather than merely a holder of American depository shares (i.e., rather than someone without standing). (See Compl. ¶¶ 38-41.) And with respect to the "facially defective" argument, China AI points to nothing in the Complaint that could be construed to allege that Defendants committed malpractice by failing to raise such an

36

argument, and it is the causation theory *alleged in the Complaint*, after all, that the R&R found frivolous. This objection is accordingly overruled.

### 5. Whether the R&R Recommends Sanctioning Both China AI and Its Counsel for Violating Rule 11(b)(2)

China AI and its counsel next object to Judge Figueredo's "apparent recommendation" that both China AI and its counsel be monetarily sanctioned for violating Rule 11(b)(2). (Objs. at 40.) As the objectors point out, represented parties cannot be penalized with monetary sanctions for advancing frivolous legal contentions. See Fed. R. Civ. P. 11(c)(5).

But the R&R made no such recommendation. Judge Figueredo found a Rule 11(b)(2) violation *and* a Rule 11(b)(3) violation, and the rule against monetarily sanctioning represented parties applies only under Rule 11(b)(2). See Fed. R. Civ. P. 11(c)(5); see also Fed. R. Civ. P. 11(c)(1) (stating that sanctions can be imposed on any "attorney, law firm, *or party* that violated the rule or is responsible for the violation" (emphasis added)). To the extent the R&R is unclear on this front, the Court construes the R&R to recommend monetary sanctions against China AI for violating Rule 11(b)(3) and against its counsel for violating Rule 11(b)(2) and to impose the monetary amount jointly and severally so as to avoid double recovery by Defendants. See Est. of Calloway v. Marvel

Ent. Grp., 9 F.3d 237, 239 (2d Cir. 1993) ("[P]ersons liable for Rule 11 sanctions may be jointly and severally liable."); In re Austl. & N.Z. Banking Grp. Ltd. Sec. Litig., 712 F. Supp. 2d 255, 271 (S.D.N.Y. 2010) ("Where multiple parties or attorneys are responsible for Rule 11 violations, those parties may be held jointly and severally liable in the court's discretion."). This objection is accordingly overruled.

## C.   OTHER OBJECTIONS

China AI and its counsel raise three further objections. First, they object to the R&R's recommendation that sanctions be imposed in the amount of the reasonable fees and costs incurred by Defendants in defending this action. (See Objs. at 44-46.) Second, they argue (for the first time) that Defendants' Rule 11 motion was untimely. (See Objs. at 46-49.) Third, they object to Judge Figueredo's "implicit finding" that China AI filed the Complaint for an improper purpose in violation of Rule 11(b)(1). (Objs. at 41.)

### 1.   Whether Sanctions in the Amount of Defendants' Reasonable Fees and Costs Are Appropriate

China AI and its counsel argue that Judge Figueredo "overreach[ed]" in recommending that they be sanctioned in the amount of the costs and fees incurred by Defendants in defending this action. (Objs. at 44.) They urge the Court to

impose a lesser sanction, contending that monetary penalties can only be based on a finding of bad faith and that an award of costs and fees is inappropriate where China AI attempted to voluntarily dismiss the Complaint. (See id. at 44-46.)

This objection fails for several reasons. As an initial matter, courts have wide discretion in crafting appropriate Rule 11 sanctions. See Universitas Educ., LLC v. Nova Grp., Inc., 784 F.3d 99, 102-03 (2d Cir. 2015); see also Fed. R. Civ. P. 11(c)(4) (stating that sanctions "may include . . . , if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation"). Further, liability for a Rule 11 violation "requires only a showing of objective unreasonableness," not bad faith, "on the part of the attorney or client signing the papers." ATSI Commc'ns., Inc. v. Shaar Fund, Ltd., 579 F.3d 143, 150 (2d Cir. 2009). There is an exception to this rule when, unlike here, a court on its own motion initiates Rule 11 sanctions — in such a case, sanctions are appropriate only after a finding of subjective bad faith. See id. But where, as here, "the sanctions process is initiated by a motion from an opposing party" and the challenged party or lawyer accordingly has a "21-day 'safe

harbor' to withdraw or amend" the challenged filing, bad faith need not be shown. Id.

Judge Figueredo was thus not required to make a finding of bad faith. The instant sanctions motion was initiated by Defendants, not the Court, and Defendants complied with the 21-day safe harbor rule set forth in Rule 11(c)(2). (See R&R at 14.) The appropriate standard was therefore objective unreasonableness.[9] And, as discussed above, China AI and its counsel failed to act "reasonabl[y] under the circumstances." Fed. R. Civ. P. 11(b); see also, e.g., Merriman v. Sec. Ins. Co. of Hartford, 100 F.3d 1187, 1194-95 (5th Cir. 1996) (upholding award of attorneys' fees under Rule 11 where sanctionable conduct was not necessarily indicative of bad faith).

---

[9] The Court is unpersuaded by China AI's citations to cases such as ED Capital, LLC v. Bloomfield Investment Resources Corp., 316 F.R.D. 77 (S.D.N.Y. 2016) and CV Collection, LLC v. Weworewhat, LLC, Nos. 20 Civ. 8623 and 21 Civ. 1623, 2021 WL 4942625 (S.D.N.Y. Oct. 22, 2021). In ED Capital, the moving party "did not comply with Rule 11's safe harbor provision," 316 F.R.D. at 82, and also moved for attorneys' fees pursuant to the Court's inherent authority to supervise and control its proceedings (i.e., in addition to the relief sought under Rule 11), see id. at 83 ("[T]he Court may only award attorneys' fees under its inherent authority . . . where there is clear evidence that a party commenced an action with the sole aim of harassment or delay or for another improper purpose."). And in CV Collection, the court relied on cases construing not Rule 11 but rather the courts' inherent authority and a third vehicle for sanctions motions, 28 U.S.C. § 1927. See 2021 WL 4942625, at *5; Int'l Techs. Mktg., Inc. v. Verint Sys., Ltd., 991 F.3d 361, 368 (2d Cir. 2021) (setting forth standard under court's inherent power); Shafii v. British Airways, PLC, 83 F.3d 566, 571 (2d Cir. 1996) (setting forth bad faith standard under 28 U.S.C. § 1927).

Further, China AI's argument about its attempt to voluntarily dismiss the Complaint is unpersuasive. Defendants served papers complying with the Rule 11 safe harbor requirement on March 8, 2022. (See R&R at 14; Dkt. No. 37-14; Dkt. No. 37-15.) China AI did not respond (see R&R at 14) and instead decided, in a letter filed March 14, 2022, to oppose Defendants' proposed motion to dismiss (see Dkt. No. 17). China AI did file a proposed notice of voluntary dismissal on September 6, 2022 (see Dkt. No. 22), but this filing was quickly followed by an attempt by China AI's counsel to bring a direct legal malpractice action in state court on behalf of Link Motion against DLA Piper and Schechtman (see Dkt. No. 27 at 1). And after that direct malpractice action was removed to federal court and dismissed with prejudice, China AI in the instant suit tried to withdraw its proposed voluntary dismissal. (See R&R at 11.) This matter therefore is altogether different from a case where a party's voluntary dismissal of a case is actually effective and puts a true end to frivolous litigation.

Finally, the cases cited by China AI on the voluntary dismissal issue do not support its objection in any event. See Wolters Kluwer Fin. Servs., Inc. v. Scivantage, 564 F.3d 110, 115 (2d Cir. 2009) (involving case where finding of bad faith was required, where sanction was predicated on

41

voluntary dismissal itself, and where party was, unlike China AI here, "entitled by law to dismiss the case"); Lawrence v. Richman Grp. of CT LLC, 620 F.3d 153, 159 (2d Cir. 2010) (vacating sanctions award where Rule 11 safe harbor requirement was not satisfied). The Court therefore overrules the objection and holds under the circumstances that sanctions in the amount of the costs and attorneys' fees incurred by Defendants in defending this action constitute the minimum amount "suffic[ing] to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4).

### 2. Whether the Rule 11 Motion Was Timely

China AI and its counsel argue for the first time in their Objections to the R&R that Defendants' Rule 11 motion "was brought too late." (Objs. at 46.) This argument is predicated on the Second Circuit's observation that although Rule 11 "contains no explicit time limit for serving the motion," sanctions motions "have been disallowed as untimely when filed after a point in the litigation when the lawyer sought to be sanctioned lacked an opportunity to correct or withdraw the challenged submission." In re Pennie & Edmonds LLP, 323 F.3d 86, 89 (2d Cir. 2003). China AI appears to contend that it lacked such an opportunity because it could

not unilaterally dismiss this derivative action absent permission from the Court and because Defendants opposed China AI's proposed notice to Link Motion shareholders regarding the proposed voluntary dismissal. (See Objs. at 47.)

The Court overrules this objection, as China AI provides no reason for failing to raise this argument before Judge Figueredo. See Levy v. Young Adult Inst., Inc., 103 F. Supp. 3d 426, 433-34 (S.D.N.Y. 2015) (stating that courts considering whether to entertain argument not raised before magistrate judge analyze factors including "the reason for the litigant's previous failure to raise the new legal argument"); Baliga v. Link Motion Inc., No. 18 Civ. 11642, 2022 WL 3699339, at *4 (S.D.N.Y. Aug. 25, 2022) (stating it would be "inappropriate" to consider arguments where party "fail[ed] to present any reason" for failing to raise arguments before magistrate judge).

### 3. Whether the R&R Erred with Respect to Rule 11(b)(1)

Finally, China AI and its counsel object to the R&R's "implicit finding" (Objs. at 41) that China AI filed the Complaint for an improper purpose in violation of Rule 11(b)(1). The Court agrees that the R&R made a finding that China AI and its counsel violated Rule 11(b)(1). Indeed, Judge

43

Figueredo wrote that upon viewing "all of the deficiencies in [China AI's] claim collectively, the only plausible conclusion to be drawn from pursuit of this litigation is that it was done to harass Defendants." (R&R at 31.) There is no way to read that statement as anything other than a finding that Rule 11(b)(1) was violated.

The Court upholds the R&R's conclusion. China AI objects on the ground that the R&R "ignores that [China AI] had filed a notice of voluntary dismissal." (Objs. at 41.) But, as discussed above, China AI's reliance on its attempt to voluntarily dismiss the Complaint is suspect in light of its counsel's subsequent filing of a direct malpractice action in state court and its later attempt to withdraw the proposed dismissal. China AI further objects (see id.) to Judge Figueredo's purported reliance on China AI's May 2023 request — made after the instant sanctions motion was fully briefed — for a stay of this action pending potential reconsideration of the Court's dismissal of the direct malpractice action, but it is clear that the facts surrounding the requested stay merely "reinforced" a conclusion that the R&R already reached: that China AI and its counsel violated Rule 11(b)(1). (R&R at 31.)

China AI further objects that the R&R's Rule 11(b)(1) analysis turned wholly — and thus improperly — on its previous

44

analysis of the Rule 11(b)(3) and 11(b)(2) violations. (See Objs. at 42-43.) In <u>Simon DeBartolo Group, L.P. v. Richard E. Jacobs Group, Inc.</u>, the Second Circuit held that it was an abuse of discretion to sanction a client and its lawyers "for violating Rule 11(b)(1) on the ground that [the] lawyers had violated Rule 11(b)(2)." 186 F.3d 157, 176-77 (2d Cir. 1999). The court observed that permitting a Rule 11(b)(1) violation to turn "entirely" on a Rule 11(b)(2) violation would "render a client responsible for the frivolous [legal] claims asserted by its attorneys, contrary to [the] explicit prohibition" in Rule 11(c)(5)(A). <u>Id.</u> at 177.

The Court is not persuaded that <u>Simon DeBartolo Group</u> applies here. The Second Circuit's concern about holding clients who would otherwise not be sanctioned responsible for Rule 11(b)(2) violations is not implicated by cases such as this one, where the client has independently been found to have violated Rule 11(b)(3) by making false factual contentions. And in any case, Judge Figueredo conducted an independent Rule 11(b)(1) analysis. The R&R states,

> Defendants alerted [China AI] that they intended to seek sanctions if [China AI] did not voluntarily withdraw its claim, and Defendants raised all of these [legal and factual] deficiencies in their letter. Even if one could conclude that [China AI] and its counsel had a good-faith basis for initially filing suit, they certainly had no good-faith basis for continuing to pursue this claim after Defendants pointed out the numerous deficiencies in the claim. Yet, [China AI] ignored

45

Defendants' letter and instead persisted with this suit for six months before filing a voluntary notice of dismissal.

(R&R at 31 (citation omitted).) This final objection is therefore, like the others, overruled.[10]

#### V. ORDER

For the foregoing reasons, it is hereby

**ORDERED** that the objections (see Dkt. No. 63) raised by plaintiff China AI Capital Ltd. ("China AI") and its counsel to the Report and Recommendation (the "R&R," see Dkt. No. 58) issued by Magistrate Judge Valerie Figueredo in this action, upon the Court's de novo review and substantially for the reasons stated by Judge Figueredo, are hereby **OVERRULED**; and it is further

**ORDERED** that the R&R (see Dkt. No. 58) is hereby **ACCEPTED** and **ADOPTED** in its entirety; and it is further

**ORDERED** that the sanctions motion (see Dkt. No. 35) brought by defendants DLA Piper LLP (US) and Caryn G. Schechtman (collectively "Defendants") pursuant to Federal

---

[10] The Rule 11(b)(1) violation provides yet another reason to impose monetary sanctions. See Fed. R. Civ. P. 11(b) advisory committee's note to 1993 amendment (listing potential factors to be used in crafting appropriate sanction, including "whether the improper conduct was willful," "whether it was part of a pattern of activity," "whether it infected the entire pleading," "whether it was intended to injure," and "what effect it had on the litigation process in time or expense").

Rule of Civil Procedure 11 against China AI and its counsel is hereby **GRANTED**; and it is further

**ORDERED** that China AI and its counsel will be jointly and severally sanctioned in the amount of the reasonable costs and attorneys' fees incurred by Defendants in defending this action; and it is further

**ORDERED** that the parties shall confer and shall jointly submit to the Court a proposed briefing schedule with respect to the costs and attorneys' fees incurred by Defendants in defending this action, and the reasonableness thereof, within fourteen (14) days of the date of this Order; and it is further

**ORDERED** that the complaint filed in this action by plaintiff China AI and its counsel (see Dkt. No. 1) is hereby **DISMISSED** with prejudice.

**SO ORDERED.**

Dated:    6 March 2024
          New York, New York

_____
Victor Marrero
U.S.D.J.

47

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CHINA AI CAPITAL LIMITED, derivatively on behalf of LINK MOTION INC., <br><br>                              Plaintiff, <br><br>            - against - <br><br> DLA PIPER LLP (US) and CARYN G. SCHECHTMAN, <br><br>                         Defendants, and <br><br> LINK MOTION INC., <br><br>                    Nominal Defendant. | **21 Civ. 10911 (VM)** <br><br> **ORDER** |

**VICTOR MARRERO, United States District Judge.**

The Court is in receipt of the parties' proposed briefing schedule on the costs and fees incurred by Defendants DLA Piper LLP (US) and Caryn G. Schechtman, and the reasonableness thereof, contemplated by the Court's Decision and Order dated March 6, 2024. (See Dkt. Nos. 65-66.) The Court hereby **STAYS** any motion practice on this matter until the parties have endeavored to resolve the dispute through settlement under Magistrate Judge Figueredo, to whom the matter has been referred.

**SO ORDERED.**

Dated:    20 March 2024
          New York, New York

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/20/24

Victor Marrero
U.S.D.J.

1

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 7/19/24

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

CHINA AI CAPITAL LTD., derivatively on behalf of LINK MOTION INC.

               Plaintiff,

      - against -

DLA PIPER LLP (US), and
CARYN G. SCHECHTMAN

               Defendants.

**21 Civ. 10911 (VM)**

**ORDER**

---

**VICTOR MARRERO, United States District Judge.**

Plaintiff requests that the Court "lift the stay of motion practice entered on March 20, 2024." (Dkt. No. 75.) There is no stay to lift. The Court's March 20 order stated that certain motion practice regarding sanctions was stayed "until the parties have endeavored to resolve the[ir] dispute through settlement under Magistrate Judge Figueredo, to whom the matter has been referred." (Dkt. No. 67.) As Plaintiff acknowledges, the parties appeared for a settlement conference before Judge Figueredo on July 17, 2024, and a settlement was not reached. The stay therefore expired at that time. Indeed, on July 18, 2024, Judge Figueredo set a briefing schedule on the amount of the sanctions award. (See Dkt. No. 74.)

Further, contrary to Plaintiff's contention, the Court's March 20 order did not stay *all* motion practice in this case.

1

The order merely stayed motion practice on the amount of costs and attorneys' fees to be paid as sanctions. (<u>See</u> Dkt. No. 67 (stating that the Court had received the parties' proposed briefing schedule "on the costs and fees incurred by Defendants . . . and the reasonableness thereof" and that the Court was staying "any motion practice *on this matter*," i.e., on the amount of costs and attorneys' fees to be paid as sanctions, "until the parties have endeavored to resolve the[ir] dispute" (emphasis added)).)

Any contemplated motion for reconsideration of the Court's March 6 Decision and Order would thus appear to be untimely.

**SO ORDERED.**

Dated:    19 July 2024
          New York, New York

Victor Marrero
U.S.D.J.

2

2UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
CHINA AI CAPITAL LIMITED,

                             Plaintiff,

            -against-

DLA PIPER LLP (US), and CARYN SCHECHTMAN,

                            Defendants,

                  -and-

LINK MOTION INC. f/k/a NQ MOBILE INC.,

                    Nominal Defendant.
-------------------------------------------------------------------X

21-CV-10911 (VM) (VF)

**REPORT AND
RECOMMENDATION**

**VALERIE FIGUEREDO, United States Magistrate Judge.**

**TO: THE HONORABLE VICTOR MARRERO, United States District Judge.**

On July 24, 2023, I issued a Report and Recommendation, granting a motion for

sanctions under Federal Rule of Civil Procedure 11, filed by Defendants DLA Piper LLP (US)

("DLA Piper") and Caryn Schechtman against Plaintiff China AI Capital Limited ("China AI")

and Plaintiff's counsel, Michael Maloney and Rosanne Felicello of Felicello Law P.C. ECF No.

58 (the "R&R"). The Report and Recommendation directed that Plaintiff and its counsel be

ordered to pay the reasonable attorney's fees and costs incurred by Defendants in defending this

action. Id. at 1, 32. On March 6, 2024, the Honorable Victor Marrero adopted the Report and

Recommendation. ECF No. 65. Presently before the Court is Defendants' application for

reasonable attorney's fees and costs pursuant to Rule 11. ECF No. 78. For the following reasons,

I recommend that Defendants' application be **GRANTED** in the amount of $634,525.39 in

attorney's fees and $2,331.50 in costs.

## BACKGROUND[1]

On September 3, 2024, Defendants filed their memorandum of law in support of their application for attorney's fees and costs, seeking an award of $1,174,716.50 in attorney's fees and $2,531.50 in costs. ECF No. 78 at 2.[2] In support of their application, Defendants submitted a sworn declaration from Nancy Hart, which includes contemporaneous billing records from the attorneys that worked on this matter. ECF Nos. 79-80. On October 8, 2024, Plaintiff filed its opposition to Defendants' application. ECF No. 85. On October 22, 2024, Defendants filed a reply brief in further support of their application. ECF No. 89. On October 22, 2024, Defendants filed a supplemental declaration from Ms. Hart. ECF Nos. 90-91. Ms. Hart's initial declaration included attorney's fees and costs incurred by Defendants through August 2024, and her supplemental declaration included additional attorney's fees and costs incurred by Defendants between September 1, 2024, and October 18, 2024. ECF No. 91 at ¶ 3. With Ms. Hart's supplemental declaration, Defendants sought an additional $50,399 in attorney's fees.[3] Id. at ¶ 8. In total, Defendants seek an award of $1,225,115.50 in attorney's fees and $2,531.50 in costs.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 11, a "court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation," and

---

[1] The Court assumes the parties' familiarity with the underlying facts of this case, which are set forth in detail in the Report and Recommendation dated July 28, 2023. ECF No. 58.

[2] Page numbers referenced herein for documents filed on the electronic docket ("ECF") are to the original pagination in those documents.

[3] In her supplemental declaration, Ms. Hart indicates that Defendants will incur an additional $10,050 in attorney's fees "preparing for and attending a hearing on Defendants' fee application." ECF No. 91 at ¶ 9. Because no hearing or oral argument was held on Defendants' application, I have not considered the additional $10,050 requested by Defendants in this Report and Recommendation.

2

the sanction may include "an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation." Fed. R. Civ. P. 11(c)(1), (4); see also Goldman v. Barrett, 825 F. App'x 35, 39 (2d Cir. 2020) (same). To calculate an award of attorney's fees, courts in this Circuit determine the "reasonable hourly rate," defined as "the rate a paying client would be willing to pay," and multiply that rate by the number of hours reasonably expended. See Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d 182, 190 (2d Cir. 2008); see also Conway v. Conway, No. 17-CV-8245 (RJS), 2019 WL 1331624, at *11 (S.D.N.Y. Mar. 25, 2019) (applying this standard to a sanctions award under Rule 11). That calculation, known as the "lodestar," produces a "presumptively reasonable fee," which the court may adjust to "account for factors not already included in the hourly rate or number of hours expended." Conway, 2019 WL 1331624, at *11; Google LLC v. Starovikov, No. 21-CV-10260 (DLC), 2023 WL 2344935, at *2 (S.D.N.Y. Mar. 3, 2023) (quoting Millea v. Metro-N. R. Co., 658 F.3d 154, 166 (2d Cir. 2011)).

A reasonable hourly rate is one "in line with prevailing rates in the community for similar services by lawyers of reasonably comparable skill, expertise and reputation." McDonald ex rel. Prendergast v. Pension Plan of the HYSA-ILA Pension Tr. Fund, 450 F.3d 91, 96 (2d Cir. 2006) (citation omitted). A "court may determine the reasonable hourly rate by relying both on its own knowledge of comparable rates charged by lawyers in the district" and "on evidence proffered by the parties." Adorno v. Port Auth. of N.Y. and N.J., 685 F. Supp. 2d 507, 511 (S.D.N.Y. 2010) (internal quotation marks omitted), reconsideration granted in part, 2010 WL 727480 (S.D.N.Y. Mar. 2, 2010). Courts consider factors such as an "attorneys' experience, reputation, and ability" when determining a reasonable hourly rate. Wilmington Tr., Nat'l Ass'n v. Winta Asset Mgmt. LLC, No. 20-CV-5309 (JGK) (VF), 2023 WL 9603893, at *8 (S.D.N.Y. Dec. 21,

3

2023) (citing Arbor Hill, 522 F.3d at 186 n.3), adopted by, 2024 WL 1700032 (S.D.N.Y. Apr. 18, 2024). Defendants have the "burden of establishing that the hourly rates" sought by counsel are reasonable. Walpert v. Jaffrey, No. 13-CV-5006 (PGG) (HBP), 2016 WL 11271873, at *11 (S.D.N.Y. Aug. 17, 2016).

Where an application for fees includes "[h]ours that are excessive, redundant, or otherwise unnecessary," courts have the "discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application." Kirsch v. Fleet St., Ltd., 148 F.3d 149, 173 (2d Cir. 1998); see also Beastie Boys v. Monster Energy Co., 112 F. Supp. 3d 31, 57 (S.D.N.Y. 2015) (reducing hours by 30% to reflect "considerations of whether work performed was necessary, leanly staffed, or properly billed"); Kahlil v. Original Old Homestead Rest., Inc., 657 F. Supp. 2d 470, 476 (S.D.N.Y. 2009) (reducing hours by 15% in response to opposing party's argument that claimed hours were excessive); Gym Door Repairs, Inc. v. Total Gym Repairs, No. 15-CV-4244 (JGK) (OTW), 2023 WL 6519626, at *13 (S.D.N.Y. Mar. 31, 2023) (reducing hours by 35% for excessive billing), adopted sub nom. 2023 WL 6390156 (S.D.N.Y. Sept. 29, 2023).

Likewise, a court may apply a percentage reduction to the hours requested where the billing records include instances of block billing, or time entries for work that should have been delegated to more junior attorneys or paralegal staff. See, e.g., Gym Door Repairs, Inc., 2023 WL 6519626 at *15-16 (reducing hours an additional 15% for block billing and 5% for attorneys including clerical or administrative tasks in their block-billed entries); CIT Bank, N.A. v. Zisman, No. 17-CV-2126 (CBA) (RER), 2023 WL 4060083, at *5 (E.D.N.Y. Mar. 23, 2023) (including a 15% reduction in hours where attorneys engaged in block billing), adopted by, 2024 WL 48708 (E.D.N.Y. Jan. 4, 2024); King Fook Jewellry Grp. Ltd. v. Jacob & Co. Watches, Inc.,

4

No. 14-CV-742 (ER) (JLC), 2019 WL 2535928, at *8 (S.D.N.Y. June 20, 2019), adopted sub

nom. 2019 WL 4879212 (S.D.N.Y. Oct. 3, 2019) (reducing hours by 25% where work "should

have been done by lower-level associates, paralegals, or support staff"). At bottom, however,

"the calculation of attorneys' fees 'should not result in a second major litigation,' because '[t]he

essential goal in shifting fees . . . is to do rough justice, not to achieve auditing perfection.'"

Google LLC, 2023 WL 2344935, at *2 (quoting Fox v. Vice, 563 U.S. 826, 838 (2011)

(alterations in original). "[A] court 'may take into account [its] overall sense of a suit' in

imposing a fee award, 'and may use estimates in calculating and allocating an attorney's time.'"

Id.

Courts should be mindful that "[t]he purpose of a Rule 11 award 'is not compensation of

the victimized party but rather the deterrence of baseless filings and the curbing of abuses.'" On

Time Aviation, Inc. v. Bombardier Capital, Inc., 354 F. App'x 448, 452 (2d Cir. 2009) (quoting

Caisse Nationale de Credit Agricole–CNCA, N.Y. Branch v. Valcorp, Inc., 28 F.3d 259, 266 (2d

Cir. 1994)) (summary order); see also Arbor Hill Concerned Citizens Neighborhood Ass'n v.

Cnty. of Albany, 369 F.3d 91, 98 (2d Cir. 2004) (observing that Rule 11 "is not a fee-shifting

mechanism and does not create an entitlement to attorney's fees") (internal quotation marks and

citation omitted). Rule 11 "[s]anctions 'must be limited to what suffices to deter repetition of the

conduct or comparable conduct by others similarly situated.'" Biocad JSC v. F. Hoffmann-La

Roche Ltd., No. 16-CV-4226 (RJS), 2022 WL 268102, at *3 (S.D.N.Y. Jan. 28, 2022) (quoting

Fed. R. Civ. P. 11(c)(4)). "[B]ecause the purpose of imposing Rule 11 sanctions is deterrence, a

court should impose the least severe sanctions necessary to achieve the goal." Schottenstein v.

Schottenstein, No. 04-CV-5851 (SAS), 2005 WL 912017, at *2 (S.D.N.Y. Apr.18, 2005). When

a court determines an award of attorney's fees is appropriate, "a lodestar amount need not be

routinely awarded" because a court has "discretion to award only that portion of a defendant's attorney fee thought reasonable to serve the sanctioning purpose of the Rule." Geiger v. Town of Greece, No. 07-CV-6066 (CJS), 2008 WL 728471, at *5 (W.D.N.Y. Mar. 18, 2008) (quoting Eastway Constr. Corp. v. City of N.Y., 821 F.2d 121, 122-23 (2d Cir. 1987)).

"As with attorneys' fees, [a] requesting party must substantiate the request for costs." Guo v. Tommy's Sushi, Inc., No. 14-CV-3964 (PAE), 2016 WL 452319, at *3 (S.D.N.Y. Feb. 5, 2016); see also Euceda v. Preesha Operating Corp., No. 14-CV-3143 (ADS) (SIL), 2017 WL 3084490, at *4 (E.D.N.Y. June 30, 2017) ("In the absence of adequate substantiation, a party is not entitled to recover costs."), adopted by, 2017 WL 3084408 (E.D.N.Y. July 18, 2017). "An award of costs 'normally include[s] those reasonable out-of-pocket expenses incurred by the attorney and which are normally charged to fee-paying clients.'" Fisher v. SD Prot. Inc., 948 F.3d 593, 600 (2d Cir. 2020) (quoting Reichman Bonsignore, Brignati & Mazzotta P.C., 818 F.2d 278, 283 (2d Cir. 1987)) (alteration in original).

**DISCUSSION**

The Court has carefully reviewed Defendants' application, together with the supporting documentation, which includes contemporaneous time records for all attorneys for whom a fee award is sought. ECF Nos. 80-4, 91-1, 94-1. As set forth below, an award of $634,525.39 in attorney's fees and $2,331.50 in costs is reasonable and will serve as an appropriate deterrence for the conduct engaged in by Plaintiff and its counsel here, which the Court already determined violated Federal Rule of Civil Procedure 11(b)(2) and (b)(3). ECF No. 58 at 16, 22.

A.  Hourly Rates

Four attorneys from Gibson, Dunn & Crutcher LLP ("Gibson Dunn") performed work in connection with defending this matter: Nancy Hart, Peter Wade, Megan Meagher, and Alisha

Siqueira.[4] ECF No. 80 at ¶ 10. Plaintiff objects to the requested hourly rates, arguing that the rates are "far more than what courts have found to be reasonable," particularly in light of the procedural history of the case, because no answer or motion to dismiss was filed, no discovery occurred, and the case was voluntarily dismissed. ECF No. 85 at 23-24.

Beginning with Ms. Hart, she is a partner at Gibson Dunn and one of the supervising attorneys on this matter. ECF No. 80 at ¶¶ 3, 6. Ms. Hart, who has been practicing law for over 20 years, is the Co-Chair of Gibson Dunn's Law Firm Defense practice group, which specializes in representing law firms and attorneys in a wide range of matters, including actions alleging professional malpractice. Id. at ¶ 3. She graduated from Boston College Law School in 2003 and is admitted to practice in New York. Id. at ¶ 11. Her hourly rate was $1,245 in 2021, $1,350 in 2022, $1,535 in 2023, and $1,675 in 2024. Id. She billed 210.6 hours on this matter (see id.; see also ECF No. 91 at ¶ 6), resulting in an average hourly rate of $1,408.57.[5]

---

[4] The lead attorney on this case for Defendants was Mr. Kevin Rosen, a senior partner at Gibson Dunn who is co-head of Gibson Dunn's Law Firm Defense practice group. ECF No. 80 at ¶ 6. Although Mr. Rosen performed over 140 hours of work on the matter, Defendants do not seek any fees for his work. Id. Defendants also do not seek reimbursement for the time expended by "certain other attorneys, paralegals and support staff." Id. at n.4.

[5] Because Ms. Hart's hourly rate changed yearly during the relevant time, the Court has used her average hourly rate in the lodestar calculation. See Hines v. City of Albany, No. 06-CV-1517 (GTS) (RFT), 2014 WL 12613275, at *5 n.6 (N.D.N.Y. June 5, 2014) (calculating "the requested fee as the weighted average hourly rate for the hours worked during the entire period" where "Plaintiffs request[ed] varying fees . . . depending on the date of service"). The average hourly rate was calculated by taking the total amount of fees sought for Ms. Hart's work ($296,644.50) and dividing that number by the total hours Ms. Hart worked on the case (210.6). See, e.g., PMJ Cap. Corp. v. Lady Antoinette, No. 16-CV-06242 (AJN) (SDA), 2020 WL 4740534, at *8 n.5 (S.D.N.Y. Feb. 19, 2020), adopted sub nom. 2020 WL 4735178 (S.D.N.Y. Aug. 14, 2020) (using an "average hourly rate" for attorney whose "billing rates changed from year to year," calculated by using total number of hours billed and total dollar amount billed).

Although Ms. Hart's average hourly rate of $1,408.57 is substantial, "[i]n this district, partner billing rates in excess of $1,000 are not uncommon in the context of complex commercial litigation." Adstra, LLC v. Kinesso, LLC, No. 24-CV-2639 (LJL), 2025 WL 1070034, at *7 (S.D.N.Y. Apr. 9, 2025) (internal quotation marks and citations omitted). Defendants cite to cases in this District where courts have awarded hourly rates, for work performed by a partner at a large New York City law firm, similar to the $1,408.57 average hourly rate sought by Ms. Hart here.[6] ECF No. 78 at 18-19; see also ATX Debt Fund 1, LLC v. Paul, No. 19-CV-8540 (JPO), 2024 WL 2093387, at *5 (S.D.N.Y. May 9, 2024) (awarding hourly rates of $1,381.50 to $1,777.50 for Gibson Dunn partner and $697.50 to $1,138.50 for Gibson Dunn associate after applying a 10% reduction to the requested hourly rates of $1,535 to $1,975 for partners and $775 to $1,265 for associates); An v. Despins, No. 22-CV-10062 (VEC) (JW), 2024 WL 1157281, at *4-5 (S.D.N.Y. Mar. 18, 2024) (concluding that $1,592 to $1,760 was a reasonable hourly rate for senior partner at Davis Polk & Wardwell); Syntel Sterling Best Shores Mauritius Ltd. v. TriZetto Group, Inc., No. 15-CV-211 (LGS), 2024 WL 1116090, at *6 (S.D.N.Y. Mar. 13, 2024) (noting that hourly rate of $1,765 for lead attorneys is reasonable "given the rates typically charged for similar services by lawyers of comparable skill, expertise and reputation in this market"); Laba v. JBO Worldwide Supply Pty Ltd, No. 20-CV-3443 (AKH) (KHP), 2023 WL 4985290, at *14 (S.D.N.Y. July 19, 2023) (approving partner rate of $1,250 an hour), adopted

---

[6] As further support for the reasonableness of the hourly rates sought here, in a malpractice action brought by Link Motion against DLA Piper in New York Supreme Court—arising from the same allegations raised in this action—the state court awarded DLA Piper its reasonable attorney's fees incurred in connection with that suit, as a sanction against Link Motion and its attorneys (the same attorneys as in this action). ECF No. 97. On April 21, 2025, that court approved Ms. Hart's 2024 hourly rate of $1,657 and 2025 hourly rate of $1,895. ECF No. 97-3 at 99-100, 148-149. The court also approved the 2024 hourly rates of $1,435 and 2025 hourly rate of $1,630 for Mr. Wade, and the 2024 hourly rate of $1,260 and 2025 hourly rate of $1,555 for Ms. Meagher. Id. at 96-97.

sub nom. 2024 WL 550252 (S.D.N.Y. Feb. 12, 2024), aff'd, 2025 WL 323762 (2d Cir. Jan. 29, 2025).

Additionally, "an attorney's customary billing rate for fee-paying clients is ordinarily the best evidence of a reasonable hourly rate." Doe 1 v. E. Side Club, LLC, No. 18-CV-11324 (KPF), 2023 WL 4174141, at *6 (S.D.N.Y. June 23, 2023) (internal quotation marks omitted); see also Blum v. Stenson, 465 U.S. 886, 896 n.11 (1984) (noting that "the rates charged in private representations may afford relevant comparisons" when assessing the reasonableness of the attorney's claimed hourly rate). Gibson Dunn seeks the customary hourly rate for the relevant timekeepers that is charged to paying clients and was paid by DLP Piper, a sophisticated client, in connection with this matter. ECF No. 78 at 16-17; ECF No. 80 at ¶ 15.

The relevant factors also support awarding Ms. Hart her average hourly rate of $1,408.57. "In determining the reasonableness of an hourly rate, district courts should consider factors such as the time and labor required, the level of skill required to perform the legal service properly, the attorney's customary hourly rate, the amount involved in the case, and the results obtained." ATX Debt Fund 1 LLC, 2024 WL 2093387, at *5 (considering these factors in assessing reasonableness of hourly rate). Here, Gibson Dunn prevailed in obtaining a ruling that Plaintiff and its counsel violated Rule 11, far from an easy task given the "high bar" that must be satisfied before a court will impose sanctions under Rule 11. E. Gluck Corp. v. Rothenhaus, 252 F.R.D. 175, 179 (S.D.N.Y. 2008); see also Wheeler v. Twenty-First Century Fox, 322 F. Supp. 3d 445, 458 (S.D.N.Y. 2018) (indicating that Rule 11 "[s]anctions should be imposed with caution" and "should be reserved for extreme cases") (internal citations omitted).

Moreover, DLA Piper and one of its senior partners faced a malpractice claim that sought over $580 million in alleged damages and threatened significant reputational harm to

Defendants, requiring Defendants to hire highly skilled attorneys with experience in law firm defense, like the attorneys at Gibson Dunn. ECF No. 78 at 19; ECF No. 1 at ¶¶ 1-11. Plaintiff's public allegations of professional negligence were also premised on allegations involving another suit in this Court, Baliga v. Link Motion, No. 18-CV-11642 (VM) (VF). And Baliga, a case involving allegations of securities fraud, also raised complex issues concerning a foreign transaction, the appointment of a Receiver, and the application of foreign law. ECF No. 1 at ¶¶ 2-4; ECF No. 78 at 19-20. To prevail on the Rule 11 motion, Defendants' counsel had to understand the allegations and claims in Baliga and their relationship with the allegations raised by Plaintiff here. Simply stated, this was not a run-of-the mill malpractice case. And although a "reasonable, paying client . . . wishes to pay the least amount necessary to litigate the case effectively," Reiter v. Metropolitan Transp. Auth., No. 01-CV-2762 (GWG), 2007 WL 2775144, at *2 (S.D.N.Y. Sept. 25, 2007), the assistance of attorneys capable of commanding high hourly rates in this District because of their skill and expertise was necessary to litigate this case effectively.

Plaintiff suggests that lower hourly rates are warranted because this case did not proceed beyond the pleading stage. ECF No. 85 at 22. But this argument ignores the complexity of the allegations and the Rule 11 motion. To succeed on the Rule 11 motion, Gibson Dunn had to analyze substantial materials concerning a complex foreign transaction and related arbitration award, as well as voluminous filings in the underlying securities litigation in Baliga. See, e.g., ECF No. 80 at ¶¶ 4-5, 7. The magnitude of the damages sought and the complexity of the allegations here and in Baliga further justify the hourly rates requested. U.S. Bank Nat'l Ass'n v. Dexia Real Est. Cap. Markets, No. 12-CV-9412 (PAE), 2016 WL 6996176, at *8 (S.D.N.Y. Nov. 30, 2016) (approving hourly rate of $1,055 in 2016 for Morgan Lewis partner in "complex

commercial litigation"); <u>Phyto Tech Corp. v. Givaudan SA</u>, No. 18-CV-6172 (JGK), 2023 WL

1437714, at *7-8 (S.D.N.Y. Jan. 31, 2023) (deeming hourly rate of $1,079.97 reasonable for

partner in case involving "an array of complex commercial and intellectual property disputes");

<u>Ballinasmalla Holdings Ltd. v. FCStone Merch. Servs., LLC</u>, No. 18-CV-12254 (PKC), 2020

WL 814711, at *2 (S.D.N.Y. Feb. 19, 2020) (concluding in 2020 that hourly rate of $1,017 for

partner in "relatively complex proceedings" was reasonable). In short, Ms. Hart's average hourly

rate of $1,408.57 is reasonable.

Turning to the associates, Mr. Wade, who received his Juris Doctorate from Columbia

Law School in 2012, started on the matter as a senior associate and is now Of Counsel at Gibson

Dunn. ECF No. 80 at ¶ 12. Mr. Wade is a member of Gibson Dunn's Law Firm Defense and

Securities Litigation practice groups. <u>Id.</u> Mr. Wade's hourly rate was $1,115 in 2022, $1,315 in

2023, and $1,435 in 2024, yielding an average hourly rate of $1,202.43. <u>Id.</u> He did not work on

the matter in 2021. <u>Id.</u> He billed 332.8 hours to this matter for which Defendants seek

reimbursement. <u>Id.</u>; ECF No. 91 at ¶ 6.

Ms. Meagher, who received her Juris Doctorate from Georgetown University Law Center

in 2018, was a mid-level to senior associate at Gibson Dunn during the time she worked on this

case. ECF No. 80 at ¶ 13. Ms. Meagher is a member of Gibson Dunn's Litigation, Law Firm

Defense, and White Collar Defense and Investigations practice groups. <u>Id.</u> Ms. Meagher's hourly

rate was $1,020 in 2022, $1,155 in 2023, and $1,260 in 2024, yielding an average hourly rate of

$1,125.42. <u>Id.</u> She did not work on the matter in 2021. Defendants seek reimbursement for 362.3

hours of work by Ms. Meagher. <u>Id.</u>; ECF No. 91 at ¶ 6. Ms. Meagher billed the most hours to the

matter in 2022 (157.8 hours) when she was a fourth-year associate, followed by 127 hours in

2023, and 77.5 hours in 2024, when she was a sixth-year associate.

11

For a senior or mid-level associate, an hourly rate above $1,000, as requested for Mr. Ward and Ms. Meagher, exceeds the range of hourly rates typically approved by courts in this District. See, e.g., Flatiron Acquisition Vehicle, LLC v. CSE Mortgage LLC, No. 17-CV-8987 (GHW), 2022 WL 413229, at *14 (S.D.N.Y. Feb. 9, 2022) (finding that an hourly range of $405 to $660 for associates was "within the spectrum for hourly rates approved in this district for attorneys at large New York City law firms involved in complex commercial litigation"); An, 2024 WL 1157281, at *2-4 (finding requested hourly rates of $796 to $895 reasonable for Davis Polk associates in awarding fees incurred in moving to dismiss and moving for sanctions); Wells Fargo Tr. Co. v. Fast Colombia S.A.S., No. 23-CV-603 (PGG) (RWL), 2023 WL 8591953, at *8 (S.D.N.Y. Oct. 16, 2023), adopted by, 2023 WL 8433128 (S.D.N.Y. Dec. 5, 2023) (awarding $800 hourly rate to senior associate); see also ATX Debt Fund 1, LLC, 2024 WL 2093387, at *5 (applying 10% reduction in hourly rates of $775 to $1,265 per hour for associates at large New York law firm where case went through summary judgment). Instead, an hourly rate of $875 for Mr. Ward is reasonable. See, e.g., Adstra, LLC, 2025 WL 1070034, at *7 n.3 (concluding that $883 hourly rate for senior associate later promoted to counsel was reasonable). As to Ms. Meagher, the bulk of her hours on this case were as a fourth and fifth-year associate. But she nevertheless performed a substantial amount of work on the Rule 11 motion, as a senior associate. An hourly rate of $700 is thus reasonable. See Sagax Dev. Corp. v. ITrust S.A., No. 19-CV-3386 (RA) (JW), 2022 WL 2663488, at *2 (S.D.N.Y. July 11, 2022) (approving hourly rate of $675 for associate with five years of experience in case with complex issues of foreign law). Those rates, which are at the high end of what courts have deemed reasonable, appropriately account for the complexities of the instant matter, the hourly rate a sophisticated client paid for the work performed, and the success achieved by Gibson Dunn for Defendants.

Lastly, Defendants also seek fees for a mid-level associate, Alisha Siqueira. Ms. Siqueira, who obtained her Juris Doctorate from Harvard Law School in 2018 and is admitted to practice in New York, had approximately four years of legal experience when she worked on this matter in 2022. ECF No. 80 at ¶ 14. Ms. Siqueira assisted with legal research, fact investigation, and the development of Defendants' defenses, as well as drafted portions of the Rule 11 submission and motion to dismiss. Id. at ¶ 10. Ms. Siqueira's hourly rate was $1,020 in 2022, and Defendants seek reimbursement for 118.2 hours of work. Id. at ¶ 14. She did not work on this matter in 2023 or 2024, and Defendants are not seeking reimbursement for any of her work in 2021. Id.

Defendants do not cite to any case where a court in this District adopted an hourly rate above $1,000 for a mid-level associate with experience akin to Ms. Siqueira's experience. Moreover, courts in this District approve hourly rates significantly less than $1,000 for mid-level associates. See, e.g., Gulino v. Bd. of Educ. of City Sch. Dist. of City of N.Y., No. 96-CV-8414 (KMW), 2024 WL 3561159, at *4 (S.D.N.Y. July 18, 2024), adopted by, 2024 WL 3553305 (S.D.N.Y. July 26, 2024) (concluding that $350 per hour for mid-level associate was reasonable in Title VII action); Match Grp., LLC v. Beazley Underwriting Ltd., No. 22-CV-4629 (LGS) (SLC), 2023 WL 9603886, at *7 (S.D.N.Y. Dec. 21, 2023), adopted by, 2024 WL 863468 (S.D.N.Y. Feb. 29, 2024) (finding hourly rates of $450 and $500 appropriate for associates with three to five years of experience); Wentworth Grp. Inc. v. Evanston Ins. Co., No. 20-CV-6711 (GBD) (JLC), 2022 WL 336456, at *7 (S.D.N.Y. Feb. 4, 2022), adopted by, 2022 WL 909794 (S.D.N.Y. Mar. 29, 2022) (recommending $450 hourly rate for third-year associate at large New York firm).

In short, the requested hourly rate of $1,020 for Ms. Siqueira exceeds the rates typically awarded to mid-level associates in this District. Nevertheless, the seriousness of the case, the

13

hourly rate paid by the client, and the success obtained by Defendants' counsel all weigh in favor of an hourly rate at the higher end of the range typically awarded in this District for work performed by a mid-level associate. As such, Defendants are entitled to an hourly rate of $550 for the work performed by Ms. Siqueira. See Cates v. Trs. of Columbia Univ. in City of New York, No. 16-CV-06524 (GBD), 2021 WL 4847890, at *3 (S.D.N.Y. Oct. 18, 2021) (approving hourly rate of $490 for attorneys with two to four years of experience in complex class-action litigation); United States ex rel. Yasti v. Nagan Constr., No. 17-CV-7163 (AT), 2021 WL 1063437, at *4 (S.D.N.Y. Mar. 18, 2021) (noting that courts in this District have found $541 hourly rate reasonable for a fourth-year associate in a commercial-dispute case).

B.  Hours Expended

Defendants are seeking fees for 1,023.9 hours of work performed by their attorneys at Gibson Dunn. ECF No. 80 at ¶ 16; ECF No. 91 at ¶ 6. Defendants submitted contemporaneous billing records reflecting the hours worked by attorneys in relation to defending this action.[7] ECF Nos. 80-4, 91-1. In seeking a reduction in the hours sought, Plaintiff argues that Gibson Dunn billed excess time for menial tasks, billed for time not relevant to dismissal of the complaint, and the total amount of hours billed is unreasonable in light of the case's procedural posture and tasks performed. ECF No. 85 at 19-23.

Although the hours actually expended are not dispositive, Foster v. Kings Park Cent. Sch. Dist., 174 F.R.D. 19, 27 (E.D.N.Y. 1997), the Second Circuit has cautioned that "attorney's fees are to be awarded with an eye to moderation, seeking to avoid either the reality or the appearance of awarding windfall fees." New York State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d

---

[7] As discussed, these hours do not include 140 hours expended by Mr. Rosen on the matter. ECF No. 80 at ¶ 6. Defendants also excluded time expended on this case by other attorneys, paralegals, and support staff. Id. at ¶ 6 n.4.

1136, 1139 (2d Cir. 1983) (internal quotation marks and citations omitted). The Court is not aware of any case—and Defendants have not cited any—where a court, in approving an award of fees, compensated the moving party for over 1,000 hours of work in a case that did not proceed beyond the pleading stage. Instead, courts tend to issue fee awards based on hours commensurate to the hours sought here in cases where the parties have proceeded to summary judgment or trial. See, e.g., Reiter v. Metro. Transp. Auth. of State of N.Y., No. 01-CV-2762 (GWG), 2007 WL 2775144, at *16 (S.D.N.Y. Sept. 25, 2007) (noting that the 955.96 hours expended, while high, was reasonable where majority of the claims were dismissed at summary judgment and one claim reached a jury trial); Siegel v. Bloomberg L.P., No. 13-CV-1351 (DF), 2016 WL 1211849, at *14 (S.D.N.Y. Mar. 22, 2016) (approving 1,193.4 hours in case that included amended pleadings, class certification motion, discovery, summary judgment motion, and settlement); Young v. Cooper Cameron Corp., No. 04-CV-5968 (SC) (GWG), 2009 WL 10739105, at *7 (S.D.N.Y. Mar. 30, 2009) (approving 730.11 hours in FLSA case that had a summary judgment motion and trial); Cho v. Koam Med. Servs. P.C., 524 F. Supp. 2d 202, 209-10 (E.D.N.Y. 2007) (applying a 40% reduction to the 1000 attorney hours expended in case with motion to dismiss briefing, some discovery, and default judgment); Silverberg v. People's Bank, No. 90-CV-00600 (AVC), 2000 WL 502621, at *4 (D. Conn. Mar. 17, 2000), aff'd, 23 F. App'x 46 (2d Cir. 2001) (explaining that 800 hours was reasonable in case that concluded with a four-day trial).

Of the 1,023.9 hours, the attorneys collectively spent at least 259 hours working on the Rule 11 motion for sanctions and the subsequent fee application. See ECF No. 80-4 at 2-46. And this number underrepresents the total amount of time spent on the Rule 11 motion, because it does not include any time from entries that were block billed. See infra at 18-20. But 259 hours far exceeds the hours courts in this District have previously approved as reasonable for work

15

related to a motion for sanctions. See, e.g., Novick v. AXA Network, LLC, No. 07-CV-7767

(AKH) (KNF), 2013 WL 6508498, at *1 (S.D.N.Y. Dec. 11, 2013) (approving 115.5 hours for

time "working on the motion for sanctions" and "preparing for and conducting" related

depositions); Vaigasi v. Solow Mgmt. Corp., No. 11-CV-5088 (RMB) (HBP), 2017 WL

3868990, at *5 (S.D.N.Y. Sept. 5, 2017) (collecting cases and determining that spending 65

hours "drafting and revising the motion for sanctions" was excessive); Local Union No. 40 of

Int'1 Ass'n of Bridge, Structural & Ornamental Iron Workers v. Car-Win Constr. Inc., 88 F.

Supp. 3d 250, 281-82 (S.D.N.Y. 2015) (approving 35.4 hours for researching and drafting

motion for sanctions); Eldesouky v. Aziz, No. 11-CV-6986 (JLC), 2015 WL 1573319, at *8

(S.D.N.Y. Apr. 8, 2015) (concluding that 24 hours spent on motion for sanctions reasonable); see

also Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, LTD., No. 07-CV-

3208 (KAM) (SMG), 2010 WL 3925195, at *4 (E.D.N.Y. Sept. 9, 2010), adopted as modified,

2010 WL 3924674 (E.D.N.Y. Sept. 30, 2010), aff'd, 682 F.3d 170 (2d Cir. 2012) (concluding

that 381.75 hours of attorney time for Rule 11 and Rule 12 motions was excessive); HVT, Inc. v.

Port Auth. of N.Y. & N.J., No. 15-CV-5867 (MKB) (VMS), 2018 WL 6079932, at *7 (E.D.N.Y.

Nov. 21, 2018) (reducing the 108.3 hours spent preparing the attorney's fees motion and to 30

hours).

Additionally, the time spent preparing the instant fee application was excessive. For

example, Mr. Wade, an attorney with over 12 years of experience, billed at least 68 hours to

researching, drafting, and revising the present fee application. See ECF No. 80-4 at 2-46. These

68 hours do not include time spent on the Rule 11 motion; it is time spent only on the subsequent

briefing concerning the amount of the attorney's fees award. Similarly, Ms. Meagher, an attorney

with six years of experience, billed at least 75.7 hours to researching, drafting, and revising the

present fee application. Id. Collectively, these two experienced attorneys billed over 143 hours of time to a fee application that concerned one straightforward issue: whether the hourly rates of the timekeepers and the hours billed for the work performed were reasonable. Courts typically find that fee applications should not exceed 30 hours. See, e.g., Murray ex rel Murray v. Mills, 354 F. Supp. 2d 231, 241 (E.D.N.Y. 2005) (noting that 150 hours for fee application was "grossly amplified" and even in a "complex case," a fee application should take around 30 hours); Cooper v. Sunshine Recoveries, No. 00-CV-8898 (LTS) (JCF), 2001 WL 740765, at *4 (S.D.N.Y. June 27, 2001) (reducing hours spent on fee application from 40 to 21); Hughes v. Benjamin, No. 17-CV-6493 (RJS), 2020 WL 4500181, at *6 (S.D.N.Y. Aug. 5, 2020) (finding that the 14 hours billed for motion for attorneys' fees was reasonable for a copyright action dismissed at the motion to dismiss stage).

Turning to the motion to dismiss, Gibson Dunn spent approximately 142.5 hours preparing a motion to dismiss that was ultimately never filed. See ECF No. 80-4 at 2-46. Here, too, this number underrepresents the hours expended on the motion, because it does not include entries that were block billed. See infra at 18-20. And here, too, the 142.5 hours expended on the motion to dismiss exceeds the number of hours typically deemed reasonable in this District for work on similar motions. See, e.g., Sea Spray Holdings. v. Pali Fin. Grp., Inc., 277 F. Supp. 2d 323, 325 (S.D.N.Y. 2003) (reducing fees because 123.75 hours expended on a motion to dismiss was "excessive on its face"); Rudman v. CHC Grp. Ltd., No. 15-CV-3773 (LAK), 2018 WL 3594828, at *4-5 (S.D.N.Y. July 24, 2018) (reducing 210 hours spent on fully briefed motion to dismiss to 105 hours). Further, two senior associates, Mr. Wade and Ms. Meagher, spent collectively at least 113 hours researching, drafting, and revising the memorandum of law. See ECF No. 80-4 at 2-46. This large amount of time was unreasonable given their years of

17

experience, which should have allowed them to more efficiently expend their time in drafting the memorandum of law. See Charles v. Seinfeld, No. 18-CV-1196 (AJN), 2022 WL 889162, at *6 (S.D.N.Y. Mar. 25, 2022) (noting that it was unreasonably excessive for the lead associate to bill 120 hours to a motion to dismiss brief).

For the reasons already discussed, this Rule 11 motion was particularly complex and required highly skilled attorneys, and the attorneys at Gibson Dunn represented their client superbly. Nevertheless, the total amount of hours spent on the case is high. And that is particularly so because the majority of the work on the case was done by experienced, senior attorneys, who presumably would have been more efficient at performing relevant tasks than junior attorneys. In short, the high number of hours support an across-the-board reduction in the hours requested. See Maldonado v. La Nueva Rampa, Inc., No. 10-CV-8195 (LLS) (JLC), 2012 WL 1669341, at *14 (S.D.N.Y. May 14, 2012) (applying an across-the-board reduction "where the stated number of hours [was] greater than what should have been required for the work produced").

Even putting aside the overall number of hours, there are two independent grounds that also support a reduction in the hours claimed. As discussed below, there are numerous instances of block billing by one timekeeper, and the billing records include time spent by attorneys on clerical or menial tasks that should have been delegated to more junior attorneys or paralegal staff.

First, Mr. Wade, who billed 332.8 hours of time on this matter (the second highest billing attorney on the case behind Ms. Meagher), has many time entries that include block billing, where the total amount of time in a specific entry includes descriptions for unrelated tasks, making it impossible to determine the reasonableness of the time spent on discrete tasks, like

18

drafting a motion. See TADCO Constr. Corp. v. Dormitory Auth. of N.Y., No. 08-CV-0073

(KAM) (MDG), 2016 WL 11669712, at *5 (E.D.N.Y. Dec. 21, 2016) (applying a reduction

where attorney's block billed records did not, for example, "distinguish between time spent

researching and drafting the legal memoranda, preparing fact witness declarations, reviewing

exhibits, and drafting the Rule 56.1 statement"). Mr. Wade has multiple block-billed entries

reflecting work on two separate motions—the motion to dismiss and the motion for sanctions.

For example, on February 25, 2022, Mr. Wade recorded 3.8 hours in a single time entry

for: "[r]esearch in support of sanctions motion; review and attend to strategy for draft motion to

dismiss; revise Rule 11 notice of motion; review and analyze [redacted][8]; attend to

correspondence relating to same." ECF No. 80-4 at 13. On February 28, 2022, Mr. Wade

recorded a single 6.3-hour entry reflecting that he "[a]ttend[ed] to Rule 11 Letter; revise[ed]

notice of motion and attend[ed] to correspondence regarding same; draft[ed] and revise[ed]

motion to dismiss; review[ed] and analyze[ed] [redacted] and filings in [redacted] matter in

connection with same." Id. On March 7, 2022, Mr. Wade spent 9.5 hours "[d]raft[ing] and

revis[ing] motion to dismiss"; "conduct[ing] research in support of same"; "revis[ing] pre-

motion to dismiss letter and Rule 11 letter"; and "attend[ing] to filing and service of same." Id. at

15. On March 17, 2022, Mr. Wade spent 7.7 hours on "[r]evis[ing] pre-motion to dismiss letter

to court; attend[ing] to calls and correspondence regarding comments to same; draft[ing] Rule 11

motion." Id. at 17. On March 21, 2022, Mr. Wade worked 9.4 hours "[f]inaliz[ing] motion to

dismiss letter to court and exhibits for filing; attend[ing] to calls concerning same and matter

strategy with N. Hart; draft[ing] Rule 11 motion." Id. at 18. On March 30, 2022, Mr. Wade

---

[8] Defendants provided the Court with unredacted billing records, which the Court reviewed.

recorded a 3.3-hour time entry, reflecting work on "[r]eview[ing] case law and research in support of Rule 11 motion" and "revis[ing] motion to dismiss." Id. at 20.

Such block-billed time entries make it impossible for the Court to ascertain whether the time spent on a specific task, like drafting the Rule 11 motion or drafting the motion to dismiss, was reasonable. See Bikur Cholim, Inc. v. Vill. of Suffern, No. 05-CV-10759 (WWE) (GAY), 2011 WL 13382668, at *3 (S.D.N.Y. June 3, 2011), adopted by, 2011 WL 2893071 (S.D.N.Y. June 29, 2011) (noting that block billing is "disfavored as it impedes the Court's ability to determine whether the time spent on each task was reasonable"). The preferred practice is to bill each task separately so that "the court can scrutinize the reasonableness of the time billed with greater accuracy." Molefi v. Oppenheimer Trust, No. 03-CV-5631 (FB) (VVP), 2007 WL 538547, at *7 (E.D.N.Y. Feb. 15, 2007). Although there are no instances of block billing by other attorneys on the case, Mr. Wade billed a substantial number of hours on the matter and his use of block billing merits an across-the-board reduction in the hours claimed. See CIT Bank, N.A., 2023 WL 4060083, at *4-5 (noting that the use of block billing warrants a 15% reduction in hours); Molefi, 2007 WL 538547, at *7-8 (applying 15% reduction, in part, because the attorney who performed the bulk of the work on the matter was also the one primarily responsible for block billing); Melnick v. Press, No. 06-CV-6686 (JFB) (ARL), 2009 WL 2824586, at *6 (E.D.N.Y. Aug. 28, 2009) (applying 10% reduction based on "repeated use of block-billing such that the reasonableness of each entry could not be as easily determined"); F.R. v. N.Y. City Dep't of Educ., No. 22-CV-1776 (VEC) (GWG), 2023 WL 4991118, at *11 (S.D.N.Y. Aug. 4, 2023), adopted by, 2023 WL 5950686 (S.D.N.Y. Sept. 13, 2023) (applying a 10% reduction in hours where the instances of block billing "do not appear to predominate" but there are still "numerous billing entries that 'block bill' a series of tasks").

Second, there are instances in the billing records where a senior or mid-level associate performed clerical or menial tasks that should have been delegated to a junior associate or paralegal. For example, Mr. Wade, an attorney with 12 years of experience, billed for "attend[ing] to filing and service of [pre motion letters]" (ECF No. 80-4 at 15) and billed for "[f]inalize[ing] . . . exhibits for filing." ECF No. 80-4 at 18. Ms. Meagher, an attorney with six years of experience, billed for "[p]repar[ing] materials to be used to prepare for pre-motion to dismiss conference" (id. at 23), "prepar[ing] exhibits to be filed with Rule 11 motion" (id. at 18) and "[c]onduct[ing] fact cite check of Rule 11 reply brief." Id. at 31. Additionally, Ms. Siqueira, an attorney with four years of experience when she worked on this matter in 2022, billed for "prepar[ing] exhibits to letters for filing." Id. at 14. All of this work should have been performed by junior attorneys or paralegals. See Dimopoulou v. First Unum Life Ins. Co., No. 13-CV-07159 (ALC), 2021 WL 406741, at *4-5 (S.D.N.Y. Feb. 5, 2021) (concluding that certain tasks such as conducting cite "could have been delegated to junior attorneys" and applying a 20% reduction); Tlacoapa v. Carregal, 386 F. Supp. 2d 362, 372-73 (S.D.N.Y. 2005) (reducing hours billed by 35% in part because "the preparation of exhibits could easily have been done by" a junior attorney rather than senior attorney). Senior attorneys billing for tasks that could have been performed by junior lawyers or paralegals further warrants a reduction in the hours claimed. See Bhungalia Fam., LLC v. Agarwal, 317 F. Supp. 3d 727, 740 (S.D.N.Y. 2018) (reducing fees requested by 25% where senior attorneys completed tasks that should have been delegated to junior attorneys such as conducting document review, preparing documents for electronic filing, and filing papers with the court); Singh v. Meadow Hill Mobile Inc., No. 20-CV-853 (CS) (AEK), 2021 WL 4312673, at *18 (S.D.N.Y. Aug. 9, 2021), adopted by, 2021 WL 3862665 (S.D.N.Y. Aug. 29, 2021) (applying a 40% reduction in hours billed for the "failure to delegate

tasks to a more junior attorney" such as compiling exhibits, filing pleadings, and drafting a proposed judgement); Lilly v. City of New York, 934 F.3d 222, 225 (2d Cir. 2019) (affirming "the district court's decision to reduce the hours claimed through an across-the-board reduction to reflect the clerical work performed" by attorneys).

Plaintiff also highlights certain issues in the billing records and raises various arguments for a reduction in the total fee award. First, Plaintiff contends that Defendants' request for $18,018 in fees for an associate to "[r]evise declaration in support of fee application," "engage in internal correspondence," "review and revise legal citations in fee application," and "review billing records and prepare exhibit of fees in support of fee application," is excessive. ECF No. 85 at 20; ECF No. 80-4 at 45. That total fee amount is for 14.3 hours of work. And as already discussed, the total amount of time spent on the fee application was excessive. See supra at 16-17. Plaintiff also argues that Defendants excessively billed 44.2 hours to prepare for a pre-motion conference with the Court on June 1, 2023. ECF No. 84 at 6-7; ECF No. 85 at 20. The time entries identified by Plaintiff contain block-billed entries, making it difficult for the Court to assess how many hours were dedicated solely to preparing for the conference. The use of block billing, for the reasons already discussed, merits a reduction in hours.

Second, Plaintiff argues that Defendants excessively billed for some menial tasks, but in doing so, Plaintiff relies on the total fee amount sought for the task, and not the hours billed. See ECF No. 85 at 20-21. As an example, Plaintiff points to the total amount of $2,856 for Ms. Meagher to "[c]onduct fact check of brief in support of Rule 11 motion," engage in internal correspondence, and "prepare exhibits." ECF No. 85 at 20; ECF No. 80-4 at 18. Although Plaintiff argues that the total fee is excessive, that is addressed by a reduction in the hourly rate sought for Ms. Meagher. See supra at 11-12. Although the total hours she billed for those tasks

22

(2.8 hours) is not excessive, the task should have been performed by a more junior attorney. See Wentworth Group Inc., 2022 WL 336456, at *9 (applying a 20% reduction where senior attorney "billed time for work that could have been performed by a more junior attorney, such as cite checking [and] shepardizing cases"). Plaintiff also argues that Ms. Meagher claimed $1,122 for "[a]ttention to factual cites in memorandum of law in support of motion seeking Rule 11 sanctions" and "internal correspondence about the same." ECF No. 85 at 20; ECF No. 80-4 at 19. Ms. Meagher spent 1.1 hours on these tasks, which also should have been delegated to a lawyer with a lower hourly rate. Additionally, Ms. Meagher billed 4.6 hours to "[c]onduct fact cite check of Rule 11 reply brief." ECF No. 85 at 20; ECF No. 80-4 at 31. This, too, is a task that should have been delegated to a junior attorney. See supra at 21.

Third, Plaintiff argues that the fee award should not include any time for work after September 6, 2022. ECF No. 85 at 21. On September 6, 2022, Plaintiff filed a letter seeking dismissal without prejudice under Federal Rules of Civil Procedure 41(a)(1)(A)(i). ECF No. 23. According to Plaintiff, Defendants' opposition to the voluntary dismissal "broke the causal chain between the purported Rule 11 violations in the Complaint and Defendants' claimed fees and expenses," because had Defendants not opposed the voluntary dismissal, no further action would have been necessary in this case. ECF No. 85 at 15-16. But as Defendants explain, its opposition to Plaintiff's "purported dismissal *without shareholder notice*" did not cause any unnecessary litigation "because Shareholder notice is mandatory when seeking to dismiss a derivative action." ECF No. 89 at 8 (citing Fed. R. Civ. P. 23.1(c) and 41(a)) (emphasis in original). And as stated in the R&R, "[b]ecause Rule 23.1(c) requires that notice of a voluntary dismissal of a derivative action be given to other shareholders, the Court required Plaintiff to file a proposed notice, for the Court's review and approval." ECF No. 58 at 10. Notably, Plaintiff tried to revoke

23

its attempt to voluntarily dismiss the case and instead file an amended complaint, after the malpractice lawsuit by Link Motion against Defendants, which was based on the same allegations as here, was dismissed with prejudice by Judge Marrero. ECF No. 30 in Case No. 22-CV-8313; ECF No. 49 at 2-3.

Fourth, Plaintiff contends that Defendants should not be awarded any fees and costs related to the Rule 11 motion. ECF No. 85 at 18. To support this argument, Plaintiff cites to (RC) 2 Pharma Connect, LLC v. Mission Pharmacal Co., No. 21-CV-11096 (LJL), 2023 WL 112552, *3 (S.D.N.Y. Jan. 4, 2023), where the court did not award attorney's fees incurred in bringing the motion for sanctions. ECF No. 85 at 18. But in (RC) 2 Pharma, the defendant did not seek any fees for work in connection with the sanctions motion. (RC) 2 Pharma Connect, LLC, 2023 WL 112552, at *3 (noting that in its memorandum of law in support of its Rule 11 motion, defendant did not request the fees and costs incurred in bringing said motion). Here, the Court determined that Defendants were entitled to their attorney's fees and costs in defending this action. ECF No. 58 at 1. And as already determined, "Plaintiff's decision to continue pursuing this legal-malpractice claim against Defendants [was] objectively unreasonable," thereby necessitating the filing of the Rule 11 motion. ECF No. 58 at 16. Further, unlike the defendant in (RC) 2 Pharma, Defendants have requested an award of fees for work on the Rule 11 motion. And courts in this District have consistently determined that "sanctions may include attorneys' fees and costs associated with filing the Rule 11 motion." DeFrancesco v. Mirador Real Est., No. 18-CV-4032 (VSB) (KHP), 2019 WL 5722120, at *4 (S.D.N.Y. July 15, 2019) (citing Fed. R. Civ. P. 11(c)(2)), adopted by, 2022 WL 203147 (S.D.N.Y. Jan. 24, 2022); Ilkowitz v. Durand, 17-CV-773 (PGG), 2020 WL 2836264, at *6 (S.D.N.Y. May 31, 2020) (noting that plaintiffs "did not withdraw their plainly frivolous claim during the Rule 11 safe harbor period" and thus

24

"the costs associated with the filing of the Rule 11 sanctions motion and the subsequent fee application are properly included"); Bunnell v. Haghighi, 183 F. Supp. 3d 364, 375 (E.D.N.Y. 2016) ("A court may award a prevailing party attorney's fees incurred by moving for Rule 11 sanctions."); see also An, 2024 WL 1157281, at *2 ("'[T]he fee application is a necessary part of the award of attorney's fees,' and 'a reasonable amount should be granted for time spent in applying for the award.'"); LBBW Luxemburg S.A. v. Wells Fargo Sec. LLC, No. 12-CV-7311 (JPO) (KNF), 2016 WL 5812105, at *7 (S.D.N.Y. Sept. 22, 2016) (explaining that fee application expenses are recoverable because "attorney's fees incurred in preparing the fee application to determine the appropriate amount of the sanctions award are necessarily 'caused by the failure' to obey the Court's order, where the sanctions motion has been granted"); Ramashwar v. Espinoza, No. 05-CV-2021 (AJP), 2006 WL 36752, at *9 (S.D.N.Y. Jan. 6, 2006) (noting that it is in the court's discretion to award fees incurred as a result of preparing and filing the Rule 11 motion). Finally, it would defeat the purpose of Rule 11 if a party successfully established a violation of the rule, but was not awarded the fees and costs it incurred in being forced to file such a motion. In short, the fees and costs stemming from Defendants' Rule 11 motion and instant fee application are properly charged to Plaintiff and its counsel.

Accordingly, a number of factors weigh in favor of an across-the-board reduction in the requested hours. Likewise, the well-established principle that Rule 11 sanctions should be limited "to what suffices to deter repetition" of the sanctioned conduct, Biocad JSC, 2022 WL 268102, at *3, also supports a reduction in the amount of the fee award sought by Defendants. See Schottenstein, 2005 WL 912017, at *2 (explaining that "a court should impose the least severe sanctions necessary to" achieve the deterrent purpose of Rule 11). A sizeable award, however, is necessary to deter the conduct that occurred here, which evidently Plaintiff's counsel

has continued to engage in despite the sanction decision in this case. More specifically, Plaintiff's counsel filed a malpractice suit against Defendants in New York Supreme Court, again relying on the same baseless allegations raised here in an amended complaint filed on September 6, 2024. See Link Motion Inc. v. DLA Piper LLP (US) et al., Case No. 653322/2022, Dkt. No. 29 (N.Y. Sup. Ct.). Additionally, even after receiving notice of Defendants' intent to pursue Rule 11 sanctions, Plaintiff and its counsel persisted with this suit, multiplying the proceedings by seeking a stay to withdraw the request for voluntary dismissal and amend the complaint.[9] ECF No. 58 at 11; ECF No. 47 at 1.

In sum, I recommend an across-the-board 30% reduction in the claimed hours. Such a reduction is reasonable given the issues identified in the billing records, and that reduction also appropriately serves the deterrent purpose of a sanctions award under Rule 11. See, e.g., Star Mark Mgmt., Inc., 2010 WL 3925195, at *4 (reducing hours by 35% where attorneys spent excessive time on motion to dismiss and motion for sanctions); King Fook Jewellry Grp. Ltd., 2019 WL 2535928, at *8 (reducing hours expended by 25% where attorneys did work that could

---

[9] According to Plaintiff's counsel, it cannot pay a fraction of the demand made by Defendants and thus the requested fee award seeks to destroy counsels' livelihoods, rather than deter similar conduct. ECF No. 85 at 26; ECF No. 84 at ¶¶ 5-6. Courts in this District have declined to reduce a sanction award based on an inability to pay where the entity has not provided adequate documentation to support the claimed financial duress. See Midamines SPRL Ltd. v. KBC Bank NV, No. 12-CV-8089 (RJS), 2016 WL 11359166, at *2 (S.D.N.Y. Mar. 31, 2016) (declining to reduce fee award based on the plaintiff's inability to pay where plaintiff "never provided a financial declaration or any other documents reflecting his asserted lack of income"); An, 2024 WL 1157281, at *4-5 ("Because of the lack of financial documentation presented by Plaintiffs, combined with Plaintiffs' Counsels' repeated filing of baseless lawsuits, this Court declines to further consider Plaintiffs' claimed inability to pay this sanctions award."); see also Loftus v. S.E. Pennsylvania Transp. Auth., 8 F. Supp. 2d 464, 468 (E.D. Pa. 1998), aff'd, 187 F.3d 626 (3d Cir. 1999) (concluding that counsel's "affidavit [was] completely devoid of detail concerning income and expenses" and thus court declined to consider inability to pay). Plaintiff's counsel did not submit documentation of the firm's finances, such as yearly revenues and how those revenues are calculated, beyond a single statement that the firm "generated average annual revenue of approximately $1,150,000." ECF No. 84 at ¶ 5.

26

have been done by junior associates or paralegals); Hines v. City of Albany, 613 F. App'x 52, 55 (2d Cir. 2015) (concluding that district court did not abuse its discretion in basing a 30% reduction in attorney's fees, in part, on the prevalence of block-billing).

   C. Costs

   Defendants seek $2,531.50 for costs incurred in defending this action. ECF No. 78 at 25. Defendants include an itemized list of their costs in Ms. Hart's sworn declaration (see ECF No. 80-5), which is sufficient to substantiate the costs requested. See Cruz v. Zucker, No. 14-CV-4456 (JSR), 2017 WL 1093285, at *4 (S.D.N.Y. Mar. 10, 2017) ("Plaintiffs have submitted an itemized list of costs under penalty of perjury and containing a reasonable degree of detail, which is a sufficient level of documentation for the purposes of a costs request."); Smart v. USA Lab. for Hire, Inc., No. 20-CV-5594 (TAM), 2024 WL 3313971, at *23 (E.D.N.Y. June 26, 2024) (explaining that applications that include "'[a] sworn statement or declaration under penalty of perjury that certain amounts were expended on particular costs' may be deemed sufficient"). Defendants seek reimbursement for costs such as service of process, photocopy fees, notary fees, teleconferencing services, PACER fees, Court Alert fees, fees for the use of Intelligize and Bloomberg, and transportation costs. ECF No. 80-5. The costs for which Defendants seek reimbursement are the types of costs that are routinely awarded by courts.

   First, Defendants seek reimbursement for $200 in filing fees and $348 in process server fees. ECF No. 80-5 at 3-4. Filing fee and process server fees are recoverable costs. See U.S.A. Famous Original Ray's Licensing Corp. v. Famous Ray's Pizza Buffet Inc., No. 12-CV-8753 (JGK) (GWG), 2013 WL 5363777, at *8 (S.D.N.Y. Sept. 26, 2013) (awarding costs for filing fees and service of process); Mercedes v. Underground Liquidation Inc., No. 23-CV-4766 (VEC) (RFT), 2024 WL 4710309, at *12 (S.D.N.Y. Aug. 12, 2024), adopted by, 2024 WL 4360558

27

(S.D.N.Y. Oct. 1, 2024) (noting that "court filing fee and fees for executing service of process . . . are the types of costs typically found to be reasonable").

Second, Defendants seek reimbursement for $20 incurred to notarize a document. ECF No. 80-5 at 3. Courts also permit reimbursement for the cost of a notary. Dunbar v. Buddha Bodai Two Kosher Vegetarian Rest., Inc., No. 19-CV-05176 (GHW) (SN), 2020 WL 12863806, at *5 (S.D.N.Y. June 10, 2020), adopted in part sub nom. 2020 WL 12863802 (S.D.N.Y. Nov. 24, 2020) (determining that "notary fee" is reimbursable).

Third, Defendants seek reimbursement for photocopy fees. See ECF No. 80-5 at 2-6. That, too, is a cost that is routinely awarded. See, e.g., Nautilus Neurosciences, Inc. v. Fares, No. 13-CV-1078 (SAS), 2014 WL 1492481, at *4 (S.D.N.Y. Apr. 16, 2014) (awarding photocopying costs).

Fourth, Defendants seek reimbursement for costs associated with the use of PACER, which is also a recoverable expense. See Harley v. Nesby, No. 08-CV-5791 (KBF) (HBP), 2012 WL 1537881, at *13 (S.D.N.Y. May 2, 2012) (approving request for PACER costs); Samsonite IP Holdings S.ar.l. v. Shenzhen Liangyiyou E-Com. Co., Ltd., No. 19-CV-02564 (PGG) (DF), 2021 WL 9036273, at *16 (S.D.N.Y. Apr. 27, 2021), adopted by, 2023 WL 8805645 (S.D.N.Y. Dec. 20, 2023) (same).

Fifth, Defendants seek to recover $30.75 in costs for transportation, incurred for a ride through Uber for a conference with the Court in the Baliga action. ECF No. 80-5 at 5; Baliga v. Link Motion, No. 18-CV-11642, Dkt. No. 323. This cost is recoverable. See Larsen v. JBC Leg. Group, P.C., 588 F. Supp. 2d 360, 365 (E.D.N.Y. 2008), as amended (Dec. 18, 2008) (noting that transportation costs to and from courthouse were recoverable); In re Merrill Lynch & Co.

28

Research Reports Secs. Litig., No. 02-MDL-1484, 2007 WL 313474, at *24 (S.D.N.Y. Jan. 31, 2007) (finding expenses for transportation to be reasonable and recoverable).

Sixth, Defendants seek to recover $48.42 in costs associated with teleconferencing services. See ECF No. 80-5 at 2-4. These costs are also reimbursable. See Guggenheim Capital, LLC v. Toumei, No. 10-CV-8830 (PGG), 2012 WL 13395965, at *8 (S.D.N.Y. Jan. 31, 2012) (noting that costs related to telephone conferencing are recoverable).

Finally, Defendants seek fees associated with the use of Bloomberg, Intelligize, and Court Alert for legal research. ECF No. 78 at 26; ECF No. 80-5 at 2-6. If a firm "normally bills its paying clients for the cost of online research services, that expense should be included in the fee award." Arbor Hill, 369 F.3d at 98. Because Ms. Hart's declaration states that the itemized costs were paid by DLA (see ECF No. 80 at ¶ 20), these research expenses are recoverable. See Rahman v. The Smith & Wollensky Rest. Grp, Inc., No. 06-CV-6198 (LAK) (JCF), 2009 WL 72441, at *9 (S.D.N.Y. Jan. 7, 2009) (stating that computer research expenses "are recoverable as a component of attorneys' fees where it is clear that counsel regularly charge paying clients separately for them"). However, Defendants also seek to recover $200 for use of Bloomberg to obtain the amended complaint in the Baliga action. ECF No. 80-5 at 4. It is not clear why Bloomberg was used for this task rather than PACER, which would have been more economical. As it relates to this $200 Bloomberg cost, I recommend that the request for reimbursement be denied.

I thus recommend awarding Defendants $2,331.50 in costs. And for the reasons discussed herein, I recommend a total attorney's fee award of $634,525.39, as outlined in the table below.

29

| Attorney | Hours Claimed | Hours after 30% reduction | Requested Average Hourly Rate | Modified Hourly Rate | Total[10] |
|---|---|---|---|---|---|
| Nancy Hart | 210.6 | 147.42 | $1,408.57 | $1,408.57 | $207,651.39 |
| Peter Wade | 332.8 | 232.96 | $1,202.43 | $875 | $203,840 |
| Meagan Meagher | 362.3 | 253.61 | $1,125.42 | $700 | $177,527 |
| Alisha Siqueira | 118.2 | 82.74 | $1,020 | $550 | $45,507 |
| Total Hours: | 716.73 | | | Total Fees: | $634,525.39 |

---

[10] The total fees for each attorney are rounded to the nearest cent.

30

## CONCLUSION

For the foregoing reasons, I recommend that Plaintiff and its counsel, jointly and severally, be directed to pay Defendants $634,525.39 in attorney's fee and $2,331.50 in costs.

**SO ORDERED.**

DATED:    New York, New York
           May 22, 2025

_____
VALERIE FIGUEREDO
United States Magistrate Judge


*         *         *

### PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION

**Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days (including weekends and holidays) from service of this Report and Recommendation to file any objections. See also Fed. R. Civ. P. 6(a), 6(b), 6(d). A party may respond to any objections within 14 days after being served. Any objections and responses shall be filed with the Clerk of the Court. Any request for an extension of time to file objections or responses must be directed to the Honorable Victor Marrero. If a party fails to file timely objections, that party will not be permitted to raise any objections to this Report and Recommendation on appeal. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; Fed. R. Civ. P. 6(a), 6(b), 6(d); Thomas v. Arn, 474 U.S. 140 (1985); Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C., 596 F.3d 84, 92 (2d Cir. 2010).**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 11/17/2025

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

CHINA AI CAPITAL LIMITED,

                Plaintiff,

    - against -

DLA PIPER LLP (US), and CARYN
SCHECHTMAN,

                Defendants,

    - and -

LINK MOTION INC. f/k/a NQ MOBILE INC.,

                Nominal Defendant.

**21 CV 10911(VM)**

**DECISION AND ORDER**

**VICTOR MARRERO, United States District Judge.**

On March 6, 2024, this Court adopted the amended Recommendation and Report (the "Sanctions R&R") that Magistrate Judge Valerie Figueredo ("Judge Figueredo") issued on July 28, 2023, recommending that the Court grant a motion for sanctions under Federal Rule of Civil Procedure 11 ("Rule 11"), which defendants DLA Piper LLP (US) and Caryn Schechtman (collectively "DLA Piper") filed against plaintiff China AI Capital Limited and plaintiff's counsel, Michael Maloney and Rosanne Felicello of Felicello Law P.C. (collectively "China AI"). (See Dkt. Nos. 58, 65.)

Pending before the Court are specific objections (see "Objections" or "Objs.," Dkt. No. 102) filed by China AI to

1

Judge Figueredo's subsequent Report and Recommendation (see the "R&R," Dkt. No. 99) issued on May 22, 2025, granting DLA Piper $634,525.39 in attorneys' fees and $2,331.50 in costs pursuant to Rule 11. For the reasons set forth below, China AI's Objections are hereby **OVERRULED**. The Court adopts the recommendations set forth in the R&R in their entirety.

## I.  BACKGROUND

The Court presumes familiarity with the underlying facts of this case from prior R&Rs and orders. (See Dkt. Nos. 58, 65.) Hence, the Court provides only a brief recitation of the procedural history. On September 3, 2024, after the Court adopted Judge Figueredo's Sanctions R&R and ordered China AI to pay the reasonable attorneys' fees and costs incurred by DLA Piper in defending the action (see Dkt. No. 65), DLA Piper filed a memorandum of law in support of their application, seeking an award of $1,174,716.50 in attorneys' fees and $2,531.50 in costs. (See Dkt. No. 78.) DLA Piper also submitted a sworn declaration, which included contemporaneous billing records through August 2024. (See Dkt. Nos. 79-80.) On October 22, 2024, DLA Piper filed a supplemental declaration, which detailed the additional attorneys' fees and costs DLA Piper incurred between September 1, 2024, and October 18, 2024 – adding $50,399 in attorneys' fees to the

2

total. (See Dkt. No. 91.) In sum, DLA Piper sought $1,225,115.50 in attorneys' fees and $2,531.50 in costs.

After briefing by the parties, Judge Figueredo issued her second R&R on May 22, 2025, recommending that the Court award DLA Piper $634,525.39 in attorneys' fees and $2,331.50 in costs. (See R&R at 6, 29.) Judge Figueredo determined that the award "is reasonable and will serve as an appropriate deterrence for the conduct engaged in by [China AI]," which violated Rule 11(b)(2) and Rule 11(b)(3). (Id. at 6.)

On June 12, 2025, China AI filed Objections to the R&R, specifically opposing: (1) Judge Figueredo's determination that shareholder notice could not be waived; (2) the recommendation to award fees for work on the Rule 11 motion; (3) reliance on matters outside the scope of the Rule 11 notice in determination of a fee; (4) the hourly rates accepted in the R&R; and (5) the overall amount of the recommended award. (See Objections.) On July 3, 2025, DLA Piper submitted a reply. (See "Reply," Dkt. No. 103.) On July 7, 2025, China AI submitted an additional response. (See Dkt. No. 105.)

## II.  STANDARD OF REVIEW

Under 28 U.S.C. § 636(b)(1) and Rule 72, the Court may designate a magistrate judge to submit recommendations for

3

the disposition of certain motions. A party may object in writing to the magistrate judge's recommendations, and the Court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); see Fed. R. Civ. P. 72(b)(3).

"However, when the objections simply reiterate previous arguments or make only conclusory statements, the Court should review the report for clear error." Brown v. Colvin, 73 F. Supp. 3d 193, 197 (S.D.N.Y. 2014). "[A]n error is clear when the reviewing court is left with a definite and firm conviction that a mistake has been committed." Levinson v. U.S. Fed. Bureau of Prisons, 594 F. Supp. 3d 559, 563 (S.D.N.Y. 2022) (internal quotation marks and citation omitted). Unless otherwise specified, the Court has reviewed the R&R de novo with respect to each of China AI's specific Objections.

## III. DISCUSSION

Upon de novo review, the Court overrules each of China AI's Objections and adopts Judge Figueredo's R&R in its entirety substantially for the reasons set forth in the R&R – thus awarding DLA Piper $634,525.39 in attorneys' fees and $2,331.50 in costs.

4

A.    SHAREHOLDER NOTICE

In the R&R, Judge Figueredo rejected China AI's argument that "had [DLA Piper] not opposed the voluntary dismissal, no further action would have been necessary in this case." (R&R at 23.) Instead, Judge Figueredo determined that because "Rule 23.1(c) requires that notice of a voluntary dismissal of a derivative action be given to other shareholders," and China AI had not given notice, DLA Piper's opposition to the purported dismissal "did not cause any unnecessary litigation." (Id.) China AI objects to this determination on the basis that Judge Figueredo failed to consider that a district court can waive the notice to shareholders that is ordinarily required under Rule 23.1(c). (See Objs. at 7-9.)

However, on September 12, 2022, China AI filed a letter along with a proposed order for dismissal for the Court's review and consideration. China AI argued that "[DLA Piper] [was] wrong that notice to other shareholders is always required" and stated that the "Court must consider the policy implications of Rule 23.1." (Dkt. No. 26.) The Court declined to sign China AI's proposed order, instead directing China AI to "file with the Court a proposed form of notice of its intent to voluntarily dismiss the action to be provided to all other shareholders . . . as well as a proposal for how

5

such notice shall be distributed that meets the requirements of [Rule] 23.1." (Dkt. No. 28.) Given that the Court explicitly required China AI to provide shareholder notice, it is not persuaded by China AI's attempt to argue, once again, that a district court can waive the notice requirement.

China AI states, correctly, that it "timely filed its revised proposed notice on September 18, 2022." (Objs. at 8; Dkt. No. 30.) Because of this filing, China AI contends that it was therefore "not the impediment to dismissal" and was not responsible for the litigation that occurred after that date. (Id. at 9.) But that argument, too, has already been rejected by this Court. In a decision and order issued on March 6, 2024, which adopted in its entirety Judge Figueredo's Sanctions R&R, this Court found China AI's argument regarding its attempt to voluntarily dismiss the Complaint unpersuasive. (See Dkt. No. 65 at 41.) The Court noted that on March 8, 2022, DLA Piper served papers complying with the Rule 11 safe harbor and China AI did not respond - deciding instead, in a letter filed March 14, 2022, to oppose Defendants' proposed motion to dismiss. (See id.) This Court found that although China AI filed a proposed notice of voluntary dismissal on September 6, 2022, that filing was quickly followed by an attempt by China AI's counsel to bring

6

a direct legal malpractice action in state court on behalf of Link Motion against DLA Piper, and after that direct malpractice action was removed to federal court and dismissed with prejudice, China AI in the instant suit tried to withdraw its proposed voluntary dismissal. (See id.)

Here, China AI argues that the primary relief requested was not a withdrawal of its proposed voluntary dismissal but a stay of the proceedings, and that "the subsequent request for a stay does not change the fact that [China AI] requested dismissal on September 6, 2022." (Objs. at 9.) The Court finds that argument unavailing. Whether China AI sought a stay or the withdrawal of its voluntary dismissal, this Court has already found that the circumstances were "altogether different from a case where a party's voluntary dismissal of a case is actually effective and puts a true end to frivolous litigation." (Dkt. No. 65 at 41.) Therefore, China AI's request for dismissal on September 6, 2022, did not render any litigation that occurred after that date unnecessary.

Finally, the Court is not persuaded by China AI's argument that the Court waived the shareholder notice requirement by dismissing China AI's derivative claim without notice to shareholders. The Court dismissed China AI's complaint in that action *with prejudice* and granted

7

sanctions, in part, because of China AI's false allegations. (See id. at 21, 47.) Those events have no bearing on whether the Court waived the shareholder notice requirement for voluntary dismissal here. Therefore, the Court overrules this specific Objection.

B.   RULE 11 MOTION

Next, China AI objects to Judge Figueredo's recommendation to award attorneys' fees for work on the Rule 11 motion. It argues that the "record here shows that [DLA Piper] delayed in filing their Rule 11 motion until *after* objecting to [China AI's] earlier filed voluntarily dismissal." (Objs. at 10.) The Court previously addressed and rejected this argument, finding that "China AI provide[d] no reason for failing to raise this argument before Judge Figueredo" in its opposition to the Rule 11 motion. (Dkt. No. 65.) Thus, applying the clearly erroneous standard, the Court is not convinced that Judge Figueredo erred by awarding attorneys' fees for work on the Rule 11 motion. See Levinson, 594 F. Supp. 3d at 563.

In fact, as China AI acknowledges, Rule 11 "allows, but does not require, the district court to award a prevailing party the reasonable expenses and attorneys' fees incurred in presenting or opposing the motion." (Objs. at 10);

8

Schottenstein v. Schottenstein, 230 F.R.D. 355, 362 (S.D.N.Y. 2005). As Judge Figueredo explained, this Court already determined that China AI's "decision to continue pursuing this legal-malpractice claim against [DLA Piper] [was] objectively unreasonable" and "necessitat[ed] the filing of the Rule 11 motion." (R&R at 24.)

Numerous district courts have relied on exercise of judicial discretion to award fees and costs. See, e.g., Ilkowitz v. Durand, No. 17-CV-773, 2020 WL 2836264, at *6 (S.D.N.Y. May 31, 2020); Bunnell v. Haghighi, 183 F. Supp. 3d 364, 375 (E.D.N.Y. 2016); LBBW Luxemburg S.A. v. Wells Fargo Sec. LLC, No. 12-CV-7311, 2016 WL 5812105, at *7 (S.D.N.Y. Sept. 22, 2016). Here, the Court agrees with Judge Figueredo that "it would defeat the purpose of Rule 11 if a party successfully established a violation of the rule, but was not awarded the fees and costs it incurred in being forced to file such a motion." (R&R at 25.) Accordingly, the Court overrules this specific Objection.

C.    EVENTS AFTER SERVICE OF THE RULE 11 NOTICE

China AI also objects to the R&R on the contention that Judge Figueredo improperly relied on matters outside the scope of the Rule 11 notice in determining the total award of fees and costs to recommend. (See Objs. at 11.) In the R&R,

9

Judge Figueredo references two actions taken by China AI further supporting the sanctions award: (1) China AI filed a malpractice suit against DLA Piper in New York Supreme Court, relying on the same allegations raised in this case; and (2) after receiving notice of DLA Piper's intent to pursue Rule 11 sanctions, China AI "persisted with this suit, multiplying the proceedings by seeking a stay to withdraw the request for voluntary dismissal and amend the complaint." (R&R at 25-26.)

China AI relies on Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd., 682 F.3d 170, 175 (2d Cir. 2012), for the proposition that "only conduct explicitly referred to in the instrument providing notice is sanctionable." (Objs. at 11-12.) It also cites Goodyear Tire & Rubber Co. v. Haeger, 581 U.S. 101, 104 (2017), to argue that a sanctions "order is limited to the fees the innocent party incurred solely because of the misconduct." (Id.) China AI contends that because neither action stated above was identified in the Rule 11 notice, Judge Figueredo should not have considered them as part of the analysis. (See id.) Contrary to China AI's argument, however, Judge Figueredo merely relied on the stated actions in support of her determination that China AI's sanctionable conduct – filing a frivolous complaint containing false allegations – warrants

10

a "sizeable award" "to deter the conduct that occurred." (R&R at 25-26.) Judge Figueredo refers to China AI's subsequent actions after the Rule 11 notice as examples of how China AI "continued to engage" in sanctionable conduct "despite the sanction decision" the Court previously issued. (Id.) Judge Figueredo was not determining what conduct was sanctionable but instead bolstering her findings that a large award was needed to deter the conduct that this Court previously found sanctionable. Therefore, the Court rejects China AI's argument and overrules this Objection.

D.    HOURLY RATES

China AI next objects to the hourly rates and the time expended calculations set forth in the R&R. (See Objs. at 13-15.) However, the Court finds that the figures Judge Figueredo used to arrive at the total sanctions award, including the hourly rates recommended for each attorney who performed work on the case - Nancy Hart, Peter Wade, Megan Meagher, and Alisha Siqueira – are reasonable and well-supported by the case law. (See R&R at 6-14.)

First, Judge Figueredo notes that while "Ms. Hart's average hourly rate of $1,408.57 is substantial, '[i]n this district, partner billing rates in excess of $1,000 are not uncommon in the context of complex commercial litigation.'"

11

(Id. at 8.) Judge Figueredo then proceeds to cite numerous recent examples of case law supporting this proposition. (Id.) In addition to comparable rates adopted in this District, the Court also finds that the circumstances Judge Figueredo identifies – for example, "the 'high bar' that must be satisfied before a court will impose sanctions under Rule 11" and the context of a "malpractice claim [seeking] over $580 million in alleged damages and threaten[ing] significant reputational harm" – are sufficiently compelling and in line with the relevant considerations. See, e.g., ATX Debt Fund 1, LLC v. Paul, No. 19-CV-8540, 2024 WL 2093387, at *5 (S.D.N.Y. May 9, 2024) ("[D]istrict courts should consider factors such as the time and labor required, the level of skill required to perform the legal service properly, the attorney's customary hourly rate, the amount involved in the case, and the results obtained.").

Second, as to associates Wade and Meagher, Judge Figueredo similarly details the reasonableness of the hourly rates she used to calculate the total sanctions award. (See R&R at 11-12.) The Court agrees with Judge Figueredo's reasoning. Judge Figueredo rejected an hourly rate above $1,000 – which exceeds the usual rate for senior or mid-level associates in this District – and determined that $875 for

12

Ward and $700 for Meagher, while still "at the high end," "appropriately account for the complexities of the instant matter, the hourly rate a sophisticated client paid for the work performed, and the success achieved" for DLA Piper. (Id. at 12.) This finding is well-supported by other case law in this District, on which Judge Figueredo relies. See, e.g., An v. Despins, No. 22-CV-10062, 2024 WL 1157281, at *2-4 (S.D.N.Y. Mar. 18, 2024) (finding that a $796 to $895 hourly rate was reasonable); Wells Fargo Trust Co. v. Fast Colombia S.A.S., No. 23-CV-603, 2023 WL 8591953, at *8 (S.D.N.Y. Oct. 16, 2023), adopted by, 2023 WL 8433128 (S.D.N.Y. Dec. 5, 2023) (finding that an $800 hourly rate was reasonable).

Third, the Court agrees that, as to associate Siqueira, the requested hourly rate of $1,020 "exceeds the rates typically awarded to mid-level associates" and that the $550 rate Judge Figueredo determined instead is in accord with the case law. (R&R at 13-14); United States ex rel. Yasti v. Nagan Constr., No. 17-CV-7163, 2021 WL 1063437, at *4 (S.D.N.Y. Mar. 18, 2021) (explaining that courts have found an hourly rate of $541 for a fourth-year associate reasonable).

As to the total number of hours, the Court declines to adopt China AI's assertion that it was not "reasonable and necessary for [DLA Piper] to expend significant time and

13

effort to defend this case" as a basis to further reduce the claimed hours. (Objs. at 13.) Here, Judge Figueredo has already recommended and applied an across-the-board thirty-percent reduction in hours, which the Court finds reasonable. (See R&R at 26.) This reduction is supported by sufficient case law – cited in the R&R - in which courts addressed similar arguments to those China AI asserts here. See, e.g., TADCO Constr. Corp. v. Dormitory Auth. of N.Y., No. 08-CV-0073, 2016 WL 11669712, at *5 (E.D.N.Y. Dec. 21, 2016) (applying a fifteen-percent reduction for block billing); Dimopoulou v. First Unum Life Ins. Co., No. 13-CV-07159, 2021 WL 406741, at *4-5 (S.D.N.Y. Feb. 5, 2021) (applying a twenty-percent reduction because tasks such as researching and conducting cites "could have been delegated to junior attorneys"); Wentworth Grp. Inc. v. Evanston Ins. Co., No. 20-CV-6711, 2022 WL 336456, at *7 (S.D.N.Y. Feb. 4, 2022), adopted by, 2022 WL 909794 (S.D.N.Y. Mar. 29, 2022) (applying a twenty-percent reduction where senior attorney "billed time for work that could have been performed by a more junior attorney").

Separately, China AI asserts that Judge Figueredo mistakenly defined "reasonable hourly rate" as the "rate a paying client would be willing to pay" and relied incorrectly

14

on Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany & Albany Cnty. Bd. of Elections, 522 F.3d 182, 190 (2d Cir. 2008) – which China AI contends was decided under the prevailing party provision of the Voting Rights Act of 1965 and not Rule 11. (Objs. at 13-14.) The Court disagrees and is instead persuaded by case law, also noted by DLA Piper, which applies the same language to a Rule 11 sanctions motion. For example, in Conway v. Conway, the court quotes Arbor Hill in the context of a Rule 11 motion and explains that "the reasonable hourly rate is the rate a paying client would be willing to pay." No. 17-CV-8245, 2019 WL 1331624, at *11 (S.D.N.Y. Mar. 25, 2019).

Finally, China AI objects to Judge Figueredo's assertion in the R&R that "over $580 million" in damages were alleged in the complaint – contending instead that the correct figure was $180 million – and that, therefore, her reliance on the "magnitude" of damages to justify the hourly rates was unsound. (Objs. at 13-14.) DLA Piper argues that China AI fails to account for an arbitration award approximately equivalent to $396,000,000, which is also alleged in the complaint. (Reply at 19.) Here, the Court finds any discrepancy meaningless. Judge Figueredo relied on the "magnitude of the damages sought" as just one reason, among

15

many, to support her hourly rate determination. (R&R at 10.) And in either circumstance, DLA Piper still required "the assistance of attorneys" with the requisite "skill and expertise" to defend against a nine-figure case. (R&R at 10.) Accordingly, the Court overrules China AI's Objections as to the hourly rates and time expended.

   E.   TOTAL AWARD

Finally, China AI objects to the overall amount of the sanctions award recommended in the R&R – arguing that "a fee of $634,525.39 is unreasonable in light of the procedural history of the case" because the case "never proceeded beyond the pleading stage." (Objs. at 15-16.) The Court is unpersuaded by the authority China AI cites, which amounts to nothing more than a list compiling disparate examples of cases with similar and dissimilar procedural postures and their corresponding sanctions. (Id. at 15-16.) China AI makes no attempt to explain how any of the factual circumstances present in the purportedly analogous cases – beyond the stage of the litigation - are in any way similar to the circumstances in the case at hand.

China AI further asserts that "[t]he R&R also improperly disregarded the financial information submitted by counsel regarding its inability to pay the award." (Id. at 16.)

16

However, Judge Figueredo addressed this issue, explaining that "[c]ourts in this District have declined to reduce a sanction award based on an inability to pay where the entity has not provided adequate documentation to support the claimed financial duress" and that, here, China AI's "counsel did not submit documentation of the firm's finances, such as yearly revenues and how those revenues are calculated, beyond a single statement that the firm 'generated average annual revenue of approximately $1,150,000.'" (R&R at 26 n.9.)

Here, the Court finds that Judge Figueredo's determination is adequately supported by the cited case law. See, e.g., Midamines SPRL Ltd. v. KBC Bank NV, No. 12-CV-8089, 2016 WL 11359166, at *2 (S.D.N.Y. Mar. 31, 2016) (declining to reduce a fee award in part because plaintiff "never provided a financial declaration or any other documents reflecting his asserted lack of income"); An, 2024 WL 1157281, at *5 (declining to reduce sanctions award in part because of plaintiffs' "lack of financial documentation" combined with "Counsels' repeated filing of baseless lawsuits").

Nevertheless, China AI contends that Judge Figueredo "summarily declined" to consider the average annual revenue statement and "should have afforded" China AI's counsel "the

17

opportunity to make an *in camera* submission" - just as it afforded China AI. (Objs. at 17.) The Court, however, is unconvinced by that argument. First, contrary to China AI's assertion that "the ability to pay *should* be considered in determining any award" (see id. (emphasis added)), courts have consistently held that the ability to pay is a consideration within the court's discretion. See, e.g., Oliveri v. Thompson, 803 F.2d 1265, 1281 (2d Cir. 1986) (finding that it is within a district court's "discretion to temper the amount to be awarded against an offending attorney by a balancing consideration of his ability to pay"); Star Mark, 682 F.3d at 179 (same).

Second, counsel here does not assert that China AI – jointly and severally liable for sanctions – cannot pay. (Reply at 23; Dkt. No. 65 at 47 (ordering that "China AI and its counsel will be jointly and severally sanctioned in the amount of the reasonable costs and attorneys' fees").)

Accordingly, the Court finds no reason to sustain China AI's Objection to the total amount of attorneys' fees awarded.

## IV.  ORDER

For the reasons stated above, it is hereby

**ORDERED** that the Objections (Dkt. No. 102) raised by plaintiff China AI Capital Limited and plaintiff's counsel,

Michael Maloney and Rosanne Felicello of Felicello Law P.C. (collectively "China AI") to the Report and Recommendation ("R&R," Dkt. No. 99) issued on May 22, 2025, by Magistrate Judge Valerie Figueredo ("Judge Figueredo") in this action, upon the Court's de novo review, are hereby **OVERRULED** with prejudice. The Court adopts the recommendations set forth in the R&R in their entirety substantially for the reasons stated by Judge Figueredo in the R&R; and it is further

**ORDERED** that judgment be entered by the Clerk of Court and an award be made in the amount of $634,525.39 in attorneys' fees and $2,331.50 in costs.

**SO ORDERED.**

Dated:    17 November 2025
          New York, New York

_____
Victor Marrero
U.S.D.J.

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------X
CHINA AI CAPITAL LIMITED,

               Plaintiff,

       - against -

DLA PIPER LLP (US), and CARYN
SCHECHTMAN,

             Defendants,

       - and –

LINK MOTION INC. f/k/a NQ MOBILE INC.,

           Nominal Defendant
------------------------------------------------------------X

21 **CIVIL** 10911 (VM)

**JUDGMENT**
**For Attorney's Fees and Costs**

It is hereby **ORDERED, ADJUDGED AND DECREED:** That for the reasons

stated in the Court's Decision and Order dated November 17, 2025, the Court adopts the

recommendations set forth in the R&R in their entirety substantially for the reasons stated by

Judge Figueredo in the R&R; and it is further ORDERED that judgment is entered by the Clerk

of Court and an award is made in the amount of $634,525.39 in attorneys' fees and $2,331.50 in

costs.

**Dated:** New York, New York

      November 18, 2025

                            **TAMMI M. HELLWIG**

                                **Clerk of Court**

**BY:**

                                **Deputy Clerk**

ADDENDUM "B"
to Form C

Issues Proposed to be Raised on Appeal With Applicable Standard of Review:

1.  Whether the Court improperly granted Defendants' motion for sanctions pursuant to Rule 11.

    Standard of Review: The proper standard of review is abuse of discretion. *Kiobel v. Millson*, 592 F.3d 78, 81 (2d Cir. 2010) ("An 'abuse of discretion' occurs when a district court "base[s] its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence, or render[s] a decision that cannot be located within the range of permissible decisions").

2.  Whether the Court improperly awarded Defendants attorney's fees in the amount of $634,525.39 and costs in the amount of $2,331.50.

    Standard of Review: The proper standard of review is abuse of discretion. *Eastway Const. Corp. v. City of New York*, 821 F.2d 121, 122 (2d Cir. 1987).