# (L)      (Con)
# 25-2990 & 25-2991

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

CHINA AI CAPITAL LIMITED, A BRITISH VIRGIN ISLANDS COMPANY, DERIVATIVELY ON BEHALF OF LINK MOTION INC, A CAYMAN ISLANDS LIMITED COMPANY F/K/A NQ MOBILE INC.,

*Plaintiff-Appellant,*

FELICELLO LAW P.C., MICHAEL JAMES MALONEY, ROSANNE E. FELICELLO,

*Interested Parties-Appellants,*

-against-

DLA PIPER LLP (US), A MARYLAND LIMITED LIABILITY PARTNERSHIP, CARYN G. SCHECHTMAN, A NATURAL PERSON,

*Defendants-Appellees,*

LINK MOTION INC., A CAYMAN ISLANDS LIMITED COMPANY f/k/a NQ Mobile Inc.,

*Defendant.*

---

*On appeal from Order and Judgment of the U.S. District Court for the Southern District of New York*

---

## BRIEF FOR INTERESTED PARTIES

---

MICHAEL JAMES MALONEY, ESQ.
**FELICELLO LAW P.C.**
366 Madison Avenue, 3rd Floor
New York, New York 10017
(212) 584-7806
mmaloney@felicellolaw.com
*Attorneys for Plaintiff-Appellant*

**LAW OFFICE OF
DANIEL L. ABRAMS, PLLC**
1250 Broadway, 36th Floor
New York, New York 10001
(646) 821-4575
dan@lawyerquality.com
*Attorneys for Interested Parties-Appellants*

**TABLE OF CONTENTS**

INCORPORATION BY REFERENCE ..................................................................1

PRELIMINARY STATEMENT ...........................................................................1

ARGUMENT .......................................................................................................7

I.    THE JUDGMENT SHOULD BE VACATED AND THE SANCTIONS DECISION AND ORDER REVERSED ...............................7

    A.    Because Felicello Law Had Factual Support For The Allegations in Paragraphs 64 and 85 of the Complaint, The Rule 11(b)(3) Ruling Must be Vacated and Reversed..........................7

        i.    Felicello Law Had Factual Support For Paragraph 64 ...............7

        ii.    Felicello Law Had Factual Support For Paragraph 85 .............12

    B.    The Court Erred In Concluding That Plaintiff's Malpractice Claim Was Frivolous Pursuant To Rule 11(b)(2)...............................14

        i.    Felicello Law Had A Good Faith Basis To Plead That DLA Negligently Represented Link Motion In The Baliga Action By Doing Nothing Of Substance For Two And A Half Months While Serving As Counsel Of Record........................................................................................15

        ii.    Felicello Law Had A Good Faith Basis To Plead That DLA's Negligence Proximately Caused Link Motion To Suffer Damages ...................................................................20

        iii.    Plaintiff's Legal Contentions Regarding its Own Standing to Bring a Derivative Claim are Supported by Existing Law or a Nonfrivolous Extension, Modification or Reversal of Existing Law or the Establishment of New Law.....................................................25

    C.    The District Court Erred In Concluding That Plaintiff's Malpractice Claim Was Filed For An Improper Purpose Pursuant To Rule 11(b)(1)..............................................................29

i

# TABLE OF AUTHORITIES

**CASES**

*Barnett v. Schwartz*, 47 A.D.3d 197, 205 (2d Dep't 2007) ....................................20

*Bennett v. Mukasey*, 525 F3d 222, 223-24 (2d Cir 2008)........................................17

*Carasco v. Schlesinger*, 222 A.D.3d 476 (1st Dep't 2023) ....................................21

*Douglas v. Naik Consulting Grp., P.C.*, 2025 WL 2042430, at \*5
 (S.D.N.Y. July 21, 2025)....................................................................................2

*Eastway Constr. Corp. v. City of New York*, 762 F2d 243, 254 (2d Cir.
 1985) ..................................................................................................................4

*Fishoff v. Coty Inc.*, 634 F.3d 647 (2d Cir. 2011) ....................................14, 15, 27

*Freeman v. Stake.com*, 2023 WL 7386354, at \*3 (S.D.N.Y. Nov. 7, 2023) ............10

*Kim v. Kimm*, 884 F.3d 98, 106-07 (2d Cir. 2018) ................................6, 14, 24, 27

*Kiobel v. Millson,* 592 F.3d 78, 83 (2d Cir. 2010) ..........................................4, 11,12

*Link Motion v. DLA*, 103 F.4th 905, 916 (2d Cir. 2024)........................................21

*Matter of Renren, Inc.*, 192 A.D.3d 539 (1st Dep't 2021) ......................................25

*O'Brien v. Alexander*, 101 F.3d 1479 (2d Cir. 1996)......................................4, 7,13

*Parker Chapin Flattau & Klimpl v. Daelen Corp*. 59 A.D.2d 375 (1st
 Dep't 1977) ......................................................................................................20

*Renren, Inc. v. XXX,*
 *67 Misc. 3d 1219(A) (*N.Y. Sup. Ct. NY County, 2020*)* ..........................25, 26, 27

*Rubens v. Mason*, 387 F.3d 183, 190-91 (2d Cir. 2004)........................................23

*Schweizer v. Mulvehill*, 93 F. Supp. 2d 376 (S.D.N.Y. 2000)................................18

*Sierra Club v. U.S. Army Corps of Engineers*, 776 F.2d 383, 391 (2d Cir.
 1985) ................................................................................................................30

*Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.*, 682 F.3d 170, 177 (2d Cir. 2012)....................................................27

*Storey v. Cello Holdings,* 347 F.3d 370, 388 (2d Cir. 2003)(Sotomayor, J.)............5

*Sussman v. Bank of Israel*, 56 F.3d 450, 458-59 (2d Cir. 1995) ..............................29

*Top Jet Enter. Ltd. v Sino Jet Holding Ltd. and Jet Midwest Inc.*, 2018 (1) CILR 18, 43, [34]......................................................................................25, 29

*U.S. Bank Nat. Ass'n v. Nesbitt Bellevue Prop. LLC*, 859 F. Supp. 2d 602, 610 (SDNY 2012) ...........................................................................................21

*Villar v. City of New York*, 540 F.Supp.3d 437, 439 (S.D.N.Y. 2021) .....................16

*Whitney Group, LLC v. Hunt-Scanlon Corp.*, 106 A.D.3d 671, 967 N.Y.S.2d 21 (1st Dep't 2013)..........................................................................17

*Winn v. Schafer*, 499 F.Supp.2d 390 (S.D.N.Y. 2007).............................................28

**OTHER AUTHORITIES**

FRCP Rule 8 (a)(2).....................................................................................................12

SDNY Local Rule 1.4..................................................................................................16

The District Court's Rule 11(b)(1) ...............................................................................6

The District Court's Rule 11(b)(3) .....................................................................5, 12, 13

## INCORPORATION BY REFERENCE

Pursuant to Federal Rule of Appellate Procedure 28(i), to avoid unnecessary repetition, this Brief adopts by reference the following sections of the Brief of the Appellant China AI Capital Ltd submitted on March 5, 2026 ("China AI Opening Brief"): the Jurisdictional Statement, the Statement of Issues Presented for Review, the Statement of the Case, the Statement of Facts, the Standard of Review, the Summary of Argument, and the Conclusion.

Moreover, while this Brief sets forth a separate Preliminary Statement and Argument, this Brief does not repeat verbatim the same arguments as the China AI Opening Brief, and endeavors to limit repetition with the China AI Opening Brief; as such, this Brief also adopts the arguments set forth in the China AI Opening Brief *infra*.

Except where stated below, this Brief adopts and incorporates the defined terms from the China AI Opening Brief.

## ISSUES PRESENTED FOR REVIEW

This Brief incorporates the China AI Opening Brief's (at 5-9) issues presented.

## PRELIMINARY STATEMENT

Interested Parties-Appellants Rosanne E. Felicello, Michael Maloney and Felicello Law, P.C. (collectively "Felicello Law") appeal the decision and order of the District Court imposing sanctions against them under Rule 11, and ordering them

1

to pay $634,525.39 in attorney's fees, and costs of $2,331.50, jointly and severally with the Appellant, China AI. (the "Sanctions Order").

If affirmed, the Sanctions Order will enforce a massive injustice against Felicello Law and the sanctioned individual lawyers, who face financial and reputational ruin for taking on a colorable legal malpractice case against a powerful law firm that appeared in federal court for eleven weeks in a lawsuit and undertook no substantive work in defense of that lawsuit, while entering into a stipulation of non-opposition to the appointment of a corporate receiver over its own client. Felicello Law had a good faith basis for the factual assertions, and identified colorable legal support for each of the three legal contentions the District Court identified as sanctionable in the Sanctions Order. Neither the trial court nor DLA ever identified a single case authority that would obviously foreclose this lawsuit. The Sanctions Order was therefore an abuse of discretion and must be reversed.

The Rule 11 standard is "purposefully high, so as not to stifle legal creativity and zealous advocacy." *Douglas v. Naik Consulting Grp., P.C.*, 2025 WL 2042430, at *5 (S.D.N.Y. July 21, 2025) (citation omitted). Given the sheer size of the award as well as the erroneous nature of the trial court's findings, this is precisely the type of case that calls out for reversal, both to protect the Bar from subjective Rule 11 rulings and to do justice in this one case. The alternative is to endorse a subjective standard that leaves the Bar guessing as to when a case which has some threshold

thorny issues is sanctionable or not, and fearing that no matter how reasonable the conduct, the next difficult case they take on could ruin their career.

*First,* Felicello Law did not make any factually false statements in their pleading on behalf of China AI. The pleading addressed a series of interrelated documents which governed a stock purchase transaction whereby Link Motion sold FL Mobile stock to Tongfang. The District Court found that Felicello law inaccurately portrayed the sale of FL Mobile stock to Tongfang because press releases and public disclosures characterized the sale as being "completed" on December 14, 2017, making it false for Plaintiff to allege in paragraph 64 of the Complaint that when the Baliga Action was commenced on December 13, 2018, "[w]hat remained to be performed under the SPA was the Company's obligation to cause transfer of FL Mobile shares in accordance with the SPA." (A1739, *see also* A1586 at 16, citing A35 ¶62-64). But Felicello Law had ample factual support showing that the Company had obtained control over the FL Mobile stock and retained that control as of December 13, 2018 pursuant to the SPA and agreements between the same parties which amended the SPA, i.e., the Supplemental Agreement and Equity Pledge Agreement. (*See* China AI Opening Br. at Point I A; *see also* A482 ¶53, citing A348-53, A642-54, A675-83). None of the press releases or public filings cited by the R&R or Sanctions Order are inconsistent with the allegation.

Even if *arguendo* there was some tension between the pleading and a prior

statement of Link Motion, that would not be enough to show that Felicello Law's factual allegation about "what remained to be performed" was "utterly lacking in support" so as to warrant the drastic relief of sanctions against the lawyers who signed the pleading. *See O'Brien v. Alexander*, 101 F.3d 1479, 1489 (2d Cir. 1996). The question is not whether conflicting evidence existed; or whether a different word selection, or more detail, would have added clarity; rather the question is whether the factual allegation in Paragraph 64 had some support. And it did.

The Complaint's description of the transaction governed by the interrelated documents was necessarily incomplete. There was no requirement that Felicello Law provide a complete rendering of the transaction in a legal malpractice pleading, and sanctioning Felicello Law over arguable and ultimately immaterial word choices concerning how to best characterize the transaction is contrary to this Court's well-settled precedent.

Among the safeguards available to the targets of Rule 11 motions, courts must "strive to avoid the wisdom of hindsight…and any and all doubts must be resolved in favor of the signer." *Eastway Constr. Corp. v. City of New York*, 762 F2d 243, 254 (2d Cir. 1985). In evaluating a factual contention under Rule 11(b)(3), the Rule does not "penalize overstatement" nor authorize an "overly literal reading of each factual statement." *Kiobel v. Millson,* 592 F.3d 78, 83 (2d Cir. 2010) (citation omitted). Moreover, 11(b)(3) sanctions consider complete allegations read in context with

4

doubts resolved in favor of the pleader, not "fragmentary contentions" that might create "the appearance of an unwarranted contention." *See Storey v. Cello Holdings,* 347 F.3d 370, 388 (2d Cir. 2003) (Sotomayor, J.). The District Court's Rule 11(b)(3) holding is squarely at odds with each of these precedents.

*Second,* the Non-Party Appellants had good faith arguments supporting every element of the single claim for legal malpractice, as well as China AI's standing as a registered shareholder of Link Motion to file the derivative lawsuit. Distilled to its essence, the legal malpractice claim was based on good faith arguments that (1) a lawyer who appears to represent a defendant in a federal lawsuit must raise readily-available defenses, (2) the lawyer who appears in a federal lawsuit on behalf of a defendant is negligent when she completely fails to defend against a motion for injunctive relief, while affirmatively and without authority signing on to a stipulation of non-opposition to the appointment of a corporate receiver over her client, (3) the court-ordered appointment of a corporate receiver is "extraordinary relief," and assertion of obvious and meritorious defenses in opposition to a motion seeking such relief would have led the underlying district court to refrain from appointing a receiver, and (4) the corporation was damaged when the trial court appointed a receiver over the corporate affairs (a receiver the corporation itself had to pay for). The legal malpractice claim was not objectively unreasonable as the law of sanctions requires, particularly in light of appropriate allegations for each element of legal

malpractice, and the lack of contrary precedent cited by the District Court or the Appellee.

Felicello Law's argument that China AI had standing as a registered shareholder of Link Motion was also objectively reasonable, as it was based on a plausible argument that stemmed from analogous existing case precedent, and neither Appellee nor the District Court cited to contrary authority which necessarily foreclosed China AI's standing.

Sanctions under Rule 11(b)(2) are inappropriate in the absence of binding authority that forecloses a party's position. *See Kim v. Kimm*, 884 F.3d 98, 106-07 (2d Cir. 2018) (Rule 11 sanctions were inappropriate despite legally deficient complaint where claims were "not so obviously foreclosed by precedent as to make them legally indefensible"). The Court cannot sustain the Sanctions Award where no such precedent is cited in the Record.

The District Court's Rule 11(b)(1) finding of improper purpose cannot stand, once the Court reverses the 11(b)(2) and 11(b)(3) findings. Moreover, there was no improper purpose because Felicello Law conducted itself honestly and professionally at all times.

The order of the District Court imposing sanctions against the Interested Parties-Appellants should therefore be reversed.

6

# ARGUMENT

## I. THE JUDGMENT SHOULD BE VACATED AND THE SANCTIONS DECISION AND ORDER REVERSED

### A. Because Felicello Law Had Factual Support For The Allegations in Paragraphs 64 and 85 of the Complaint, The Rule 11(b)(3) Ruling Must be Vacated and Reversed

A factual statement is not sanctionable under Rule 11(b)(3) unless it was "utterly lacking in support" at the time of the signing. *O'Brien*, 101 F.3d at 1489. The District Court based its Rule 11(b)(3) conclusions on findings that Paragraphs 64 and 85 of the Complaint lacked factual support. (A1736) As the District Court acknowledged, its finding that Paragraph 85 violated Rule 11(b)(3) flowed from its finding about Paragraph 64. (A1740) But the District Court was flatly incorrect; Paragraph 64 was amply supported, and once the Court concludes that Paragraph 64 had factual support, the District Court's derivative finding about Paragraph 85 cannot stand, either. Moreover, Paragraph 85 of the Complaint is not a factual statement at all; it is a non-frivolous legal contention unsanctionable under Rule 11(b)(3).

### i. Felicello Law Had Factual Support For Paragraph 64

Paragraph 64 alleges that "[W]hat remained to be performed under the SPA was the Company's obligation to cause transfer of FL Mobile shares in accordance with the SPA." (A35). In context, and as acknowledged by the District Court,

7

Paragraph 64 was referring to "what remained to be performed" as of the period immediately prior to December 14, 2018 when the *Baliga* Court entered a TRO which, *inter alia*, restrained Link Motion from transferring any assets. (A1736).

Adopting Magistrate Judge Figueredo's R&R, the District Court relied on press releases and SEC disclosures which suggested that the divestiture of the FL Mobile business segment to Tongfang was "completed" on December 14, 2017 and, therefore, it was false for Plaintiff to allege in paragraph 64 of the Complaint that when the Baliga Action was commenced on December 13, 2018, "[w]hat remained to be performed under the SPA was the Company's obligation to cause transfer of FL Mobile shares in accordance with the SPA." (A1586 at 16, citing A35 ¶62-64, A1736-38). The District Court's analysis is flawed. In addition to the arguments in Point I A of China AI's Opening Brief, Felicello Law makes the following points:

*First*, it is not necessarily inconsistent for a press release or SEC filing to refer to a transaction as being "completed" while other documents stress that payment obligations under the transaction remain. This is a ubiquitous occurrence; transactions of all types "close" every day where the parties at the closing of the transaction agree to any number of continuing obligations to each other and/or to third parties. In one sense, the contemplated transaction is complete at the time of the closing and can be honestly reported as such, but in another, payment or other obligations remain which can implicate and in some instances serve to unwind the

original transaction.

Here, the divestiture of FL Mobile closed in December of 2017, but Link Motion did not receive the full purchase price at that time, and the Note Tongfang provided as security for receipt of the final payment was not due until December 29, 2018. Link Motion retained a security interest in the shares of FL Mobile throughout the term of the Note. A475. The references to "completion" of the transaction in the press releases filed with the SEC referred to the deconsolidation of certain financial results in a context where such reporting was required, and did not suggest that all payment obligations had been completed. *Id.* It is possible to honestly characterize the FL Mobile divestiture transaction as having been "completed" despite payment, escrow and other obligations remaining.

Even if *arguendo* there were some factual inconsistency between the press releases suggesting that the transaction was "completed" in December of 2017 and Felicello Law's subsequent allegation in Paragraph 64 of what "remained to be performed" under the SPA, it would only provide some fodder for cross examination at trial. It does not imply that Paragraph 64 was "utterly lacking in support" so as to justify an award of sanctions. Courts do not find a factual statement is "utterly lacking in support" just because the attorney who signed the pleading represents a party who made an arguably inconsistent statement at some time in the past. And Courts do not punish statements that appear to be inconsistent where context

9

provides a reasonable explanation for arguable inconsistencies. *See Freeman v. Stake.com*, 2023 WL 7386354, at *3 (S.D.N.Y. Nov. 7, 2023) (no sanctions in characterizing an entity as a "partnership" and "no longer a partnership" where "the descriptors appear within a broader narrative of evolving business ventures and relationships").

**Second,** as detailed in the China AI Brief, the Plaintiff had ample factual support to show that as of December 13, 2018 Link Motion had a perfected security interest in the FL Mobile stock pursuant to the Equity Pledge Agreement and Link Motion's control of the stock. China AI Brief at Point I A. We will not repeat China AI's extensive argument here, other than to stress that the District Court side-stepped all of China AI's factual support by holding that the SPA stock transfer was completed as of December of 2017, and "[T]he question of who controlled the shares under the subsequent Equity Pledge Agreement is irrelevant". A1739.

The District Court does not explain why control of the shares was "irrelevant" to its analysis, but appears to have found that Paragraph 64 is false because it makes a factual statement about Link Motion's obligations *under the SPA* as opposed to the "subsequent" Equity Pledge Agreement. If that is the distinction the District Court made in the Sanctions Order, the distinction ignores the interrelated nature of the SPA with the subsequent documents which amended the SPA, and amounts to a punishment for an immaterial word choice which cannot possibly sustain an award

10

of sanctions.

The SPA, Supplemental Agreement, Note and Equity Pledge Agreement were not isolated documents. Collectively they governed the transaction originally contemplated in the SPA. The SPA specifically provided for written amendments. (A622 at §9.15). The Supplemental Agreement provided for an escrow-type arrangement for the FL Mobile shares pending payment in full of the FL Mobile shares which were transferred under the SPA, and defined "Closing" of the Share Purchase Transaction as the date when all payment obligations under the SPA had been completed. (A477) And the Equity Pledge Agreement referred to and incorporated the control arrangement set forth in the Supplemental Agreement. (*See* discussion in China AI Brief at Point I A at 31 n.6.)

Accordingly, the Paragraph 64 allegation that "[w]hat remained to be performed under the SPA was the Company's obligation to cause transfer of FL Mobile shares in accordance with the SPA" is not false, as Felicello had factual support for its allegation of "what remained to be performed" under the SPA, as amended by the agreements between the same parties. Judge Marrero's apparent myopic focus on the SPA as a standalone document, to the exclusion of the documents which amended the SPA in order to effectuate the same transaction is precisely the type of "overly literal" reading which this Court has held cannot be the basis of sanctions under Rule 11(b)(3). *See Kiobel v. Millson*, 592 F.3d at 83 (citation

11

omitted).

With the benefit of hindsight Felicello Law could have replaced "in accordance with the SPA" with "in accordance with the SPA as amended by the Supplemental Agreement and Equity Pledge Agreement". But there is nothing false about leaving out this level of detail, and there was no requirement that Felicello Law provide such detail in the pleading. Indeed, the pleading is merely supposed to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." *See* FRCP Rule 8 (a)(2). Felicello Law and its individual partners should not face reputational and financial ruin over both appropriate and ultimately immaterial selections of the words to describe the underlying series of documents which governed the sale of FL Mobile stock.

In short, the District Court abused its discretion by finding that Paragraph 64 was factually false based on a different reading of complex interrelated transaction documents. The District Court's interpretation of the documents does not control in the context of a deciding a Motion under Rule 11(b)(3); as long as there is *some* evidentiary support for Paragraph 64, it was an abuse of discretion to award sanctions. *See Kiobel*, 592 F.3d at 81.

### ii.     Felicello Law Had Factual Support For Paragraph 85

As Judge Marrero acknowledges, his finding that Paragraph 85[1] of the

---

[1]     Paragraph 85 reads in full: "[T]he entry of the TRO and the Preliminary

12

Complaint is false "follows" from his finding that Paragraph 64 is false. (A1739-1740). Paragraph 85 appears immediately under a sub-heading that reads "Defendants' bad advice was the but for cause of the Company's actual and ascertainable damages." Essentially, Paragraph 85 uses the factual premise of Paragraph 64 to make a legal argument about causation. So Paragraph 85 is not sanctionable for the same reasons that Paragraph 64 is not sanctionable.

Moreover, Paragraph 85 is a legal contention related to one of the causation arguments supporting the legal malpractice case, not a factual statement, such that it is not properly sanctioned under Rule 11(b)(3). Sanctions under Rule 11(b)(3) punish factual allegations which are "utterly lacking in support," not unconvincing legal contentions. *See O'Brien v. Alexander*, 101 F.3d 1479, 1489 (2d Cir. 1996) (the standard certification for factual allegations under Rule 11(b)(3) is "that there is (or likely will be) 'evidentiary support' for the allegation, not that the party will prevail with respect to its contention.") (citation omitted). Rule 11(b)(3) does not apply to a statement that "mak[es] a legal argument." *Storey*, 347 F.3d at 388, 390. If Paragraph 85 was sanctionable at all, it was sanctionable under Rule 11(b)(2), which addresses "claims, defenses and legal contentions." No such argument was made

---

Injunction prevented the Company from satisfying its obligation to Non-party Tongfang SPC (causing the transfer of the Company's legacy business, FL Mobile) after Tongfang SPC had already paid the Company consideration as required under the SPA."

13

(and any such argument would have failed because the contention was not frivolous under Rule 11(b)(2) – *See* China AI Opening Brief at Point I B 4).

### B. The Court Erred In Concluding That Plaintiff's Malpractice Claim Was Frivolous Pursuant To Rule 11(b)(2).

The Court's Rule 11(b)(2) ruling must be vacated and reversed. Sanctions under Rule 11(b)(2) only punish attorneys who make legal arguments which have "no chance of success". *See Fishoff v. Coty Inc.*, 634 F.3d 647 (2d Cir. 2011). The touchstone of a legally frivolous lawsuit punishable under Rule 11(b)(2) is one that is "obviously foreclosed by precedent". *See Kim v. Kimm,* 884 3d 98, 106 (2d Cir. 2018) (affirming a dismissal of RICO case for failing to plead predicate acts and the denial of sanctions where legally deficient claims "were not so obviously foreclosed by precedent as to make them legally indefensible.").

This case involves three separate findings of frivolity under Rule 11(b)(2), but without the identification of contrary precedent that could foreclose this case. As such the Sanctions Order is a subjective determination by the District Court which was unfair to the Felicello Law attorneys who had affirmative obligations to represent China AI zealously and now face reputational and financial ruin based on the District Court's subjective and therefore erroneous determination.

i. **Felicello Law Had A Good Faith Basis To Plead That DLA Negligently Represented Link Motion In The Baliga Action By Doing Nothing Of Substance For Two And A Half Months While Serving As Counsel Of Record**

As a threshold matter, as argued in the China AI Opening Brief, Judge Figuerdo applied an erroneous "exceedingly difficult" standard to the question of whether Felicello's negligence allegations were frivolous or not. China AI Opening Brief at Point I B1. Whether or not it would have been "exceedingly difficult" for Plaintiff to prove that Defendants breached a duty of care is beside the point. The allegation of negligence is either objectively frivolous or it is not frivolous; subjective judicial handicapping of difficulties in ultimate proof does not factor into the analysis. Lawyers are not sanctioned for bringing "difficult" cases unless there is *no chance of success*. *See Fishoff v. Coty Inc*., 634 F.3d 647 (2d Cir. 2011) ("The fact that a legal theory is a long-shot does not necessarily mean that it is sanctionable. The operative question is whether the argument is frivolous, i.e., the legal position has no chance of success…").

On the merits, Felicello Law's allegation of DLA's negligence found ample support in the record and in prevailing caselaw. DLA served as Link Motion's counsel of record in the Baliga Action from December 14, 2018 until March 1, 2019 when the Baliga court granted its motion to withdraw. A288; A524; A527 ¶2; A575-581; A472-73 ¶¶11-18); A293.

DLA did not limit its appearance at any time during this eleven-week period;

15

nor could it have limited its appearance under federal law, as the attorney is either *in or out* as counsel of record. As Judge Rakoff has observed, "[T]raditionally, federal courts have required that when an attorney appears on behalf of a client, that attorney must represent the client in all respects until judgment, unless relieved by the Court. The Local Rules in this District continue to enforce this approach." *Villar v. City of New York*, 540 F.Supp.3d 437, 439 (S.D.N.Y. 2021) (citing SDNY Local Rule 1.4).

The appearance of counsel in a litigation, particularly as sole counsel of record, is irrefutable evidence of an attorney client relationship with respect to that litigation. During the eleven weeks where it served as Link Motion's sole counsel of record, DLA stipulated non-opposition to the appointment of a corporate receiver and a preliminary injunction while failing to investigate or advocate the favorable facts and legal defenses available to Link Motion that could have avoided the receiver and injunction. A525-27. With the acquiescence of DLA and on its watch, the court in the Baliga Action appointed a corporate receiver and restrained Link Motion from, *inter alia*, transferring assets. A528 (third paragraph); A528-34.

On the salient question of frivolity, China AI identified ample case precedent in their Opposition to the Motion for Sanctions which showed that Felicello Law could at least plausibly allege that DLA was negligent for failing to assert any defenses during its eleven week tenure, while stipulating non-opposition to the appointment of a corporate receiver over Link Motion, including a case that shows

16

that the mere failure to pay an attorney does not relieve counsel of its professional obligations. A454-55. Litigation attorneys must actually litigate a case with diligence and competence, especially attorneys who are sole appearing counsel of record.

The Sanctions Order focused on a one-sided paper presentation which the District Court believed showed Link Motion's principal's "refusal to engage" with DLA. Sanctions Order at A1745-46. But even assuming the District Court's "refusal to engage" finding was correct, when a client is refusing to engage, or difficult to work with, and/or not paying the attorney, the attorney can consider moving to withdraw *but continues to have obligations of competence and diligence as unrelieved counsel of record*, unless and until that motion is granted. *See Bennett v. Mukasey*, 525 F3d 222, 223-24 (2d Cir 2008).

Moreover, nothing in DLA's paper presentation of a "refusal to engage" suggests that DLA had authority to bind Link Motion to the stipulation of Non-Opposition to the appointment of a corporate receiver over Link Motion. Given that DLA did nothing of substance for eleven weeks except enter into an unauthorized stipulation for the appointment of a receiver and injunction, it is not a complete defense to a legal malpractice case for DLA to complain that Link Motion refused to engage, and it is certainly not fodder for a Rule 11 Motion. When a defense to a legal malpractice claim is that the client interfered with the attorney's efforts, the

17

attorney typically answers the complaint and asserts comparative fault as an affirmative defense. *See Whitney Group, LLC v. Hunt-Scanlon Corp.*, 106 A.D.3d 671, 967 N.Y.S.2d 21 (1st Dep't 2013).

Neither DLA's Rule 11 Letter, the R&R, nor the Sanctions Order offered a single case precedent that "obviously foreclosed" the pleading that DLA departed from the applicable standard of care when it stipulated non-opposition to a receiver and failed to raise any substantive defenses during its eleven-week tenure. DLA's "safe harbor" Rule 11 Letter cited to a single case, *Allegrino v. Ruskin Moscou Faltischek, P.C.* 2021 WL 5500084 (2d Cir. Nov. 24, 2021). A377 But the *Allegrino* case stands for the proposition that an attorney cannot be held negligent for mishandling a probate matter in surrogate's court it did not agree to undertake, where the lawyer and client had two written retainer agreements, neither of which involved the probate matter, and the second of which specifically precluded representation "in the Surrogate's Court." *Id.* at *1-2. The *Allegrino* case is simply not instructive here because no retainer agreement limited DLA's obligations, and also because, unlike DLA, the attorney in the *Allegrino* case never appeared in court. Here, it is indisputable that DLA appeared in federal court on behalf of Link Motion.

The R&R cited *Schweizer v. Mulvehill*, 93 F. Supp. 2d 376, 393 (S.D.N.Y. 2000) (A1593), a case where an attorney was sued for breach of fiduciary duty and legal malpractice. The legal malpractice case was dismissed at the summary

18

judgment stage because the client could not prove that the underlying personal injury settlement was compelled by a mistake of counsel. *Id* at 394. The *Mulvehill* case is inapposite here because the alleged malpractice does not involve a settlement. And while the Sanctions Order cited to cases showing that discovery is not necessary to decide every Rule 11 case (A1747), it cited no cases on the substantive merits of Felicello Law's claim that DLA deviated from the applicable standard of care during its eleven week tenure as counsel of record in the Baliga Action. Indeed, there is no case authority – state or federal – supporting the theory that a sole counsel of record avoids legal malpractice liability by claiming that she did not agree to undertake the representation, or that her client's supposed "refusal to engage" with the attorney excused the attorney from any obligation to advocate for the client.

Finally, the R&R footnote (A1564, n.7) which implies that the standing argument DLA failed to raise was not an obvious meritorious defense because subsequent counsel did not raise it does not support a finding of frivolous conduct under Rule 11(b)(2). The R&R mischaracterizes what actually happened, and cites neither evidence that subsequent counsel failed to raise the issue, nor any suggestion of how or when the issue could have been raised. Indeed, Link Motion could not raise the issue through independent counsel at any time prior to the challenged pleading because Baliga was the Receiver in control of Link Motion. But even if *arguendo* another lawyer could have but did not raise the issue *after* the Receiver

19

had been appointed, it would not somehow render the pleading frivolous. Again, the standard under Rule 11(b)(2) is not whether the legal contention is a clear winner; but whether the legal contention has no chance of success.

The short of it is that Felicello Law had ample legal support for its negligence allegations, and these allegations were not "obviously foreclosed" by any precedent identified by DLA or the District Court. This Court should reverse the finding of frivolity under Rule 11(b)(2) because there was an objectively good faith basis to plead that DLA was negligent.

### ii. Felicello Law Had A Good Faith Basis To Plead That DLA's Negligence Proximately Caused Link Motion To Suffer Damages

A legal malpractice claimant must prove "that the defendant-attorney's negligence was a proximate cause of damages." *Barnett v. Schwartz*, 47 A.D.3d 197, 205 (2d Dep't 2007). While a claimant must also show "but for" causation, this does not require a showing that the legal malpractice was the "sole proximate cause" in a legal malpractice case. *Id.* It is enough for claimant to show by a preponderance of evidence that "but for the alleged negligence, the particular result sought would have or could have been achieved." *Parker Chapin Flattau & Klimpl v. Daelen Corp.* 59 A.D.2d 375 (1st Dep't 1977). Where as here the allegedly negligent conduct took place in a prior litigation, courts decide the legal malpractice case by employing a "case-within-a-case" test where the fact-finder determines what would have

20

happened in the underlying litigation but for the negligence of the attorney. *Carasco v. Schlesinger*, 222 A.D.3d 476, 201 N.Y.S.3d 48 (1st Dep't 2023).

Indeed, in reversing the District Court, this Court in *dicta* has already applied the "case-with-a-case" formulation to the related Direct Action Link Motion filed against DLA. *See Link Motion v. DLA*, 103 F.4th 905, 916 (2d Cir. 2024) (remanding the case to state court while observing "[T]he (legal malpractice) claim looks backward to ask whether the district court would have denied Baliga's motions for a TRO, preliminary injunction, and the appointment of a receiver if, hypothetically, DLA had timely challenged Baliga's standing under federal securities law.").

As discussed in the preceding section, Felicello Law had a good faith basis to plead that DLA was negligent in taking no substantive steps towards defending Link Motion during its eleven-week tenure as counsel for Link Motion in the Baliga Action, and stipulating with Baliga to non-opposition of the appointment of a corporate receiver over Link Motion. Granting a preliminary injunction by appointing a corporate receiver over a corporate defendant is extraordinary relief. *See U.S. Bank Nat. Ass'n v. Nesbitt Bellevue Prop. LLC*, 859 F. Supp. 2d 602, 610 (SDNY 2012) (appointment of a receiver is an extraordinary remedy "granted only when clearly necessary to protect plaintiff's interests in the property…") (citation omitted). Accordingly, if DLA had defended the receivership application rather than stipulating to non-opposition, Baliga would have had to meet a very high standard

in order to obtain the court-appointment of a corporate receiver. Baliga was relieved from making any such showing because DLA stipulated non-opposition to the receiver (albeit without authorization from its client, Link Motion, to so stipulate).

The trial court in the Baliga Action was faced with an unusual occurrence – a large law firm with a well-deserved reputation of zealous advocacy which did not oppose the imposition of a court-ordered corporate receiver over its own client. Rather than face the very high bar associated with obtaining such extraordinary relief, Baliga faced no opposition while obtaining the acquiescence of the company through DLA's unauthorized stipulation. This alone suggests that it was plausible to plead a causal relationship between DLA's stipulated acquiescence to the appointment of the receiver over Link Motion's affairs, and the actual, subsequent court-ordered appointment of the receiver.

Link Motion's pleading asserts that DLA failed to raise meritorious defenses, readily evident from DLA's own files, to the granting of injunctive relief. A44 at ¶111. The irreparable injury argument stemming from Baliga's lack of common law standing was particularly promising, as the Court in the Baliga Action subsequently held that the only claims for which Baliga had standing were fully compensable via money damages. *See* China AI Opening Brief at Point I B 3 at pp. 45-47; (A2417-23, adopted at A2450). If Baliga's claims were compensable in money damages, there could be no irreparable injury to support preliminary injunctive relief.

22

Accordingly, it was reasonable for Felicello Law to allege a direct causal link between DLA's non-opposition to the appointment of a receiver, and the appointment of the receiver.

The District Court was flatly incorrect in holding that "[T]he 'case within a case' question had an answer, and not merely a hypothetical one" when it concluded that China AI could not prove legal malpractice causation based on the Baliga Court's ruling on a different question more than three years after the alleged malpractice. A 1754. The salient causation question is how a hypothetical court would have ruled if DLA, acting on behalf of Link Motion, had timely asserted each readily-available defense in December 2018 and January 2019 in opposition to the Baliga motion for Provisional Equitable Relief. As argued in the China AI Opening Brief (Point I B 3), the District Court's commentary in 2022 decisions does not resolve the "case-within-a-case" question of what would have happened in 2018 and 2019 if DLA had raised readily-available defenses on Link Motion's behalf prior to the imposition of a corporate receiver. Such judicial commentary is not even admissible evidence in a legal malpractice case. *See Rubens v. Mason*, 387 F.3d 183, 190-91 (2d Cir. 2004) (affidavit of the underlying arbitrator as to why he ruled the way he did, and what he "would have done" if attorney had presented different arguments, is not admissible in a subsequent legal malpractice case to prove what the hypothetical "case-within-a-case").

23

It follows that such "inadmissible" commentary cannot be the basis of a sanctions award – yet the R&R and the Sanctions Order focused heavily on judicial commentary contained in rulings from the Baliga Action which occurred years after the alleged malpractice. A 1562-63, A1753-54. Moreover, even if *arguendo* it was correct to rely on such commentary, it was error to conclude that a finding that the Baliga Court had "jurisdiction" to appoint a receiver (A 1563 at N. 5) could be read as equating to a finding that the Baliga Court would have exercised its discretion to award the extraordinary relief of appointing a receiver if DLA had raised appropriate substantive defenses to the appointment.

In short, Felicello Law pled a straightforward theory of causation. The stipulation DLA agreed to without authorization all but welcomed the Baliga Court to grant the extraordinary relief of appointing a receiver; which the Baliga Court predictably did without making any findings of irreparable harm or probability of success. Neither the Appellees, the R&R nor the Sanctions Order identified any legal authority that "obviously foreclosed" this theory and the Sanctions Order should be reversed. *See Kimm*, 884 F.3d at 106-07. And of course there is a direct causal link between the appointment of the receiver and the fact that Link Motion ultimately had to pay that receiver. Neither the R&R nor the Sanctions Order found it was frivolous to plead that the appointment of the receiver proximately caused Link Motion to incur millions in receiver fees and expenses. (A40-41 ¶¶92-93).

24

Furthermore, while unnecessary to sustain the non-frivolous pleading of proximate cause, Felicello Law also plausibly pled that the TRO and preliminary injunction restrained Link Motion from transferring the shares of FL Mobile stock to Tongfang in exchange for final payment on the Note, which resulted in the loss of a $180 million gain that Link Motion expected to realize upon the final exchange of shares for payment. *See* China AI Opening Brief at Point I A and 1 B 4 and citations therein.

### iii. Plaintiff's Legal Contentions Regarding its Own Standing to Bring a Derivative Claim are Supported by Existing Law or a Nonfrivolous Extension, Modification or Reversal of Existing Law or the Establishment of New Law.

As detailed in the *China AI* Opening Brief, China AI and Felicello relied on two cases, including supporting New York case authority, for a noncontrolling shareholder of a Cayman Islands company like China AI to sue derivatively under a "fraud on the minority" exception where a company has suffered a wrong and the shareholder is not able to convince the company to bring the lawsuit itself. *See* China AI Opening Brief at I B 5, citing *See* <u>*Renren, Inc. v. XXX, 67 Misc. 3d 1219(A) (N.Y. Sup. Ct. 2020)*</u>,[2] quoting *Top Jet Enter. Ltd. v. Sino Jet Holding Ltd. and Jet Midwest Inc.*, 2018 (1) CILR 18, 43, [34] (see A 462, A1262-1279 at A1274-75). A

---

[2] *Aff'd sub nom. Matter of Renren, Inc.*, 192 A.D.3d 539 (N.Y. App. Div. First Dep't 2021).

shareholder like China AI can bring a derivative lawsuit against a third party like DLA where the third party either participated in, or was an accessory to a breach of duty against the Company. *Renren* at \*98.

Here, the Complaint non-frivolously alleged that Baliga and his counsel, who was also the Receiver deriving fees from his unwarranted court-appointment at the expense of Link Motion, exercised control over Link Motion, and prevented China AI from persuading the board of directors to bring the claim in the name of Link Motion. (*See* A42 ¶¶100, A462). Baliga and his lawyer who became the Receiver exercised control over Link Motion from December 14, 2018 until the receivership ended, long after the date of the Complaint. R 462-63; *see also Renren* at 83 (element of fraud needed to plead derivative standing is established "where the wrongdoers derived a personal benefit at the expense of the company's shareholders").

Plaintiff alleges that DLA participated in the relevant conduct and was an accessory to it by stipulating with the Receiver's law firm to waive Link Motion's right to oppose appointment of the Receiver. This is similar to the third party derivative claim which survived the pleading stage challenge in *Renren,* where the trial court determined that Cayman law authorizes derivative standing for a claim against third party service provider Duff & Phelps, where the Complaint accused Duff & Phelps of aiding and abetting fiduciary duties by providing a flawed valuation and fairness opinion which amounted to "rubberstamping." *Id.* at 103-04.

26

While *Renren* is not squarely on point, it is close. The derivative claim against a third-party service provider which was allowed to go forward in *Renren* is considerable case authority which supports China AI's standing to assert a derivative claim against DLA. While reasonable arguments could be made to distinguish *Renren,* and it would have been appropriate for DLA to attempt to distinguish *Renren* in a motion to dismiss, DLA did not offer any case authority that obviously forecloses the position that China AI had derivative standing. *See Kim v. Kimm*, 884 F.3d 98, 106-07 (2d Cir. 2018). *Renren* involved a corporate shareholder like China AI, derivatively suing a third party service provider like DLA, and accusing the third party of providing flawed services which benefitted the individuals who controlled the company and refused to bring the direct claim, at the expense of the company. As such, whatever the arguments for distinguishing *Renren,* Rule 11 relief was entirely unwarranted. Felicello argued for a reasonable extension of the *Renren* holding to the legal malpractice context where a corporate receiver exerted control over the Company and would not bring the claim. Here, "[t]he operative question is whether . . . the legal position has no chance of success, and there is no reasonable argument to extend, modify or reverse the law as it stands." *Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.*, 682 F.3d 170, 177 (2d Cir. 2012) (quoting *Fishoff v. Coty Inc.*, 634 F.3d 647, 654 (2d Cir.2011)) Neither DLA nor the R&R, nor Sanctions Order cited any precedent that comes close to

27

foreclosing the claim that China AI had derivative standing.

The Sanctions Order held that the Complaint lacks an "allegation that Baliga or his counsel engaged in self-dealing conduct or otherwise improperly benefitted at the expense of Link Motion." A1743-44. This is at best a cramped reading of the Complaint, which alleges that Baliga and his lawyer who became the Receiver were aligned with investors who were "attacking" Link Motion. A 24-25 (FAC at ¶ 9). Moreover, the Sanctions Order claims that Link Motion did not allege that DLA "acted dishonestly" since the legal malpractice claim is "predicated merely on negligence." A1744 But the Complaint alleges that DLA entered into an unauthorized stipulation which acquiesced in the appointment of a corporate receiver (A 25, FAC at ¶ 10), and whether this unauthorized conduct rose to the level of "dishonesty" as required to sustain China AI's standing to bring a legal malpractice claim on behalf of Link Motion -- when the same receiver who benefitted from the unauthorized appointment would not authorize the lawsuit -- was a question of law not decided or foreclosed by any of the precedent available to Felicello Law or cited in the Record.

The District Court cited two cases in support of finding that China AI's claim to derivative standing was frivolous. One of those cases was *Renren*, which, as explained above, provides support for Felicello Law's position. The other case is *Winn v. Schafer*, 499 F.Supp.2d 390 (S.D.N.Y. 2007), a case arising under English

28

Law, not the law of the Cayman Islands. There is little discussion of the facts in *Schafer*, and no suggestion that the facts or the legal holdings are necessarily instructive here. Moreover, the *Schafer* court applied English law because the law of the Cayman Islands was "silent" on the issue of derivative standing *circa* 2007 when *Schafer* was decided, but this was before 2018 when the Grand Court of the Cayman Islands articulated the Cayman Islands standard for derivative standing in *Top Jet Enter. Ltd. v Sino Jet Holding Ltd. and Jet Midwest Inc.*, 2018 (1) CILR 18, 43, [34]. Felicello Law made an argument supported by *Renren* and *Top Jet* – both cases which applied the law of the Cayman Islands. Cayman Islands law governs the issue now; *Schafer* applied English law and cannot justify an award of sanctions when its application of English Law has been mooted by subsequent law.

### C. The District Court Erred In Concluding That Plaintiff's Malpractice Claim Was Filed For An Improper Purpose Pursuant To Rule 11(b)(1).

There is simply no evidence that Felicello Law or its individual attorneys filed the China AI Complaint or pursued this litigation for an improper purpose. A court cannot determine that the pleading was made for an improper purpose under Rule 11(b)(1) unless the pleading is first found to be frivolous. *Sussman v. Bank of Israel*, 56 F.3d 450, 458-59 (2d Cir. 1995) (citation omitted). If the Court agrees with Felicello Law that the pleading is not frivolous, it follows that the Rule 11(b)(1) finding must be reversed as well.

29

If *arguendo* the Court finds that the Complaint was frivolous in some fashion, frivolousness alone "does not give rise to a finding of improper purpose, absent something more." *Sierra Club v. U.S. Army Corps of Engineers*, 776 F.2d 383, 391 (2d Cir. 1985). This makes sense, particularly given that frivolity is decided under a standard of objective reasonableness while a finding of an improper purpose is a finding of an improper intent. The distinction has massive implications to the reputations of Felicello Law's individual attorneys as well as potential collateral consequences which flow from a finding of intentional misconduct; a finding which is entirely unwarranted here. Even if *arguendo* the Court determines that something Felicello Law did was objectively unreasonable, and even under an abuse of discretion standard, the Court should be reluctant to affirm findings of improper intent where there is simply no evidence of such intent.

Here, the R&R premised its Rule 11(b)(1) decision on viewing "all of the deficiencies in…(the) claim collectively", which led to the conclusion that "pursuit of this litigation…was done to harass Defendants." A 1601. If the Court finds that the District Court erred in one or more of its Rulings under Rule 11(b)(3) and (b)(2), it should also reverse the Rule 11(b)(1) ruling. For reasons detailed in China AI's Opening Brief, and on any fair reading of the Record, there is no suggestion that Felicello Law did anything outside the normal confines of zealous advocacy in the face of a large and powerful opponent.

30

Dated: March 5, 2026

LAW OFFICE OF DANIEL L. ABRAMS, PLLC

By:___*/ s / Daniel L. Abrams*_____

Daniel L. Abrams
1250 Broadway, 36th Floor
New York, New York 10001
(646) 821-4575

*Attorney For Interested Party-Appellants*
Rosanne Felicello, Michael Maloney and
Felicello Law, P.C.

31

**Certificate of Compliance with Type-Volume Limit,
Typeface Requirements, and Type-Style Requirements**

1.  This document complies with the word limit of Local Rule 32.1(a)(4) because, exclusive of pages containing the table of contents, table of authorities, proof of service, and this Certificate, this document contains 7,332 words.

2.  This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced type face using Microsoft Word in Times New Roman in 14-point font.

/s/_____

Daniel L. Abrams
*Attorney for Interested Parties-Appellants*

Dated: March 5, 2026

32

## CERTIFICATE OF SERVICE

I hereby certify that one ( 1) copy of the following:

AMENDED BRIEF FOR INTERESTED PARTIES

was served upon Appellee's counsel via the Court's ACMS/ECF System, as indicated, this 10th day of March, 2026, upon the following:

Gibson, Dunn & Crutcher, LLP
200 Park Avenue
New York, New York 10166
212)-351-4000
nhart@gibsondunn.com

Date: March 10, 2026

*/ s / Daniel L. Abrams*

_____

Daniel L. Abrams
*Attorney for Appellants*